# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>ALTA MESA RESOURCES, INC., *et al.*,<br><br>Debtors.[1] | § Chapter 11<br>§<br>§ Case No. 19-35133 (MI)<br>§<br>§ (Joint Administration Requested)<br>§ (Emergency Hearing Requested)<br>§ |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF
PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY
PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,
(III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
ADDITIONAL ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER 12, 2019 AT 2:30 P.M. (PREVAILING CENTRAL TIME) IN COURTROOM 404, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TX 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUEST NOT LATER THAN SEPTEMBER 12, 2019.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") respectfully state as follows in support of this emergency motion (this "<u>Motion</u>"):

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); and Oklahoma Energy Acquisitions, LP (3762). The location of the Debtors' corporate headquarters and service address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

**RELIEF REQUESTED**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) approving the Proposed Adequate Assurance of payment for future Utility Services (each as defined herein); (b) prohibiting Utility Providers (as defined herein) from altering, refusing, or discontinuing services; (c) approving procedures for resolving any dispute concerning adequate assurance in the event that a Utility Provider is not satisfied with the Proposed Adequate Assurance; and (d) granting related relief.

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the Southern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the court in connection with this Motion to the extent that it is later determined that the court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101- 1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Bankruptcy Rules, Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

**BACKGROUND**

4. On September 11, 2019 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing these cases under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt

structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of John C. Regan, Chief Financial Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration")[2], filed contemporaneously herewith and which is fully incorporated herein by reference.

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been requested in these chapter 11 cases, and no committees have been appointed or designated.

## THE DEBTORS' UTILITY SERVICES AND PROPOSED ADEQUATE ASSURANCE

### A.   Utility Services and Utility Providers

6. In connection with the operation of their businesses and management of their properties, the Debtors obtain electricity, natural gas, water and sewage, telecommunications, internet, cable, and other similar services (collectively, the "Utility Services") from a number of utility companies (collectively, the "Utility Providers"). A non-exclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date is attached hereto as **Exhibit A** (the "Utility Service List").[3]

7. Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and the overall success of these chapter 11 cases. The Debtors' business involves locating and acquiring unconventional oil and natural gas reserves and exploring, developing,

---

[2]   The First Day Declaration and other relevant case information is available on the following website maintained by the Debtors' proposed claims, balloting, and noticing agent, Prime Clerk LLC, in connection with these chapter 11 cases: http://cases.primeclerk.com/altamesa.

[3]   Although the Debtors believe that the Utility Service List includes all of their Utility Providers, the Debtors reserve the right to supplement the list if they inadvertently omitted any Utility Provider. Additionally, the listing of an entity on the Utility Service List is not an admission that such entity is a utility within the meaning of Section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

producing, transporting and marketing such oil and natural gas.  To successfully locate, develop, extract, transport, and market oil and natural gas, the Debtors must maintain the ability to run their exploration and production equipment in a near-constant state.  The Debtors' operations also require electricity and gas for lighting, heating, and air conditioning.  In addition to the exploration and production processes conducted in the field, the Debtors operate a corporate office responsible for ensuring the smooth operation of the Debtors' business.  This office requires electricity, telecommunications, internet, water, and waste management services to operate.  Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted, and such disruption would jeopardize the Debtors' ability to manage their reorganization efforts.  Accordingly, it is essential that the Utility Services continue uninterrupted during these chapter 11 cases.

8. As of the Petition Date, the Debtors owe approximately $460,000 on account of prepetition Utility Services.  On average, the Debtors pay approximately $460,000 per month for the Utility Services, as calculated for the twelve-month period ended July 2019.  Accordingly, the Debtors estimate that the cost for the Utility Services during the next 21 days (not including any deposits to be paid) will be approximately $345,000.  The majority of the Debtors' Utility Providers do not hold deposits from the Debtors, but a small minority do hold such deposits.[4]

**B.     Proposed Adequate Assurance of Payment**

9. The Debtors intend to pay postpetition obligations owed to the Utility Providers in a timely manner.  Cash held by the Debtors, cash generated in the ordinary course of business, and cash available through the use of cash collateral will provide sufficient liquidity to pay the Debtors'

---

[4] The Debtors have approximately 29 Utility Providers.  The Debtors believe that only one of such Utility Providers has a surety bond issued for its benefit.

Utility Service obligations in accordance with prepetition practice during the pendency of these chapter 11 cases.

10. To provide additional assurance of payment, the Debtors propose to deposit $42,000 (the "Adequate Assurance Deposit") into a segregated bank account owned by the Debtors (the "Adequate Assurance Account") within twenty days of entry of the Order. The Adequate Assurance Deposit is equal to approximately one-half of the Debtors' average monthly cost of Utility Services, calculated based on the Debtors' average utility expenses over the twelve months ended July 2019, less any existing prepetition deposits or surety bonds.[5] The Adequate Assurance Deposit will be held in the Adequate Assurance Account for the duration of the Debtors' chapter 11 cases and may be applied to any postpetition defaults in payment to the Utility Providers.

11. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' cash flow from operations, access to financing and cash collateral, and cash on hand, demonstrates their ability to pay for future Utility Services in accordance with prepetition practice (collectively, the "Proposed Adequate Assurance") and constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of Section 366 of the Bankruptcy Code.

**C.   The Adequate Assurance Procedures**

12. Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each, an "Additional Assurance Request") pursuant to the adequate assurance procedures set forth in the Order (the "Adequate Assurance Procedures"). The Adequate Assurance Procedures set forth a

---

[5] For the avoidance of doubt, one Utility Provider, Cimarron Electric Cooperative ("Cimarron") has been allocated $0 of the proposed Adequate Assurance Deposit because prepetition surety bonds or deposits exceed one half of the Debtors' average monthly cost for Utility Services from Cimarron. The average monthly cost of the Utility Services provided by Cimarron is approximately $376,000, which would ordinarily require $188,000 to be deposited in the Adequate Assurance Deposit on account of Cimarron. However, since Cimarron holds the above mentioned surety bond, $0 have been included in the Adequate Assurance Deposit on account of Cimarron.

streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to continue their business operations uninterrupted.  More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by serving an Additional Assurance Request upon certain notice parties.  The Debtors, in their discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court.  If the Debtors determine that the Additional Assurance Request cannot be resolved by mutual agreement, the Debtors will seek Court resolution of the Additional Assurance Request.  Moreover, unless and until a Utility Provider serves an Additional Assurance Request, such Utility Provider shall be (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with Section 366 of the Bankruptcy Code and (b) prohibited from discontinuing, altering, or refusing services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

### D. Modifications to the Utility Service List

13.     The Debtors have made an extensive and good-faith effort to identify all Utility Providers and include them on the Utility Service List.  Nonetheless, to the extent the Debtors subsequently identify additional Utility Providers or discontinue any Utility Services, the Debtors seek authority to amend the Utility Service List to supplement or remove any Utility Provider, as applicable, prior to the hearing that the proposed Order contemplates being scheduled within 30 days after the Petition Date.  For any Utility Provider that is subsequently added to the Utility Service List, the Debtors will serve such Utility provider with a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures. The Debtors further request that the relief requested in this Motion, including the proposed Adequate Assurance Procedures, and

any order granting this Motion shall apply to any subsequently-identified Utility Provider, and that all Utility Providers, including subsequently-identified Utility Providers added to the Utility Service List, be prohibited from altering, refusing, or discontinuing any Utility Services to the Debtors absent further order of the Court. The Debtors further reserve the right to assert that any of the entities now or hereafter listed on the Utility Service List is not a "utility" within the meaning of Section 366(a) of the Bankruptcy Code.

## BASIS FOR RELIEF

14. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date. *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty days of the petition, or the utility company may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) of the Bankruptcy Code provides a non-exhaustive list of examples for what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guaranty of the debtors' ability to pay. *See In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.—NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'" (citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.—NY*, 117 F.3d 646 (2d Cir. 1997); *see also In re Tekoil & Gas Corp.*, No. 08-80270G3-11, 2008 WL 2928555, at *2 n.1 (Bankr. S.D. Tex. July 21, 2008) ("[A] debtor may continue to pay a utility, and a utility may continue to provide service, in the absence of an injunction preventing the utility

from terminating service.") (citing *In re Viking Offshore (USA) Inc.*, No. 08-31219-H3-11, 2008 WL 782449, at *3 n.3 (Bankr. S.D. Tex. Mar. 20, 2008)).

15. When considering whether a given assurance of payment is "adequate," the court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the debtor merely to give further security to suppliers who already are reasonably protected").

16. Termination of the Utility Services could result in the Debtors' inability to operate their business to the detriment of all stakeholders. *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); *see also In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that Section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it"). Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Adequate

Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance that the Debtors will pay their future obligations to the Utility Providers.

17. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under Section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "[t]he plain language of § 366 of the Bankruptcy Code allows the Court to adopt the Procedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Here, notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under Sections 366(b) and (c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5–6. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *5.

18. Further, the Court possesses the power, under Section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the

Bankruptcy Code, particularly Section 366 thereof.  Accordingly, the Court should exercise its powers under Sections 105(a) and 366 of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

## EMERGENCY CONSIDERATION

19.     In accordance with Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As described above, it is imperative that the Debtors fund the Adequate Assurance Account within twenty days of entry of the Order to ensure that the Utility Providers continue to provide Utility Services in the ordinary course of business, including immediately following the Petition Date.  Failure to receive the applicable relief during the first 21 days of these chapter 11 cases would thus severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

20.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

21.     Nothing contained herein shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against any of the Debtors under the Bankruptcy Code or other

applicable nonbankruptcy law; (b) an impairment or waiver of any Debtor's or any other party in interest's right to dispute any claim against, or interest in, any Debtor, its property or its estate; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection or any agreement, contract, or lease under Section 365 of the Bankruptcy Code; (e) an implication or admission that any particular claim is of a type specified or defined in this Motion, or any order granting the relief requested by this Motion; (f) an implication, admission, or finding as to (i) the validity, enforceability, or perfection of any interest or encumbrance on the property of any Debtor or its estate or (ii) the applicability of any exception or exclusion from property of the estate under Section 541 of the Bankruptcy Code or other applicable law; (g) an impairment or waiver of any claims or causes of action which may exist against any entity; or (h) a waiver of any Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## NOTICE

22.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"); (b) the holders of the 30 largest unsecured claims against the Debtors; (c) Wells Fargo Bank, N.A., as administrative agent under the Debtors' prepetition revolving credit facility (the "Agent"); (d) U.S. Bank, N.A., as indenture trustee for the 7.875% Senior Notes due 2024 (the "Indenture Trustee"); (e) counsel to the parties referenced in clauses (c) to (d); (f) Davis Polk & Wardwell LLP, counsel for the ad hoc group of holders of 7.875% Senior Notes due 2024 (the "Ad Hoc Noteholder Group"); (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; (j) the state attorneys general for states in which the Debtors conduct business; (k) the Utility Providers; and (l) all parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Bankruptcy Rules.  The Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: September 12, 2019  
      Houston, Texas

Respectfully,

*/s/ John F. Higgins*
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
Aaron J. Power (TX 24058058)
M. Shane Johnson (TX 24083263)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
Email: jhiggins@porterhedges.com
      eenglish@porterhedges.com
      apower@porterhedges.com
      sjohnson@porterhedges.com

– and –

George A. Davis (*pro hac vice* admission pending)
Annemarie V. Reilly (*pro hac vice* admission pending)
Brett M. Neve (*pro hac vice* admission pending)
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: george.davis@lw.com
      annemarie.reilly@lw.com
      brett.neve@lw.com

– and –

Caroline Reckler (*pro hac vice* admission pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9667
Email: caroline.reckler@lw.com

– and –

Andrew Sorkin (*pro hac vice* admission pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201
Email: andrew.sorkin@lw.com

*Proposed Counsel for the Debtors and Debtors in Possession*

13

US-DOCS\107759133

## Certificate of Service

I certify that on September 12, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins

US-DOCS\107759133