**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
10/11/2019

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALTA MESA RESOURCES, INC., *et al.*, | § | Case No. 19-35133 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |
| | § | |
| | § | |

**ORDER ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALES OF
ALL OR A PORTION OF THE DEBTORS' ASSETS**

[Relates to Docket No. 126]

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (i) approving the proposed auction and bidding procedures attached as Annex 1 hereto (the "Bidding Procedures") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or any portion or combination of their assets (the "Debtor Assets" and, together with the Non-Debtor Assets, the "Assets") through one or more sales of the Debtor Assets and/or a combined sale of both the Debtor Assets and the Non-Debtor Assets (each, a "Transaction"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (iii) approving the form and manner of notice of the Auction, the Sale Notice, and the Assumption Notice; (iv) approving the procedures governing Debtors' selection of one or more stalking horse

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (N/A); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); and Oklahoma Energy Acquisitions, LP (3762).  The location of the Debtors' corporate headquarters and service address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion and Bidding Procedures, as applicable.

bidders (each, a "<u>Stalking Horse Bidder</u>"), if any, and the provision of Bid Protections (defined below) to such Stalking Horse Bidder, if necessary; (v) scheduling (A) a date for an auction if the Debtors receive one or more timely and acceptable Qualified Bids (the "<u>Auction</u>") and (B) a final hearing (the "<u>Sale Hearing</u>") to approve one or more Transactions, as necessary; and (vi) granting related relief, all as more fully described in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court being empowered to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing on the Motion (the "<u>Bidding Procedures Hearing</u>"); and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY FOUND AND DETERMINED THAT**:

A.     The predicates for relief granted herein are Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

B.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties-in-interest.

C.     The Debtors' notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.  Accordingly, no further notice of the Motion, the Bidding Procedures Hearing, or this Order is necessary or required.

D.      The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) approve the Bidding Procedures, including the procedures for selecting one or more Stalking Horse Bidders and granting Bid Protections (if any); (ii) establish the Assumption and Assignment Procedures; (iii) approve the form and manner of notice of all procedures, protections, schedules, and agreements, as applicable, attached to the Motion; (iv) schedule a date for the (A) Auction and (B) Sale Hearing; and (v) grant related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the Bidding Procedures Hearing, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

E.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court are overruled except as otherwise set forth herein.

F.      The Bidding Procedures, substantially in the form attached as <u>Annex 1</u> hereto, are fair, reasonable and appropriate and represent the best method for maximizing the value of the Debtors' estates.

G.      The Sale Notice, substantially in the form attached as <u>Annex 2</u> hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of Assets, including the proposed sale, subject to entry of a Sale Order, of Debtor Assets free and clear of all liens, claims and encumbrances, the Transaction(s), the Bidding Procedures, the Auction and the Sale Hearing, and no other or further notice is required.

H.      The Assumption Notice, substantially in the form attached as <u>Annex 3</u> hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper

notice of the potential assumption and assignment of the Designated Contracts in connection with the sale of the Assets and the related Cure Costs, and no other or further notice is required.

I.      The Post-Auction Notice, substantially in the form attached as <u>Annex 4</u> hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bid(s) and Back-Up Bid(s), and no other or further notice is required.

J.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**A.      Process Timeline**

1.      The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline; *provided* that the Debtors may (a) with the consent of the AMH Agent and after consultation with the Consultation Parties, extend or modify any of the following dates by filing a notice of such extension or modification on the Court's docket, or (b) seek a further order of the Court extending or modifying such dates:

| Date | Event |
|---|---|
| October 18, 2019 at 5:00 p.m. (Central Time) | Deadline for Indications of Interest |
| November 8, 2019 at 5:00 p.m. (Central Time) | Assumption Notice Deadline |
| December 2, 2019 at 5:00 p.m. (Central Time) | Deadline for Debtors to Identify Stalking Horse Bidder (if any) and seek Court approval of Bid Protections (if any) |

| | |
|---|---|
| December 18, 2019 at 5:00 p.m. (Central Time) | Bid Deadline |
| December 19, 2019 at 5:00 p.m. (Central Time) | Deadline to File Proposed Sale Order |
| December 30, 2019 at 5:00 p.m. (Central Time) | Sale Objection Deadline and Contract Objection Deadline (other than any objection based on the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder) |
| January 8, 2020 at 9:00 a.m. (Central Time) | Auction |
| January 8, 2020 | Reply Deadline |
| 2 hours prior to the commencement of the Sale Hearing | Deadline for objections based on the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder |
| January 10, 2020 at 9:30 a.m. (Central Time) | Sale Hearing |

2.     The failure by a party to timely file an objection in accordance with this Order shall forever bar such party from asserting any objection to the Motion, entry of the Stalking Horse Order or Sale Order and/or consummation of a Transaction(s), including the assumption and assignment of contracts and leases to the Successful Bidder pursuant to the Purchase Agreement, and shall be deemed to constitute any such party's consent to entry of the applicable order and consummation of the Transaction(s) and all other transactions related thereto.

3.     The Debtors reserve the right, and are authorized to, modify the above timeline and the Bidding Procedures (the "Modifications") in accordance with the Bidding Procedures; *provided*, that no such Modifications shall be made without (a) the consent of counsel to the Committee or (b) an Order of the Bankruptcy Court, in each case, to the extent that such

Modifications adversely affects the interests of the Committee, its members, or general unsecured creditors.

**B.      Bidding Procedures**

4.      The Bidding Procedures attached as Annex 1 hereto are incorporated by reference as though fully set forth herein and approved in their entirety.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance therewith.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of any such provision.

5.      The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures and this Order.

**C.      Stalking Horse Bidder, Related Bidding Protections and Purchase Agreement**

6.      The Debtors are authorized to enter into a Stalking Horse Agreement, which may provide for payment of break-up fees and/or expense reimbursements, as set forth in the Bidding Procedures, subject to entry of an order approving the selection of the Stalking Horse Bidder and any applicable Bid Protections as provided below.  To the extent necessary, the Debtors' right to seek this Court's approval of one or more Stalking Horse Bidders, with notice and a hearing, is hereby preserved.

7.      In the event that the Debtors select one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtors shall file with the Court and provide, to all parties on the Rule 2002 List, counsel to the Ad Hoc Noteholder Group, counsel to the AMH Agent, and all parties then known to have expressed an interest in the Debtor Assets or the Assets as part of the marketing process established by the Bidding Procedures, and all parties holding liens on such

Debtor Assets, five (5) business days' notice of and an opportunity to object to the designation of such Stalking Horse Bidder and the Bid Protections set forth in the Stalking Horse Agreement and absent objection, the Debtors may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder and the Bid Protections.

**D.     Notice Procedures**

8.     The form of Sale Notice, substantially in the form attached as <u>Annex 2</u> hereto, is approved.

9.     Within five (5) business days after the entry of this Order, the Debtors shall serve the Sale Notice and this Order, including the Bidding Procedures, by first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the ECF system, by ECF upon (i) to the best knowledge of the Debtors' management, all entities that have expressed written interest in a Transaction with respect to all or substantially all of the Debtor Assets or the Assets within the past six (6) months; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Debtor Assets; (iii) counsel for any Committee; (iv) counsel to the AMH Agent; (v) counsel to the KFM Agent; (vi) counsel to the Ad Hoc Noteholder Group; (vii) the U.S. Trustee; (viii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (ix) the United States Attorney's office for the Southern District of Texas; (x) the Internal Revenue Service; (xi) all parties entitled to notice pursuant to Bankruptcy Local Rule 2002-1(b); and (xii) all known creditors of the Debtors, including their contract counterparties; *provided, however*, that to the extent email addresses are available for any of the foregoing parties, such parties may be served by email.

10.     Service of the Sale Notice as described in paragraph 9 shall be deemed good and sufficient notice of the Transaction with respect to known interested parties.

11.     The Debtors are authorized and directed to publish the Sale Notice, as modified for publication, in the *Wall Street Journal* and *Houston Chronicle* within five (5) business days of the date of service of the Sale Notice as set forth herein.  In addition, the Debtors are authorized, but not directed, to (i) publish the Sale Notice in additional publications as the Debtors deem appropriate and (ii) cause the Sale Notice to be posted on their case information website at https://cases.primeclerk.com/altamesa.

12.     Publication of the Sale Notice as described in paragraph 11 shall be good and sufficient notice of the Transaction with respect to all unknown parties.

13.     The form of Post-Auction Notice, substantially in the form attached as <u>Annex 4</u>, is approved.  Within two (2) days after the conclusion of the Auction, if any, the Debtors shall file the Post-Auction Notice identifying any Successful Bidder(s) on the Court's docket and, to the extent that any non-Debtor party to an executory contract or unexpired lease that is proposed to be assumed and assigned to the Successful Bidder(s) has not filed a notice of appearance on the docket in these chapter 11 cases, serve the Post-Auction Notice on such parties by email, overnight mail or facsimile.

**E.      Assumption and Assignment Procedures**

14.     The Assumption and Assignment Procedures, as detailed in the Motion and incorporated herein by reference as if fully set forth in the Order, are approved.

15.     The Assumption Notice, substantially in the form attached as <u>Annex 3</u>, is approved.

16.     On or before November 8, 2019 (the "<u>Assumption Notice Deadline</u>"), the Debtors shall file with the Court, and post on the case website at https://cases.primeclerk.com/altamesa, the

Assumption Notice and Designated Contracts List.  If no Cure Cost is listed on the Designated Contracts List for a particular Designated Contract, the Debtors' asserted Cure Cost for such Designated Contract shall be deemed to be $0.00.  On or before the Assumption Notice Deadline, the Debtors shall serve, via first-class mail, the Assumption Notice that contains (i) the Designated Contracts List, (ii) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of Designated Contract(s) and rights thereunder, (iii) Cure Costs, if any, and (iv) the procedures for objecting thereto, on all counterparties to the Designated Contracts and all parties on the Rule 2002 Notice List.  Service of such Assumption Notice as set forth herein shall be deemed good and sufficient notice of, among other things, the proposed assumption and assignment of the Designated Contracts, the applicable Cure Costs related thereto, and the procedures for objecting thereto, and no other or further notice is necessary.

17.     Any objection by a Counterparty to a Designated Contract (a "Contract Objection") other than an objection based on the ability of the Successful Bidder or Backup Bidder to provide adequate assurance of future performance (an "Adequate Assurance Objection") must (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules and Bankruptcy Local Rules; (iii) be filed with the Clerk of Court on or before 5:00 p.m. (prevailing Central Time) on December 30, 2019 (the "Contract Objection Deadline"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Objection Recipients (as defined below); and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under Bankruptcy Code Sections 365(b)(1)(A) and (B) for the applicable Designated Contract, along with the specific nature and dates of any

alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

18.     Any time after the Assumption Notice Deadline and before the date one (1) business day prior to the Sale Hearing, the Debtors reserve the right, and are authorized but not directed, to (i) add previously omitted Designated Contracts as contracts to be assumed and assigned to a Successful Bidder in accordance with the definitive agreement for a Transaction, (ii) remove a Designated Contract from the Designated Contract List that a Successful Bidder proposes be assumed and assigned to it in connection with a Transaction, or (iii) modify the previously stated Cure Cost associated with any Designated Contract.

19.     If, after the Assumption Notice Deadline additional executory contracts or unexpired leases of the Debtors are determined to be Designated Contracts in connection with such Transaction or the Debtors seek to modify the previously stated Cure Cost associated with any Designated Contract, as soon as practicable thereafter and in no event less than one (1) business day before the date of the Sale Hearing, the Debtors shall file with the Court and serve, by overnight delivery on the applicable counterparties, a revised Assumption Notice (which shall deemed to amend and restate the prior Assumption Notice with respect to such Designated Contracts and/or Cure Costs), and such counterparties shall file any Contract Objections not later than (a) the Contract Objection Deadline in the event that such revised Assumption Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, (b) two (2) days prior to the Sale Hearing in the event that such revised Assumption Notice was filed and served at least seven (7) days prior to the commencement of the Sale Hearing, and (c) seven (7) days from the date such revised Assumption Notice was filed and served, in the event that such revised

Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing.

20.     As soon as practicable after the Auction and in no event less than one (1) business day before the date of the Sale Hearing, the Debtors shall file with the Court and serve, by overnight delivery, on the counterparties a notice substantially in the form attached as <u>Annex 4</u> hereto (the "<u>Post-Auction Notice</u>") identifying the Successful Bidder(s), and the counterparties shall file any Adequate Assurance Objections not later than two (2) hours prior to the commencement of the Sale Hearing; *provided*, that the deadline for any party who did not receive an Assumption Notice prior to the date that is seven (7) days before the Sale Hearing to assert an Adequate Assurance Objection shall be seven (7) days after the later of the date of service of such Assumption Notice and the Post-Auction Notice.

21.     At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Successful Bidder(s) of only those Designated Contracts that have been selected by such Successful Bidder(s) to be assumed and assigned (collectively, the "<u>Selected Designated Contracts</u>").  The inclusion of a Designated Contract on an Assumption Notice will not (i) obligate the Debtors to assume any Designated Contract listed thereon nor the Successful Bidder(s) to take assignment of such Designated Contract or (ii) constitute any admission or agreement of the Debtors that such Designated Contract is an executory contract.  The Debtors and their estates reserve any and all rights with respect to any Designated Contracts that are not ultimately designated as Selected Designated Contracts.

22.     If no Contract Objection is timely received with respect to a Selected Designated Contract: (i) the Counterparty to such Selected Designated Contract shall be deemed to have consented to the assumption by the Debtors and assignment to Successful Bidder of the Selected

Designated Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Designated Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to Bankruptcy Code Section 365(b)(1)(A) and (B) upon payment of the Cure Cost set forth in the Assumption Notice for such Selected Designated Contract; and (iii) the Cure Cost set forth in the Assumption Notice for such Selected Designated Contract shall be controlling, notwithstanding anything to the contrary in such Selected Designated Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Cost and shall be forever barred from asserting any other Claims related to such Selected Designated Contract against the Debtors and their estates or the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order.

23.     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under Bankruptcy Code Sections 365(b)(1)(A) and (B) (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Designated Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount the Counterparty asserts is required to be paid under Bankruptcy Code Section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the

Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

**F.    Sale Hearing**

24.    A Sale Hearing to (i) approve a sale of a portion or substantially all of the Assets to the Successful Bidder(s), (ii) approve designation of a Backup Bid and Backup Bidder in accordance with the Bidding Procedures, and (iii) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held on January 10, 2020 at 9:30 a.m. (prevailing Central Time), and may be adjourned or rescheduled by the Debtors from time to time (in accordance with the Bidding Procedures) without further notice.   Unless the Bankruptcy Court orders otherwise, any Sale Hearing shall be an evidentiary hearing on matters relating to the Transaction(s) and there will be no further bidding at such hearing.   In the event that the Successful Bidder(s) cannot or refuses to consummate the Transaction(s) because of the breach or failure on the part of such Successful Bidder, the Debtors, may, in accordance with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors shall be authorized, but not required, to consummate the applicable transaction with the Backup Bidder without further order of the Bankruptcy Court.

25.    Any and all objections, <u>if any, to any Transaction</u> (a "Sale Objection") must be filed no later than December 30, 2019 (the "Sale Objection Deadline").   Any and all such objections must be served on the Objection Recipients and counsel to any Successful Bidder(s), if known on the Sale Objection Deadline; *provided that*, notwithstanding the foregoing, any disputes  or objections, if any, to the conduct of the Auction or designation of the Successful Bid(s) or Backup Bid(s) (including the designation of any Stalking Horse Bid as a Successful Bid or Backup Bid) may be filed at any time prior to the Sale Hearing.   In addition, for avoidance of doubt, any

objections to a Successful Bidder's proposed form of adequate assurance of future performance will be resolved at the Sale Hearing or Supplemental Designated Contract Hearing, as applicable.

26.     All replies to any Sale Objection must be filed by 5:00 p.m. (Central Time) on January 8, 2020 (the "Reply Deadline").

**G.     Additional Provisions**

27.     Except as otherwise provided herein, any objection provided hereunder must be (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and Bankruptcy Local Rules, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor, and (iv) be filed with this Court and served so actually received no later than the applicable objection deadline by the following parties: (A) the Debtors, Alta Mesa Resources, Inc., 15021 Katy Freeway, Suite 400, Houston, TX 77094, Attn: Robert Albergotti and Kim Warnica; (B) counsel to the Debtors, (1) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, Attn: George A. Davis, Annemarie Reilly, and Brett M. Neve, and  Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn: Caroline Reckler; (2) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002, Attn: John F. Higgins; (C) counsel to the AMH Agent, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002, Attn: William A. Wood III; (D) counsel to the KFM Agent, Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201, Attn: Michael E. Bielby, Jr.; (E) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Damian S. Schaible; (F) counsel to any statutory committee appointed in these cases; (G) counsel to Kingfisher, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirpalani;

and (H) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Stephen Statham (the "Objection Recipients").

28.     The Bidding Procedures and any Bid Protections approved in accordance with the terms of this Order shall apply solely to the assets of the Debtors and their estates and shall not apply to any assets of any non-Debtor entity; *provided,* that nothing contained herein or in the Bidding Procedures shall be deemed to prohibit non-Debtor entities from selling their assets or separately agreeing to provide any bid protections to any Stalking Horse Bidder in connection with any Transaction.  If any assets of a non-Debtor entity are sold in conjunction with the Debtors' assets, this Court may approve any corporate action taken by the Debtors in connection with the sale of such non-Debtor entity's assets.

29.     Nothing in this Order or the Bidding Procedures shall preclude a Bidder from submitting a Bid in the form of a plan of a reorganization and it being understood that such Bid may be determined by the Debtors, in consultation with the Consultation Parties, to be a Qualified Bid, Stalking Horse Bid, Successful Bid, or Backup Bid.

30.     Any substantial contribution claims by any Bidder (other than the Ad Hoc Noteholder Group) are deemed waived, to the extent based solely on such Bidder's submission of a Bid in accordance with the Bidding Procedures.

31.     The Debtors are authorized and empowered to take such action as may be necessary to implement and effect the terms and requirements established under this Order.

32.     This Bidding Procedures Order shall be binding on and inure to the benefit of the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

US-DOCS\110978264.4

33.     This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

34.     To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

35.     To the extent of the deadlines set forth in this Order do not comply with the Bankruptcy Local Rules, such Bankruptcy Local Rules are waived and the terms of this Order shall govern.

36.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

37.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

38.     Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

39.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

40.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, any Stalking Horse Agreement, and the implementation of this Order.

Signed: October 11, 2019

Marvin Isgur
United States Bankruptcy Judge

US-DOCS\110978264.4

**<u>Annex 1</u>**

Bidding Procedures

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALTA MESA RESOURCES, INC., *et al.*, | § | Case No. 19-35133 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |
| | § | |

## BIDDING PROCEDURES

These Bidding Procedures have been approved by the United States Bankruptcy Court for the Southern District of Texas (the "Court") in connection with the chapter 11 cases for the above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") pursuant to an order dated as of October 11, 2019 (the "Bidding Procedures Order").[2]

These Bidding Procedures set forth the process by which the Debtors and their non-Debtor affiliates are authorized to solicit and select the highest and otherwise best offer for the sale of substantially all or any portion or combination of their assets (the "Debtor Assets") and the assets of the Debtors' non-Debtor affiliates, including the gathering assets owned by Kingfisher Midstream, LLC ("Kingfisher") and/or its subsidiaries (the "Non-Debtor Assets" and, collectively with the Debtor Assets, the "Assets") either through one sale to a Successful Bidder (defined below) or multiple sales to multiple Successful Bidders (each, a "Transaction").

## KEY DATES

These Bidding Procedures provide interested parties with the opportunity to complete diligence, to submit competing bids for all or any portion or combination of the Assets, and to participate in an auction to be conducted by the Debtors and their non-Debtor affiliates in consultation with the Bid Consultation Parties (the "Auction").

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (N/A); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); and Oklahoma Energy Acquisitions, LP (3762).  The location of the Debtors' corporate headquarters and service address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Motion for Entry of an Order Approving (I)(A) Bidding Procedures for the Sale of Substantially All or Any Portion of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing and Assumption Procedures, (D) Procedures for the Selection of One or More Stalking Horse Bidder(s), and (E) Dates for an Auction and Sale Hearing, and (II)(A) the Sale of Substantially All or Any Portion of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (B) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Related Relief* [Docket. No. 126].

The key dates for the sale process are as follows.  Such dates may be extended or otherwise modified by (a) the Debtors, with the consent of the AMH Agent and after consultation with the Consultation Parties, by filing a notice of such extension or modification on the Court's docket or (b) an order of the Bankruptcy Court:

| Date | Event |
|---|---|
| October 18, 2019 at 5:00 p.m. (Central Time) | Deadline for Indications of Interest |
| November 8, 2019 at 5:00 p.m. (Central Time) | Assumption Notice Deadline |
| December 2, 2019 at 5:00 p.m. (Central Time) | Deadline for Debtors to Identify Stalking Horse Bidder (if any) and seek Court approval of Bid Protections (if any) |
| December 18, 2019 at 5:00 p.m. (Central Time) | Bid Deadline |
| December 19, 2019 at 5:00 p.m. (Central Time) | Deadline to File Proposed Sale Order |
| December 30, 2019 at 5:00 p.m. (Central Time) | Sale Objection Deadline and Contract Objection Deadline (other than any objection based on the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder) |
| January 8, 2020 at 9:00 a.m. (Central Time) | Auction |
| January 8, 2020 | Reply Deadline |
| 2 hours prior to the commencement of the Sale Hearing | Deadline for objections based on the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder, including contract counterparty objections based on inadequate assurance of future performance |
| January 10, 2020 at [_]:00 [_].m. (Central Time) | Sale Hearing |

## PURCHASE AGREEMENT

The Debtors have drafted a form of Asset Purchase Agreement (together with all ancillary documents and agreements, the "PSA") for parties interested in acquiring the Debtor Assets and/or the Non-Debtor Assets.  The Debtors intend to provide copies of the form of PSA to all parties who express interest in submitting a Bid and will also make such form of PSA available in the

electronic dataroom established by the Debtors in connection with their sale process.[3]  Pursuant to the form of PSA, the Successful Bidder shall acquire the Debtor Assets free and clear of any and all pledges, liens, security interests, encumbrances, claims, charges, options, and other interests thereon (collectively, the "Interests") to the maximum extent permitted by Section 363 of title 11 of the United States Code (the "Bankruptcy Code") subject to certain other conditions, with such Interests to attach to the net proceeds of the sale of the Debtor Assets with the same validity and priority as such Interests applied against the Debtor Assets.

## ACCESS TO DEBTORS' DILIGENCE MATERIALS

To receive access to due diligence materials and to participate in the bidding process, an interested party must submit an executed confidentiality agreement in form and substance satisfactory to the Debtors and, to the extent such party intends to submit a bid for the purchase of Non-Debtor Assets, Kingfisher.

A party that delivers an executed confidentiality agreement satisfactory to the Debtors (and to the extent required above, Kingfisher) shall be a "Diligence Party."  As promptly as practicable after the Debtors determine that a party is a Diligence Party, the Debtors will deliver to the Diligence Party access to the Debtors' confidential electronic data room.  The Debtors shall also grant access to their confidential data room to the AMH Agent and its financial advisor and counsel, and to the financial advisor and counsel to the Ad Hoc Noteholder Group.  The Debtors will afford any Diligence Party the time and opportunity to conduct reasonable due diligence before the Bid Deadline (as defined below).  Notwithstanding the foregoing, the Debtors reserve the right to withhold any diligence materials that the Debtors determine (in their reasonable business judgment and in consultation with the Consultation Parties) are sensitive or otherwise not appropriate for disclosure to a Diligence Party that the Debtors determine (in their reasonable business judgment and in consultation with the Consultation Parties) is a competitor of the Debtors or is affiliated with any competitor of the Debtors.  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Diligence Party.

All due diligence requests must be directed to (i) John M. Cesarz of Perella Weinberg Partners at jcesarz@pwpartners.com and (ii) Warren Williamson and Travis Nichols of Tudor, Pickering, Holt & Co. at wwilliamson@tphco.com and tnichols@tphco.com, respectively.

Each Diligence Party and Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Diligence Party and/or Bidder and its contemplated transaction.  Failure by a Diligence Party to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine, in their reasonable business judgment and after consultation with the Consultation Parties (defined below), that such bidder is not a Qualified Bidder.  Failure by a Qualified Bidder to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties, that a

---

[3]   For the avoidance of doubt, parties may purchase substantially all or any portion or combination of the Assets, and the Debtors intend to provide parties interested in acquiring substantially all of the Assets or any portion or combination thereof with a form of PSA.

bid made by such Qualified Bidder is not a Qualified Bid. The Debtors reserve the right, in their discretion (in consultation with the Consultation Parties) to permit a Diligence Party or Qualified Bidder to remedy any such failure to comply. Kingfisher shall have the same rights as the Debtors with respect to the foregoing in connection with any Bid for any Non-Debtor Assets.

## INDICATIONS OF INTEREST

The Diligence Parties shall submit written indications of interest specifying, among other things, (i) the Assets (including, if applicable, Non-Debtor Assets) proposed to be acquired, including whether such party intends to bid for (A) the Debtor Assets of Debtor Alta Mesa Resources, Inc., (B) the Debtor Assets of Debtor Alta Mesa Holdings, LP and its subsidiaries, and/or (C) the Non-Debtor Assets of non-Debtor Kingfisher Midstream, LLC and its subsidiaries, or, in each case, any portion or combination thereof; (ii) the amount and type of consideration to be offered for any Debtor Assets to be purchased and the amount and type of consideration to be offered for any Non-Debtor Assets to be purchased, (iii) any material conditions or assumptions upon which a bid by such party will be based, including with respect to treatment of the Gathering Agreement (defined below), and (iv) any other material terms to be included in a bid by such party (an "Indication of Interest") on or before 5:00 p.m. (Central Time) on October 18, 2019. Notwithstanding anything to the contrary herein, an Indication of Interest may indicate the submitting party's interest in bidding in the form of a plan of reorganization (a "Restructuring Transaction"), it being understood that the Debtors, in consultation with the Bid Consultation Parties, reserve the right to modify these procedures, including, without limitation, Qualified Bid requirements, as necessary or appropriate to accommodate the submission and the Debtors' consideration of one or more Bids in the form of a Restructuring Transaction. The Debtors shall promptly provide to counsel to the Committee and the AMH Agent copies of any Indications of Interest received.

A Diligence Party that fails to timely submit an Indication of Interest, may not, in the Debtors' discretion (in consultation with the Consultation Parties), be provided further diligence access or be permitted to participate further in the auction process. The Debtors also reserve the right to exclude any Diligence Party (prior to its submission of a Qualified Bid) from continuing in the auction process if the Debtors determine, in consultation with the Bid Consultation Parties (defined below), that the consideration proposed to be paid by such Diligence Party is insufficient.

## QUALIFICATION PROCESS

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder") must satisfy each of the conditions set forth below, as determined by the Debtors in consultation with the Bid Consultation Parties. A Bid will not be considered a Qualified Bid (as defined below) for the Auction if such Bid does not satisfy each of the following conditions:

    (a)    <u>Good Faith Deposit</u>. Each Bid for all or a portion of the Assets must be accompanied by a deposit (a "Good Faith Deposit") submitted by wire transfer of immediately available funds to a segregated account identified by the Debtors. Each Good Faith Deposit must equal in the case of a Bid for all or a portion of the Assets, the amount of ten percent (10%) of the purchase price contained in the

Modified PSA (defined below), or such other amount as the Debtors determine, in consultation with the Consultation Parties.

(b) <u>Bids for Portions of the Assets</u>.  Each Bid must state whether the Bidder is offering to purchase all or substantially all of the Assets, any portion of the Assets, any combination of the Assets and any combination of Debtor Assets and Non-Debtor Assets. The Debtors may, in consultation with the Bid Consultation Parties, waive or modify the application of the Qualified Bid conditions in respect of Bids for a portion of the Assets.

(c) <u>Higher or Better Terms</u>.  To the extent a Stalking Horse Bidder (defined below) is selected, each subsequent Bid for any Assets subject to the Stalking Horse Agreement (defined below) (alone or combined with Bids for other Assets subject to the Stalking Horse Agreement) must be on terms that, in the Debtors' reasonable business judgment (and, if the Bid includes Non-Debtor Assets, that in Kingfisher's reasonable business judgment), in consultation with the Bid Consultation Parties, are higher and better than the terms of the Stalking Horse Agreement, and the aggregate value of such subsequent Bid, as determined by the Debtors (and, if the Bid includes Non-Debtor Assets, Kingfisher) in consultation with the Bid Consultation Parties, must exceed the Stalking Horse Bid by $2,500,000.

(d) <u>Executed Agreement</u>.  Each Bid contemplating a Transaction must be based on the PSA or Stalking Horse Agreement, if applicable, and must include duly authorized and executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Transaction (the "<u>Modified PSA</u>"). Each such Bid shall also include a copy of the Modified PSA, along with a redline of such Modified PSA marked against the PSA, to show all changes requested by the Bidder (including those related to purchase price).

(e) <u>Designation of Contracts and Leases</u>.  A Bid must (i) identify with particularity any and all executory contracts and unexpired leases of the Debtors for which assumption and assignment or rejection is required and (ii) provide for the payment of all cure amounts payable with respect to such assumed or assigned contracts and leases under the Bankruptcy Code.  In addition, with respect to the Gathering Agreements (as defined below), each Bid solely for the Debtor Assets must indicate (x) the total consideration that the Bidder would be willing to offer if the Gathering Agreements were assumed and assigned to the Purchaser (as defined in the PSA or the Stalking Horse Agreement, as applicable) and/or determined by the Court to run with the Debtor Assets to be purchased pursuant to such Bid, and (y) the total consideration that the Bidder would be willing to offer if the Gathering Agreements were rejected and/or in the event that the Debtor Assets were sold free and clear of such Gathering Agreements.  "Gathering Agreements" means, collectively:  (A) that certain Crude Oil Gathering Agreement by and between Oklahoma Energy Acquisitions, LP ("<u>OEA</u>") and Kingfisher Midstream LLC ("<u>KFM</u>"), dated as of August 31, 2015, as the same may have been amended, modified and/or supplemented; (B) that certain Gas Gathering and Processing Agreement, by and between OEA and KFM, dated as of August 31, 2015, as the same may have been

amended, modified and/or supplemented; and (C) that certain Water Gathering and Disposal Agreement, by and between OEA and Oklahoma Produced Water Solutions, LLC, dated as of October 1, 2018, as the same may have been amended, modified and/or supplemented.

(f)  Assumed Liabilities.  A Bid must identify the liabilities of the Debtors and/or Kingfisher, as applicable, to be assumed by such Bidder (the "Assumed Liabilities"), as well as the Assets covered by the Bid.

(g)  Corporate Authority.  A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to submit the Bid and consummate the proposed Transaction; *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the submission of the Bid and consummation of the Transaction by equity holder(s) of such Bidder.

(h)  Disclosure of Identity of Bidder.  A Bid must fully disclose the identity of each entity and its affiliates that will be bidding for or purchasing the Assets (including Non-Debtor Assets, if applicable) or otherwise participating in connection with such Bid (including any equity holder or other financial backer if the Bidder is an entity specifically formed for the purpose of effectuating the Transaction), and the complete terms of any such participation, including any binding agreements, arrangements, or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

(i)  Proof of Financial Ability to Perform.  A Bid must include written evidence that the Debtors reasonably conclude, in consultation with the Bid Consultation Parties, demonstrates that the Bidder has the necessary financial ability to (i) close the Transaction and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Transaction.  Such information must include, *inter alia*, the following:

1.  contact names and telephone numbers for verification of financing sources;

2.  evidence of the Bidder's internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid (including, if applicable, the Bidder's payment of cure amounts) or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the Transaction;

3.  the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors;

4.  a description of the Bidder's pro forma capital structure; and

     5.  any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such Bidder has the ability to close the Transaction.

(j)    <u>Regulatory and Third-Party Approvals</u>.  A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Transaction, if any, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Modified PSA, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible).

(k)    <u>Conditions to Closing</u>.  Each Bid must identify with particularity each condition to closing.

(l)    <u>Contingencies</u>.  Each Bid may not be conditioned on (i) obtaining financing, (ii) any internal approval, (iii) the outcome or review of unperformed due diligence (unless otherwise agreed upon by the Debtors (and, if the Bid includes Non-Debtor Assets, Kingfisher) in consultation with the Bid Consultation Parties), it being understood that Bids may be conditioned on the accuracy at closing of specified representations or warranties, or (iv) regulatory contingences, except as provided under "Regulatory and Third-Party Approvals".

(m)    <u>Irrevocable</u>.  Each Bid must expressly provide that (i) the Bidder is prepared to consummate the transaction set forth in the Modified PSA promptly following Court approval of the proposed Transaction and satisfaction of the closing conditions (if any) set forth in the Modified PSA, and (ii) the offer reflected in such Bid shall remain open and irrevocable until the conclusion of the Auction, *provided* that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain open and irrevocable as provided under "Closing the Auction; Successful Bidder" and "Backup Bidder" below.

(n)    <u>Purchase Price</u>.  Each Bid (including any Overbid as defined below) must: (i) clearly state which Debtor Assets (and Non-Debtor Assets, if any) the Bidder is agreeing to purchase and which liabilities the Bidder is agreeing to assume; (ii) clearly set forth the purchase price to be paid, including and identifying separately any cash and non-cash components; and (iii) specify the portion of the aggregate purchase price thereunder that the Bidder allocates to the Debtor Assets of the AMH Debtors; *provided* that such allocation shall not be binding on the Debtors, Kingfisher, the Court, or any third parties.  Notwithstanding the foregoing, no Bid may be chosen as the Successful Bid or the Backup Bid for the purchase of Debtor Assets of the AMH Debtors unless there is a binding purchase price to be paid to the AMH Debtors, nor may any Bid be chosen as the Successful Bid or the Backup Bid for the purchase of Non-Debtor Assets of Kingfisher or its subsidiaries unless there is a binding purchase price to be paid to Kingfisher or its subsidiaries.

(o)     <u>Jurisdiction</u>.  Each Bid must state that the Bidder consents to the jurisdiction of the Court.

(p)     <u>Independent Review</u>.    Each Bid shall include an acknowledgment and representation of the Bidder that it has had an opportunity to conduct any and all due diligence regarding the Debtor Assets and Non-Debtor Assets (if applicable) prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Debtor Assets and Non-Debtor Assets (if applicable) in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures.

(q)     <u>Bid Representatives</u>.  Each Bid shall identify the representatives of the Bidder that are authorized to appear and act on behalf of the bidder in connection with the proposed Transaction.

(r)     <u>No Break-Up Fee.</u>  Each Bid shall indicate that such Bidder will not seek any transaction break-up fee, expense reimbursement, or similar type of payment (other than to the extent such Bid is selected to be a Stalking Horse Bid, and subject to the provisions applicable to "Stalking Horse Bids" below).

(s)     <u>Bid Deadline</u>.  Each Bid must be received by each of the following parties, in writing, on or before 5:00 p.m. (Central Time) on December 30, 2019, or such other date as may be established pursuant to these Bidding Procedures in accordance with the section titled "Key Dates" above (the "<u>Bid Deadline</u>"): (i) the Alta Mesa Resources, Inc., 15021 Katy Freeway, Suite 400, Houston, Texas 77094, Attn: Robert Albergotti and Kim Warnica; (ii) Latham & Watkins, LLP, 885 Third Avenue, New York, NY 10022, Attn:  George Davis, Annemarie Reilly, and Brett Neve; (iii) Latham & Watkins, LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler; (iv) Perella Weinberg Partners, 767 Fifth Avenue, New York, NY 10153, Attn: John M. Cesarz; (v) Tudor, Pickering, Holt & Co., Heritage Plaza, 1111 Bagby, Suite 4900, Houston, Texas 77002, Attn: Travis Nichols; (vi) solely to the extent such Bid contemplates a purchase of Non-Debtor Assets, whether in whole or in part, counsel to Kingfisher, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirpalani; (vii) solely to the extent such Bid contemplates a purchase of Non-Debtor Assets, whether in whole or in part, financial advisors to Kingfisher, Evercore, 55 East 52nd Street, New York, NY 10055, Attn: Daniel Aronson; (viii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Stephen Statham; (ix) counsel to the AMH Agent, 711 Louisiana St., Suite 2300, Houston, TX 77002, Attn: William A. (Trey) Wood III; and (x) counsel to the Official Committee of Unsecured Creditors (a "<u>Committee</u>"), Brown Rudnick LLP, 7 Times Square, New York, NY 10036 (Attn: Robert Stark and Andrew Carty).  The Debtors will provide to the Bid

Consultation Parties copies of Bids received for the Debtor Assets promptly after the expiration of the Bid Deadline.

A Bid received from a Bidder on or before the Bid Deadline that meets each of the requirements set forth above, as determined by the Debtors and/or Kingfisher (as applicable), in consultation with the Bid Consultation Parties, for the applicable Assets shall constitute a "Qualified Bid" for such Assets, and such Bidder shall constitute a "Qualified Bidder" for such Assets.  Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided, however*, that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may, after consultation with the Consultation Parties, provide such Bidder the opportunity to remedy any deficiencies in such Bid prior to the Auction.  For the avoidance of doubt, any Stalking Horse Bid for the Debtor Assets satisfying the requirements for a Qualified Bid set forth above, or otherwise acceptable to the AMH Agent, shall be a Qualified Bid and the Bidder submitting such Bid shall be a Qualified Bidder.

Nothing herein shall preclude a Bidder from submitting a Bid in form of a Restructuring Transaction, it being understood that the Debtors, in consultation with the Bid Consultation Parties, reserve the right to modify these procedures, including, without limitation, Qualified Bid requirements, as necessary or appropriate to reflect the submission and the Debtors' consideration of one or more Bids in the form of a Restructuring Transaction; *provided* that (i) in order for a Bid in the form of a Restructuring Transaction to constitute a Qualified Bid, the Debtors, in consultation with the Bid Consultation Parties, must determine in good faith that such Bid is capable of satisfying the requirements of section 1129 of the Bankruptcy Code and being consummated, and (ii) the failure of any such Bid to satisfy the requirements set forth above in subparagraphs (a) through (s) may be taken into account by the Debtors and the Bid Consultation Parties in evaluating such Bid.  Any Bid in the form of a plan of reorganization satisfying the requirements of this paragraph may be determined by the Debtors, in consultation with the Bid Consultation Parties, to be a Qualified Bid, Stalking Horse Bid, Successful Bid, or Backup Bid (each as defined below).

Notwithstanding anything to the contrary herein, any Bid submitted in writing by the Ad Hoc Noteholder Group (an "Ad Hoc Group Bid") or the RBL Lenders (as defined below) shall be deemed to be a Qualified Bid; *provided* that (w) such Ad Hoc Group Bid or RBL Lenders Bid shall comply with all applicable deadlines required herein (including the Bid Deadline), (x) the Debtors shall have no obligation to deem such Ad Hoc Group Bid or RBL Lenders Bid a Stalking Horse Bid, Successful Bid, or Backup Bid, (y) such Bid(s) shall not constitute a Qualified Bid for purposes of paragraph 10(q)(iv) of the Interim Cash Collateral Order [D.I. 63] or paragraph 10(p)(iv) of the Second Interim Cash Collateral Order or any similar provision of any subsequent cash collateral order entered in these cases, and (z) the failure of any Ad Hoc Group Bid or RBL Lenders Bid to satisfy the requirements set forth above in subparagraphs (a) through (s) may be taken into account by the Debtors and the Bid Consultation Parties in evaluating such Bid(s) for purposes of deeming such Bid(s) a Stalking Horse Bid, Successful Bid, or Backup Bid (each as defined below), and for purposes of conducting the Auction.

## CREDIT BIDDING

Notwithstanding anything else contained in the Bidding Procedures, the lenders (the "RBL Lenders") under the secured revolving credit facility with Wells Fargo Bank, National Association, as administrative agent thereunder (the "AMH Agent") shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of their allowed secured claims in any bulk or piecemeal sale of the Assets constituting the collateral of the RBL Lenders under the secured revolving credit facility at the Auction to the extent provided in Bankruptcy Code section 363(k) or other applicable law, in accordance with the applicable provisions of the documents governing such debt obligations; *provided,* that for the avoidance of doubt, (i) the foregoing shall not impair or waive any challenge rights preserved in the Cash Collateral Order or any parties' right to object to selection or approval of such credit bid based on such challenge rights or for good cause shown, and (ii) the Debtors may take into account any objection raised pursuant to such challenge rights under the Cash Collateral Order or for good cause shown in evaluating such credit bid.  If the AMH Agent submits a credit bid in accordance with the foregoing, and such bid is received by the Bid Deadline, the AMH Agent shall be deemed a Qualified Bidder and any such credit bid shall be deemed to be a Qualified Bid; *provided*, that the Debtors, in consultation with the Bid Consultation Parties, may take into account the failure of any such Bid to provide for payment of (a) administrative expenses of the Debtors that own the assets subject to such Bid and (b) any claims against the Debtors secured by liens on the assets subject to such Bid that are senior to the liens of the AMH Agent in evaluating any such Bid.

## STALKING HORSE BIDS

Subject to the provisions set forth in the Bidding Procedures and the Bidding Procedures Order, and after consultation with the Bid Consultation Parties, the Debtors (and, if the Bid includes Non-Debtor Assets, Kingfisher) may, in the exercise of their business judgment, enter into a stalking horse agreement (a "Stalking Horse Agreement"), subject to higher or otherwise better offers at the Auction, with any Bidder to establish a minimum Qualified Bid at the Auction (such Qualified Bidder, a "Stalking Horse Bidder").   Subject to approval by the Court in accordance with the below, Stalking Horse Agreement may provide for payment of break-up fees and/or expense reimbursements (the "Bid Protections").  For the avoidance of doubt, a Stalking Horse Bid may be in the form of a plan of reorganization.

In the event that the Debtors (in consultation with the Bid Consultation Parties) select one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtors shall file with the Court and provide, to all parties on the Rule 2002 List, counsel to the Ad Hoc Noteholder Group, counsel to the Committee, counsel to the indenture trustee for the 7.785% senior unsecured notes issued by Alta Mesa Holdings, LP and Alta Mesa Finance Services Corp. (the "AMH Indenture Trustee"), counsel to the AMH Agent, and all parties then known to have expressed an interest in the Debtor Assets as part of the marketing process established by these Bidding Procedures, and all parties holding liens on such Debtor Assets, five (5) business days' notice of and an opportunity to object to the designation of such Stalking Horse Bidder and the Bid Protections set forth in the Stalking Horse Agreement, and absent objection, the Debtors may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder.  To the extent necessary, the Debtors' right to seek the Court's approval of one or more Stalking Horse Bidders, with notice and a hearing, is hereby preserved.  The Stalking Horse

Bidder and Stalking Horse Agreement, if any, shall be filed with the Court no later than December 2, 2019 at 5:00 p.m. (Central Time), or such other date as may be established pursuant to these Bidding Procedures in accordance with the section titled "Key Dates" above.

Any Stalking Horse Agreement executed by the Debtors and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtors will be deemed to be a Qualified Bidder.

Other than as provided by order of the Court, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for any Stalking Horse Bidder.  Any substantial contribution claims by any Bidder (other than the Ad Hoc Noteholder Group) are deemed waived, to the extent based solely on such Bidder's submission of a Bid hereunder.

## HIGHEST OR OTHERWISE BEST BID

Whenever these Bidding Procedures refer to the highest or otherwise best Qualified Bid, such determination shall take into account any factors the Debtors (and, if Non-Debtor Assets are included in such Bid, Kingfisher), in consultation with the Bid Consultation Parties (solely in the case of the Debtors), reasonably deem relevant to value of the Qualified Bid to the estates and may include, but are not limited to, the following:  (i) the amount and nature of the consideration, including any Assumed Liabilities; (ii) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such Qualified Bid (including any litigation attendant to rejection of the Gathering Agreements); (iii) the number, type and nature of any changes to the PSA requested by each Qualified Bidder; (iv) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modifications or delay; (v) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; and (vi) the net benefit to the Debtors' estates (collectively, the "Bid Assessment Criteria").  Notwithstanding anything to the contrary herein, with respect to any Bid for any assets of the AMH Debtors, the Bid Assessment Criteria and any other consideration of such Bid shall be evaluated solely with respect to the value thereof, and the effect of such Bid on, the estates of the AMH Debtors.

## AUCTION

If two or more Qualified Bids for the same Debtor Assets are received by the Bid Deadline, the Debtors will conduct the Auction with respect to such Assets to determine the highest or otherwise best Qualified Bid.  If fewer than two Qualified Bids are received by the Bid Deadline with respect to any portion of the Debtor Assets, the Debtors shall not conduct the Auction with respect to such Assets.  If only one Qualified Bid is received with respect to all or a portion of the Assets, the Debtors (and, if Non-Debtor Assets are included in such Bid, Kingfisher) may, after consultation with the Bid Consultation Parties, designate such Qualified Bid as the Successful Bid(s) (as defined below).  Only Qualified Bidders may participate in the Auction.

## PROCEDURES FOR AUCTION

The Auction shall take place on January 3, 2020 at 9:00 a.m. (Central Time) at the offices of counsel for the Debtors, Latham & Watkins LLP, 811 Main Street, Suite 3700, Houston, TX 77002 or at such other place and time as the Debtors shall notify all Qualified Bidders, the Consultation Parties and all other parties entitled to attend the Auction. The Auction shall be conducted according to the following procedures:

Only the Debtors, the Consultation Parties, the Stalking Horse Bidder(s) (if any), any other Qualified Bidders, Kingfisher (if any Qualified Bid includes Non-Debtor Assets), and/or other parties as the Debtors may determine to include in their discretion (in consultation with the Bid Consultation Parties), in each case, along with their representatives and advisors, shall be entitled to attend the Auction and only Qualified Bidders will be entitled to make any Overbids (defined below) at the Auction. The Qualified Bidders and any other authorized attendees shall appear in person or through duly-authorized representatives at the Auction.

### *The Debtors Shall Conduct the Auction*

The Debtors and their advisors shall direct and preside over the Auction, which shall be transcribed. Other than as expressly set forth herein, the Debtors may conduct the Auction in the manner they determine (in consultation with the Bid Consultation Parties) will result in the highest or otherwise best offer for any of the Assets or otherwise maximize the value of the Assets. The Debtors shall, at least twenty-four (24) hours prior to commencement of the Auction, provide the Consultation Parties and each Qualified Bidder participating in the Auction and any other parties entitled to attend the Auction with a copy of the Modified PSA associated with the highest or otherwise best Qualified Bid with respect to the Assets for which such Qualified Bidder is bidding, as determined by the Debtors (in consultation with the Bid Consultation Parties) and, if Non-Debtor Assets are included in such Bid, Kingfisher (such highest or otherwise best Qualified Bid, the "Starting Bid"). At the start of the Auction, the Debtors shall describe the material terms of the Starting Bid and each Qualified Bidder participating in the Auction must confirm that (i) it has not engaged in any collusion with respect to the bidding or sale of any of the Assets described herein, (ii) it has reviewed, understands, and accepts the Bidding Procedures, (iii) it has consented to the core jurisdiction of the Court (as described more fully below), and (iv) its Qualified Bid is a good-faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

### *Terms of Overbid*

An "Overbid" is any bid made at the Auction, in accordance with the requirements set forth herein (as determined by the Debtors after consultation with the Bid Consultation Parties), subsequent to the Debtors' announcement of the respective Starting Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)   Minimum Overbid Increments. The initial Overbid, if any, shall provide for total consideration to the Debtors and, if the Overbid includes Non-Debtor Assets, the non-Debtor owners of such assets, of an aggregate value that exceeds the value of the consideration under the Starting Bid by an incremental amount that is not less than the sum of (i) $2,500,000 (the "Minimum Overbid Increment"), plus (ii) in the

event that the Debtors have entered into a Stalking Horse Agreement with respect to the Assets to which the Overbid relates, the aggregate amount of Bid Protections (including, for the avoidance of doubt, any break-up fees and/or expense reimbursements) under such Stalking Horse Agreement, and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment.  The Debtors reserve the right, in consultation with the Bid Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction.  Additional consideration in excess of the amount set forth in the respective Starting Bid may include (a) cash and/or non-cash consideration, *provided, however,* that the value for such non-cash consideration shall be determined by the Debtors (and, if the Bid includes Non-Debtor Assets, Kingfisher) in their reasonable business judgment in consultation with the Bid Consultation Parties, and (b) in the case of a Bid by the RBL Lenders, a credit bid up to the full amount of such secured creditors' allowed secured claims, subject to the Bankruptcy Code and such credit bidding rights shall be subject to entry of a final cash collateral order and any challenge rights preserved therein.

(b) <u>Remaining Terms Are the Same as for Qualified Bids</u>.  Except as modified in the Bidding Procedures, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, *provided, however*, that the Bid Deadline shall not apply.  Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the PSA or Modified PSA, as the case may be, in connection therewith.  For the avoidance of doubt, any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these Bidding Procedures and the conditions for a Qualified Bidder.

At the Debtors' discretion (in consultation with the Bid Consultation Parties), to the extent not previously provided (which shall be determined by the Debtors in consultation with the Bid Consultation Parties), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors), as the Debtors, in their reasonable business judgment (in consultation with the Bid Consultation Parties) may request, demonstrating such Bidder's ability to consummate the Transaction proposed by such Overbid.

### *Announcement and Consideration of Overbids*

(a) <u>Announcement of Overbids</u>.  A Bidder submitting an Overbid at the Auction shall announce at the Auction the material terms of such Overbid, including, without limitation, the total amount and type of consideration offered in such Overbid.

(b) <u>Consideration of Overbids</u>.  The Debtors reserve the right, in their reasonable business judgment and after consultation with the Bid Consultation Parties, to make one or more continuances of the Auction to, among other things:   facilitate

discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment and in consultation with the Bid Consultation Parties, may require that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Transaction at the prevailing Overbid amount.

### Additional Procedures

The Debtors in the exercise of their fiduciary duties for the purpose of maximizing value for their estates from the sale process, may modify the Bidding Procedures and implement additional procedural rules for conducting the Auction in consultation with the Bid Consultation Parties. Specifically, among other things, the Debtors may determine, in consultation with the Bid Consultation Parties, to select more than one Successful Bid and more than one Successful Bidder (and/or more than one Backup Bid (as defined below) and more than one Backup Bidder (as defined below), in which event such Backup Bids may provide for groupings of Assets that are different from the groupings of Assets reflected in the Successful Bid(s)) for separate portions of the Assets.

### Consent to Jurisdiction as Condition is Bidding

All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, their chapter 11 cases, the Bidding Procedures, the PSA, the Auction, or the construction and enforcement of documents relating to any Transaction and shall waive any right to a jury trial in connection with any disputes relating to the Debtors, their chapter 11 cases, the Bidding Procedures, the PSA, the Auction, or the construction and enforcement of documents relating to any Transaction.

### Sale Is As Is/Where Is

Any of the Debtor Assets sold pursuant to the Bidding Procedures shall be sold free and clear of all Interests as permitted by Bankruptcy Code section 363(f) other than any Assumed Liabilities and conveyed at Closing in their then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**", except to the extent set forth in the definitive agreement for the Successful Bid, if applicable, and as approved by the Court.

For the avoidance of doubt, the "free and clear" provisions of section 363(f) of the Bankruptcy Code shall not apply to any sale of Non-Debtor Assets and such sale shall not be subject to Court approval; *provided*, that the foregoing shall not preclude the sale of any Debtor Assets free and clear of any interests of the Non-Debtors in such assets; *provided, further,* the Non-Debtors reserve all rights and defenses with respect to any sale of any Debtor Assets that is purported or asserted to be free and clear of any interests of the Non-Debtors in such assets.

### Closing the Auction; Successful Bidder

The Auction shall continue until there is only one Qualified Bid or combination of Qualified Bids for each portion of the Assets that the Debtors (and, if Non-Debtor Assets are included in such Bid, Kingfisher) determine in their reasonable business judgment and in a manner consistent with their fiduciary duties, in consultation with the Bid Consultation Parties, is the highest or otherwise best Qualified Bid at the Auction for such portion of the Assets, and that further bidding is unlikely to result in higher or otherwise better Qualified Bid(s) that would be acceptable to the Debtors.  Thereafter, the Debtors (and, if Non-Debtor Assets are included in such Bid, Kingfisher) shall select such Qualified Bid(s), in consultation with the Bid Consultation Parties, as the overall highest or otherwise best Qualified Bid(s) (such Bid(s), the "Successful Bid(s)", and the Bidder(s) submitting such Successful Bid, the "Successful Bidder(s)").  In making this decision, the Debtors (and, if Non-Debtor Assets are included in such Bid, Kingfisher) shall consider (in consultation with the Bid Consultation Parties) the Bid Assessment Criteria.  For the sake of clarity, no sale of Non-Debtor Assets will occur without the prior consent of Kingfisher.

The Auction shall close when the Successful Bidder(s) submits fully executed sale and/or other transaction documents memorializing the terms of the Successful Bid(s).

If an Auction is held, the Debtors (and, if Non-Debtor Assets are included in the Bid, Kingfisher) shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid(s) at the Auction and (ii) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Court of the Successful Bid(s) and the entry of an order approving such Successful Bid(s).

Promptly following the Debtors' (and, if Non-Debtor Assets are included in the Bid, Kingfisher's) selection of the Successful Bid(s) and the conclusion of the Auction, the Debtors shall announce the Successful Bid(s) and Successful Bidder(s) and shall file with the Court notice of the Successful Bid(s) and Successful Bidder(s).

Neither the Debtors nor the Court shall consider any Bids submitted after the conclusion of the Auction.  The Successful Bidder(s) shall be required to keep the Successful Bid(s) open and irrevocable until the closing of the Transactions contemplated thereby.

### *Backup Bidder*

Notwithstanding anything in the Bidding Procedures to the contrary, the Qualified Bid that the Debtors (and, if Non-Debtor Assets are included in such Bid, Kingfisher) determine in their reasonable business judgment, in consultation with the Bid Consultation Parties, is the next highest or otherwise best Qualified Bid at the Auction after the Successful Bid(s), will be designated the "Backup Bid" and the Bidder submitting such Backup Bid, the "Backup Bidder."  The Backup Bidder shall be required to keep the Backup Bid open and irrevocable until the earlier of 11:59 p.m. (prevailing Central Time) on the date that is 30 days after the date of entry of an order of the Court approving the transactions contemplated therein (the "Sale Order" and such date 30 days after the date of entry of the Sale Order, the "Outside Backup Date"), or the closing of the transaction with the Successful Bidder(s).

Following entry of the Sale Order, if the Successful Bidder fails to consummate the Successful Bid, the Debtors (and, if Non-Debtor Assets are included in such Bid, Kingfisher) may, in consultation with the Bid Consultation Parties, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to, in consultation with the Bid Consultation Parties, agree to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court; *provided*, that such Backup Bid shall be subject to Court approval in connection with the Court's approval of the Successful Bid.  In such case of a breach or failure to perform on the part of the Successful Bidder and in such other circumstances as may be specified in the definitive documentation governing the Successful Bid, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors (or, if Non-Debtor Assets are included in the Bid, to the Debtors and Kingfisher).  The Debtors (and, if Non-Debtor Assets are included in such Bid, Kingfisher) specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

***True Up of Good Faith Deposit***

If an Auction is held, then within three (3) business days following the conclusion of the Auction, the Successful Bidder(s) shall submit by transfer of immediately available funds to an account identified by the Debtors the amount required to increase the Successful Bidder(s)' Good Faith Deposit to ten percent (10%) of the purchase price contained in the Successful Bid(s), as applicable, or such other amount as the Debtors determine, in consultation with the Bid Consultation Parties.

## SALE HEARING

A hearing to consider approval of a Transaction and the transfer of all of the applicable Debtor Assets and Assumed Liabilities to the Successful Bidder(s) (the "Sale Hearing") is presently scheduled to take place on January 10, 2020 at [___ a.m.] (Central Time), or as soon thereafter as counsel may be heard, before the Honorable Judge Marvin Isgur, United States Bankruptcy Judge in Courtroom 400, 4th Floor, 515 Rusk Street, Houston, Texas 77002.

The Sale Hearing may be continued to a later date by the Debtors (with the consent of the AMH Agent) by sending notice prior to, or making an announcement at, the Sale Hearing, or as may be ordered by the Bankruptcy Court.  No further notice of any such continuance will be required to be provided to any party.

At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Court for approval.  The Debtors' presentation of the Successful Bid(s) to the Court will not constitute the Debtors' acceptance of such Bid(s), which acceptance will only occur upon approval of such Bid(s) by the Court.

## RETURN OF GOOD FAITH DEPOSITS

The Good Faith Deposits of all Qualified Bidders shall be held in one or more segregated accounts by the Debtors, but shall not become property of the Debtors' estates; *provided, however,*

that the Good Faith Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) shall be forfeited to the Debtors if the Successful Bidder fails to consummate the Successful Bid  or credited towards the purchase price set forth in the Successful Bid if the Successful Bid is consummated (provided, that if Non-Debtor Assets are included in the Bid, any forfeit or credit shall go to the Debtors and Kingfisher).  The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than five (5) days after the conclusion of the Auction.  The Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder not later than three (3) business days after (i) the closing of the transaction with the Successful Bidder for the Assets bid upon by the Backup Bidder and (ii) the Outside Backup Date; *provided, however*, that if the Backup Bid becomes the Successful Bid as provided herein, any subsequent breach or failure to perform by the Backup Bidder may result in the forfeit of the Good Faith Deposit of the Backup Bidder to the Debtors (or, if Non-Debtor Assets are included in the Bid, to the Debtors and Kingfisher in the same proportions as the aggregate purchase price was allocated between the Debtor Assets and the Non-Debtor Assets in such Bid).  Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that may have accrued thereon.

## CONSULTATION PARTIES

With respect to any Bid that includes any Debtor Assets, the Debtors shall consult with advisors to the AMH Agent, the AMH Indenture Trustee, the Ad Hoc Noteholder Group, and any Committee (collectively, the "Consultation Parties" and each, a "Consultation Party") as explicitly provided for in these Bidding Procedures; *provided, however*, that, in certain circumstances as set forth in these Bidding Procedures, the Debtors shall consult only with the Bid Consultation Parties.  The "Bid Consultation Parties" shall be all Consultation Parties (and their advisors) other than any Consultation Party (and its advisors) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open (and, after the Bid Deadline, is deemed to be a Qualified Bid).

To the extent any insider of the Debtors or any of their affiliates, or any person or entity controlled by such insider of the Debtors or any of their affiliates, chooses to submit a Bid, and such Bid is deemed a Qualified Bid, such insider and any person associated with such insider shall be expressly prohibited from participating in any manner in the evaluation of Qualified Bids and the Auction (other than in his or her capacity as a Qualified Bidder).

## RESERVATION OF RIGHTS OF THE DEBTORS

Except as otherwise provided in the PSA, these Bidding Procedures or the Bidding Procedures Order, the Debtors further reserve the right, in their reasonable business judgment after consultation with the Bid Consultation Parties: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions with respect to all potential bidders; (vii) extend the deadlines set forth herein; (viii) continue or cancel

the Auction and/or Sale hearing in open court, or by filing a notice on the docket of the Debtors'
chapter 11 cases, without further notice; (ix) include any other party as an attendee at the Auction;
and (x) modify the Bidding Procedures and implement additional procedural rules for conducting
the Auction so long as such rules are not inconsistent in any material respect with the Bankruptcy
Code, the Bidding Procedures order, or any other order of the Court.

**<u>Annex 2</u>**

Sale Notice
*(To Be Filed)*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| ALTA MESA RESOURCES, INC., *et al.*, | § Case No. 19-35133 (MI) |
| | § |
| Debtors.[1] | § (Jointly Administered) |
| | § |

**NOTICE OF PROPOSED SALE, BIDDING PROCEDURES, AUCTION,
AND SALE HEARING**

PLEASE TAKE NOTICE that, on September 11, 2019, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed voluntary petitions commencing these cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

PLEASE TAKE FURTHER NOTICE that, on September 16, 2019, the Debtors filed a motion (the "Motion")[2] with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") seeking, among other things, entry of an order (the "Bidding Procedures Order"): (i) approving proposed bidding procedures (the "Bidding Procedures") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "Debtor Assets" and together with the Non-Debtor Assets the "Assets") through one or more sales of the Debtor Assets and/or a combined sale of both the Debtor Assets and the Non-Debtor Assets (each, a "Transaction"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (iii) approving the procedures governing Debtors' and/or the Non-Debtors' selection of one or more stalking horse bidder (each, a "Stalking Horse Bidder"), if any, and the provision of Bid Protections to such Stalking Horse Bidder(s), if necessary; (iv) scheduling (a) a date for an auction if the Debtors receive one or more timely and acceptable Qualified Bids (the "Auction") and (b) a final hearing (the "Sale Hearing") to approve one or more Transactions, as necessary; and (v) granting related relief.

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); and Oklahoma Energy Acquisitions, LP (3762). The location of the Debtors' corporate headquarters and service address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

PLEASE TAKE FURTHER NOTICE that, on _____, 2019, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. __].

**PLEASE TAKE FURTHER NOTICE that any party that wishes to take part in the sale process contemplated by the Bidding Procedures Order and submit a Bid for the Debtor Assets must submit its Bid in accordance with the terms and conditions of the Bidding Procedures, including the requirements for submitting a Qualified Bid, by December 18, 2019 (the "Bid Deadline").**

PLEASE TAKE FURTHER NOTICE that pursuant to the Bidding Procedures Order, if the Debtors receive two or more timely and acceptable Qualified Bids for the same Debtor Assets, the Debtors will conduct the Auction on **January 8, 2020 at 9:00 a.m. (prevailing Central Time)** at the offices of counsel for the Debtors, Latham & Watkins LLP, 811 Main Street, Suite 3700, Houston, TX 77002, or at such other place and time as the Debtors shall notify all Qualified Bidders, the Consultation Parties, and all other parties entitled to attend the Auction. Only the Debtors, the Consultation Parties, the Stalking Horse Bidder(s) (if any), any other Qualified Bidder and/or other party as the Debtors may determine to include in their discretion, in each case, along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person), and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

PLEASE TAKE FURTHER NOTICE that the Debtors have the right to adjourn or cancel the Auction at or prior to the Auction.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bidding Procedures Order, the Debtors are authorized to enter into one or more agreements (each, a "Stalking Horse Agreement") with one or more Stalking Horse Bidders regarding a Transaction. In the event that the Debtors select one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtors shall provide, to all parties on the Rule 2002 List, counsel to the Ad Hoc Noteholder Group, counsel to the AMH Agent, counsel to the Committee, and all parties then known to have expressed an interest in the Debtor Assets as part of the marketing process established by the Bidding Procedures, and all parties holding liens on such Debtor Assets, five (5) business days' notice of and an opportunity to object to the designation of such Stalking Horse Bidder and disclosure of the Bid Protections set forth in the Stalking Horse Agreement, and absent objection, the Debtors selection of such Stalking Horse Bidder shall be deemed designated without further order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE that the Sale Hearing to consider approval of a Transaction(s) and the transfer of all of the Assumed Liabilities to the Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), will be held before the Honorable Marvin Isgur, United States Bankruptcy Judge for the Southern District of Texas, at the Bankruptcy Court, 515 Rusk Street, Courtroom 400, Houston, Texas 77002 on January 10, 2020 at _____ [a.m. / p.m.] (prevailing Central Time). The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.**

PLEASE TAKE FURTHER NOTICE that objections to the Transaction(s), if any, must be filed and served so as to be actually received by the Objection Recipients no later than **December 30, 2019**. The Objection Recipients are: (i) the Debtors, Alta Mesa Resources, Inc., 15021 Katy Freeway, Suite 400, Houston, TX 77094, Attn: Robert Albergotti and Kim Warnica; (ii) counsel to the Debtors, (a) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, Attn: George A. Davis, Annemarie Reilly, and Brett M. Neve, and Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn: Caroline Reckler; (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002, Attn: John F. Higgins; (iii) counsel to the AMH Agent, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002, Attn: William A. Wood III; (iv) counsel to the KFM Agent, Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201, Attn: Michael E. Bielby, Jr.; (v) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Damian S. Schaible; (vi) counsel to the Official Committee of Unsecured Creditors, Brown Rudnick LLP, 7 Times Square, New York, NY 10036 (Attn: Robert Stark and Andrew Carty); (vii) counsel to Kingfisher, Quinn Emanuel Urquhart & Sullivan LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirpalani; and (viii) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Stephen Statham.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION:

**ANY PART OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE A SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE ENTERED BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF THE DEBTOR ESTATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS EFFECTED THEREUNDER.**

PLEASE TAKE FURTHER NOTICE that this Notice is subject to the terms and conditions of the Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Motion or the Bidding Procedures Order, may make a written request to: counsel to the Debtors, Latham & Watkins LLP, Attn: Caroline Reckler, Andrew Sorkin, Annemarie Reilly, and Brett M. Neve (caroline.reckler@lw.com, andrew.sorkin@lw.com, annemarie.reilly@lw.com, brett.neve@lw.com). In addition, copies of the Motion, the Bidding Procedures Order, and this Notice may be examined by interested parties free of charge at the website established for these chapter 11 cases by the Debtors' Court-approved claims agent, Prime Clerk LLC, at https://cases.primeclerk.com/altamesa.

*[Remainder of Page Intentionally Left Blank]*

Dated: _____, 2019
      Houston, Texas

*/s/ DRAFT* _____

| | |
|---|---|
| John F. Higgins (TX 09597500) | George A. Davis (admitted *pro hac vice*) |
| Eric M. English (TX 24062714) | Annemarie V. Reilly (admitted *pro hac vice*) |
| Aaron J. Power (TX 24058058) | Brett M. Neve (admitted *pro hac vice*) |
| M. Shane Johnson (TX 24083263) | **LATHAM & WATKINS LLP** |
| **PORTER HEDGES LLP** | 885 Third Avenue |
| 1000 Main Street, 36th Floor | New York, NY 10022 |
| Houston, Texas 77002 | Telephone:  (212) 906-1200 |
| Telephone: (713) 226-6000 | Facsimile:  (212) 751-4864 |
| Fax: (713) 226-6248 | Email: george.davis@lw.com |
| Email: jhiggins@porterhedges.com |      annemarie.reilly@lw.com |
|     eenglish@porterhedges.com |      brett.neve@lw.com |
|     apower@porterhedges.com | |
|     sjohnson@porterhedges.com | – and – |

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

– and –

Caroline Reckler (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9667
Email: caroline.reckler@lw.com

– and –

Andrew Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201
Email: andrew.sorkin@lw.com

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

**<u>Annex 3</u>**

Assumption Notice
*(To Be Filed)*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**



|  | § | Chapter 11 |
| In re: | § | |
| | § | Case No. 19-35133 (MI) |
| ALTA MESA RESOURCES, INC., *et al.*, | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |
| | § | |

**NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE
ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF THE DEBTORS'
ASSETS AND THE PROPOSED CURE COST WITH RESPECT THERETO**

> **YOU ARE RECEIVING THIS NOTICE OF EXECUTORY CONTRACTS AND
> UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN
> CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS AND THE
> PROPOSED CURE AMOUNT WITH RESPECT THERETO (THE "ASSUMPTION
> NOTICE") BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY
> CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS.
> PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE
> AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

PLEASE TAKE NOTICE that, on September 16, 2019, the Debtors filed a motion (the
"Motion")[2] with the United States Bankruptcy Court for the Southern District of Texas (the
"Bankruptcy Court") seeking, among other things, entry of an order (the "Bidding Procedures
Order"): (i) approving proposed bidding procedures (the "Bidding Procedures") by which the
Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or
a portion of their assets (the "Debtor Assets" and together with the Non-Debtor Assets the
"Assets") through one or more sales of the Debtor Assets and/or a combined sale of both the Debtor
Assets and the Non-Debtor Assets (each, a "Transaction"); (ii) establishing procedures for the
assumption and assignment of executory contracts and unexpired leases, including notice of
proposed cure amounts (the "Assumption and Assignment Procedures"); (iii) approving the
procedures governing Debtors' and/or the Non-Debtors' selection of one or more stalking horse

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as
       follows: The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers
       are as follows: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC
       (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); and
       Oklahoma Energy Acquisitions, LP (3762).  The location of the Debtors' corporate headquarters and service
       address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

bidder (each, a "<u>Stalking Horse Bidder</u>"), if any, and the provision of Bid Protections to such Stalking Horse Bidder(s), if necessary; (iv) scheduling (a) a date for an auction if the Debtors receive one or more timely and acceptable Qualified Bids (the "<u>Auction</u>") and (b) a final hearing (the "<u>Sale Hearing</u>") to approve one or more Transactions, as necessary; and (v) granting related relief.

PLEASE TAKE FURTHER NOTICE that, on _____, 2019, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. __].

PLEASE TAKE FURTHER NOTICE that the Bidding Procedures Order, among other things, established procedures for the assumption and assignment of certain executory contracts and unexpired leases that the Debtors believe they might seek to assume and assign in connection with a Transaction (collectively, the "<u>Designated Contracts</u>") to a purchaser and the determination of related Cure Costs (as defined below). The Debtors are parties to numerous Designated Contracts and, in accordance with the Bidding Procedures Order, hereby file this notice identifying (i) the Designated Contracts, which may be assumed and assigned to a Stalking Horse Bidder, if any, or such other Successful Bidder in connection with the Transaction(s) and (ii) the proposed amounts, if any, the Debtors believe are owed to the counterparty to the Designated Contract to cure any defaults or arrears existing under the Designated Contract (the "<u>Cure Costs</u>"), both as set forth on **Exhibit 1** attached hereto. Other than the Cure Costs listed on **Exhibit 1**, the Debtors are not aware of any amounts due and owing under the Designated Contracts listed therein.

PLEASE TAKE FURTHER NOTICE that the hearing to approve the sale of the Debtor Assets (the "<u>Sale Hearing</u>") will be held before the Honorable Marvin Isgur, United States Bankruptcy Judge for the Southern District of Texas, at 515 Rusk Street, Courtroom 400, Houston, Texas 77002 on **January 10, 2020 _____ a.m. / p.m. (prevailing Central Time)**.

PLEASE TAKE FURTHER NOTICE that the listing of a Designated Contract on **Exhibit 1** does not constitute an admission that the Designated Contract is an executory contract or unexpired lease as contemplated by Bankruptcy Code section 365(a) or that the Debtors have any liability thereunder, and the Debtors expressly reserve all of their rights, claims, causes of action, and defenses with respect to the Designated Contracts listed on **Exhibit 1**.

PLEASE TAKE FURTHER NOTICE that to the extent a counterparty to a Designated Contract listed on this Notice of Assumption and Assignment objects to the proposed assumption and assignment of the applicable Designated Contract (other than an Adequate Assurance Objection (as defined below)) or the proposed Cure Costs, if any, such counterparty must file and serve an objection (a "<u>Contract Objection</u>"). All Contract Objections must (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any, (ii) include appropriate documentation in support thereof, and (iii) be filed and served on the Objection Recipients no later than **December 30, 2019 at 5:00 p.m. (prevailing Central Time)** (the "<u>Contract Objection Deadline</u>"), except as set forth below.

PLEASE TAKE FURTHER NOTICE that the Objection Recipients are: (i) the Debtors, Alta Mesa Resources, Inc., 15021 Katy Freeway, Suite 400, Houston, TX 77094, Attn: Robert Albergotti and Kim Warnica; (ii) counsel to the Debtors, (a) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, Attn: George A. Davis, Annemarie Reilly, and Brett M. Neve, and

Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn: Caroline Reckler; (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002, Attn: John F. Higgins; (iii) counsel to the AMH Agent, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002, Attn: William A. Wood III; (iv) counsel to the KFM Agent, Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201, Attn: Michael E. Bielby, Jr.; (v) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Damian S. Schaible; (vi) counsel to the Official Committee of Unsecured Creditors, Brown Rudnick LLP, 7 Times Square, New York, NY 10036 (Attn: Robert Stark and Andrew Carty); (vii) counsel to Kingfisher, Quinn Emanuel Urquhart & Sullivan LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirpalani; and (viii) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Stephen Statham.

**PLEASE TAKE FURTHER NOTICE THAT IF A COUNTERPARTY TO A DESIGNATED CONTRACT FILES A CONTRACT OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, THE AMOUNT TO BE PAID OR RESERVED WITH RESPECT TO SUCH OBJECTION WILL BE DETERMINED AT THE SALE HEARING, SUCH LATER HEARING DATE THAT THE DEBTORS DETERMINE IN THEIR DISCRETION, OR SUCH OTHER DATE DETERMINED BY THE COURT. ALL OTHER OBJECTIONS TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' RIGHT, TITLE, AND INTEREST IN, TO, AND UNDER THE DESIGNATED CONTRACTS WILL BE HEARD AT THE SALE HEARING.**

Any objections to the ability of the Successful Bidder or Backup Bidder to provide adequate assurance of future performance (each, an "Adequate Assurance Objection") must be filed with the Court no later than two (2) hours prior to the commencement of the Sale Hearing (the "Adequate Assurance Objection Deadline"); *provided*, that if you are receiving this notice less than seven (7) days prior to the Sale Hearing, your deadline to file an Adequate Assurance Objection shall be 5:00 p.m. (Central time) on the date that is seven (7) days after the date hereof. The identity of the Successful Bidder and Backup Bidder (if any) shall be disclosed in a subsequent notice to be delivered to counterparties to the applicable Designated Contracts following the Auction.

PLEASE TAKE FURTHER NOTICE that if the counterparty to a Designated Contract does not timely file and serve a Contract Objection that is consistent with the requirements set forth above by the Contract Objection Deadline (with respect to all objections other than Adequate Assurance Objections) or the Adequate Assurance Objection Deadline (with respect to Adequate Assurance Objections only), such counterparty will be deemed to have consented to the assumption and assignment of the Designated Contract to a Successful Bidder, notwithstanding any anti-alienation provision or other restriction on assumption or assignment in the Designated Contract, and shall be forever barred from asserting any objection with regard to such assumption and assignment and/or Cure Costs set forth in **Exhibit 1**.

PLEASE TAKE FURTHER NOTICE that although the Debtors have made a good-faith effort to identify all Designated Contracts that might be assumed and assigned in connection with

a Transaction, the Debtors may discover certain contracts inadvertently omitted from the Designated Contract list or Successful Bidder(s) may identify other executory contracts or unexpired leases that they desire to assume and assign in connection with the Transaction. Accordingly, the Debtors have reserved the right, at any time after the Assumption and Assignment Service Date and before the closing of a Transaction, to (i) supplement the list of Designated Contracts on this Notice of Assumption and Assignment with previously omitted Designated Contracts in accordance with the definitive agreement for a Transaction, (ii) remove a Designated Contract from the list of contracts ultimately selected as a Designated Contract that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction, and/or (iii) modify the previously stated Cure Cost associated with any Designated Contract.

PLEASE TAKE FURTHER NOTICE that in the event that the Debtors supplement the list of Designated Contracts or modify the previously stated Cure Cost for a particular Designated Contract, the Debtors will promptly file and serve, and in no event less than one (1) business day before the date of the Sale Hearing, a revised Assumption Notice on each counterparty affected. Such counterparties shall file any Contract Objections with respect to the revised Assumption Notice not later than (i) the Contract Objection Deadline in the event that the revised Assumption Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, (ii) two (2) days prior to the Sale Hearing in the event that the revised Assumption Notice was filed and served at least seven (7) day prior to the commencement of the Sale Hearing, and (iii) seven (7) days after the date of filing and service of the revised Assumption Notice of such revised Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that this Assumption Notice is subject to the terms and conditions of the Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.  Parties with questions regarding the Assumption and Assignment Procedures contained herein should contact the Debtors' counsel at the contact information provided herein.

PLEASE TAKE FURTHER NOTICE that the inclusion of a Designated Contract on this Assumption Notice (or a revised Assumption Notice) will not obligate the Debtors to assume any Designated Contract listed thereon or the Successful Bidder(s) to take assignment of such Designated Contract and, as set forth above, the Debtors reserve the right to modify the list of Designated Contracts in accordance with the Bidding Procedures Order, including to remove executory contracts or unexpired leases from such list. Only those Designated Contracts that are included on a schedule of assumed and assigned executory contracts and unexpired leases attached to the final Purchase Agreement with the Successful Bidder(s) will be assumed and assigned to the Successful Bidder(s).

*[Remainder of page intentionally left blank]*

US-DOCS\110931727.3

Dated: _____, 2019
          Houston, Texas

*/s/ DRAFT*_____

John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
Aaron J. Power (TX 24058058)
M. Shane Johnson (TX 24083263)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
Email: jhiggins@porterhedges.com
          eenglish@porterhedges.com
          apower@porterhedges.com
          sjohnson@porterhedges.com

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

George A. Davis (admitted *pro hac vice*)
Annemarie V. Reilly (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: george.davis@lw.com
          annemarie.reilly@lw.com
          brett.neve@lw.com

– and –

Caroline Reckler (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9667
Email: caroline.reckler@lw.com

– and –

Andrew Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: andrew.sorkin@lw.com

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

5

## **Annex 4**

Post-Auction Notice
*(To Be Filed)*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>ALTA MESA RESOURCES, INC., *et al.*,<br><br>Debtors.[1] | § Chapter 11<br>§<br>§ Case No. 19-35133 (MI)<br>§<br>§ (Jointly Administered)<br>§<br>§ |

**NOTICE OF SUCCESSFUL AND BACKUP BIDDERS WITH RESPECT TO THE
AUCTIONS OF THE DEBTORS' ASSETS**

PLEASE TAKE NOTICE that, on _____, 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order [Docket No. __] (the "Bidding Procedures Order"):[2] (i) approving proposed bidding procedures (the "Bidding Procedures") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "Debtor Assets" and together with the Non-Debtor Assets the "Assets") through one or more sales of the Debtor Assets and/or a combined sale of both the Debtor Assets and the Non-Debtor Assets (each, a "Transaction"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (iii) approving the procedures governing the Debtors' and/or Non-Debtors' selection of one or more stalking horse bidders (each, a "Stalking Horse Bidder"), if any, and the provision of Bid Protections to such Stalking Horse Bidder(s), if necessary; (iv) scheduling (a) a date for an auction if the Debtors receive one or more timely and acceptable Qualified Bids (the "Auction") and (b) a final hearing (the "Sale Hearing") to approve one or more Transactions, as necessary; and (v) granting related relief.

PLEASE TAKE FURTHER NOTICE that on January 8, 2020, at 9:00 a.m. (prevailing Central Time), pursuant to the Bidding Procedures Order, the Debtors conducted the Auction with respect to certain of the Debtor Assets.

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); and Oklahoma Energy Acquisitions, LP (3762).  The location of the Debtors' corporate headquarters and service address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

US-DOCS\110930214.3

PLEASE TAKE FURTHER NOTICE that, at the conclusion of the Auction, the Debtors, in consultation with their professionals and Bid Consultation Parties, selected the following Successful Bidder(s) and Backup Bidder(s) with respect to the Assets:

| Asset(s) | Successful Bidder | Backup Bidder |
|---|---|---|
|  |  |  |

**PLEASE TAKE FURTHER NOTICE that the Sale Hearing to consider approval of a Transaction and the transfer of all of the Assumed Liabilities to the Successful Bidder(s), <u>free and clear of all liens, claims, interests, and encumbrances</u> in accordance with Bankruptcy Code section 363(f), will be held before the Honorable Marvin Isgur, United States Bankruptcy Judge for the Southern District of Texas, at the Bankruptcy Court, 515 Rusk Street, Courtroom 400, Houston, Texas 77002 on January 10, 2020 at _____ [a.m. / p.m.] (prevailing Central Time).  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.**

**PLEASE TAKE FURTHER NOTICE THAT any objections (a) to the manner in which the Auction was conducted, (b) to the identity of the Successful Bidder or Backup Bidder, and/or (c) based on the ability of the Successful Bidder or Backup Bidder to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder or Backup Bidder must be filed with the Court no later than two (2) hours prior to the commencement of the Sale Hearing; *provided*, that any contract counterparty that did not receive an Assumption Notice or received a revised Assumption Notice within seven (7) days prior to the Sale Hearing shall have until 5:00 p.m. (prevailing Central time) the date that is seven (7) days after the date hereof to file an objection based on the ability of the Successful Bidder or Backup Bidder to provide adequate assurance of future performance under such contract.  Attached hereto as Exhibit 1 is a list of the contracts and leases proposed to be assumed and assigned to the Successful Bidder and/or Backup Bidder (the "<u>Proposed Assigned Contracts</u>").**

PLEASE TAKE FURTHER NOTICE that, at the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid and the Backup Bid (if any), and the assumption and assignment of the Proposed Assigned Contracts to the Successful Bidder and/or Backup Bidder (as applicable).  Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Transaction(s) and there will be no further bidding at the Sale Hearing.  In the event that the Successful Bidder cannot or refuses to consummate the Transaction(s) because of the breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not required, to close with the Backup Bidder on the Backup Bid without further order of the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that this Notice is subject to the terms and conditions of the Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties with questions regarding this Notice should contact the Debtors' counsel at the contact information provided herein.

Dated: _____, 2019
      Houston, Texas

<table>
<tr><td>

*/s/ DRAFT*_____
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
Aaron J. Power (TX 24058058)
M. Shane Johnson (TX 24083263)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
Email: jhiggins@porterhedges.com
      eenglish@porterhedges.com
      apower@porterhedges.com
      sjohnson@porterhedges.com

*Proposed Counsel for the Debtors and Debtors in Possession*

</td><td>

George A. Davis (admitted *pro hac vice*)
Annemarie V. Reilly (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: george.davis@lw.com
      annemarie.reilly@lw.com
      brett.neve@lw.com

– and –

Caroline Reckler (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9667
Email: caroline.reckler@lw.com

– and –

Andrew Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: andrew.sorkin@lw.com

*Proposed Counsel for the Debtors and Debtors in Possession*

</td></tr>
</table>

3