

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
11/21/2019

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| ALTA MESA RESOURCES, INC., *et al.*, | § § | Case No. 19-35133 (MI) |
| Debtors.[1] | § § § | Jointly Administered |

**FINAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 361, 362, 363,**
**503, AND 507, BANKRUPTCY RULES 4001 AND 9014, AND COMPLEX CASE RULES**
**(I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (II) GRANTING**
**ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES;**
**(III) MODIFYING AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-referenced debtors, as debtors in possession

(collectively, the "Debtors") in the above-captioned cases (the "Cases"), pursuant to sections 105,

361, 362, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the

"Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), the Procedures for Complex Chapter 11 Cases in the Southern District

of Texas (the "Complex Case Rules"), seeking, among other things, entry of this final order (this

"Order"):

(a) authorizing the Debtors, pursuant to sections 105, 361, 362, 363, 503 and 507 of
the Bankruptcy Code to (i) use cash collateral, as such term is defined in section
363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition
Collateral (as defined herein), solely in accordance with the terms of this Order,
and (ii) provide adequate protection to Wells Fargo Bank, N.A., as Administrative
Agent and Issuing Lender (in such capacity, the "Administrative Agent") under the
Credit Agreement (as defined herein), and the other Prepetition Secured Parties (as
defined herein);

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (N/A); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); and Oklahoma Energy Acquisitions, LP (3762). The location of the Debtors' corporate headquarters and service address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

(b)     authorizing the Debtors, subject to entry of this Order, to grant adequate protection liens on proceeds and property recovered in respect of the Prepetition Loan Parties' claims and causes of action arising under chapter 5 of the Bankruptcy Code (collectively, the "<u>Avoidance Actions</u>") or any other state or federal law;

(c)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order;

(d)     except to the extent of the Carve Out (as defined herein), waiving all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)     waiving any applicable stay with respect to the effectiveness and enforceability of this Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

and the Court having entered an order approving the interim use of cash collateral on September 12, 2019 [D.I. 63] (the "<u>First Interim Order</u>"); and the Court having entered further orders approving the interim use of cash collateral on October 11, 2019 [D.I. 308] (the "<u>Second Interim Order</u>") and November 7, 2019 [D.I. 481] (the "<u>Third Interim Order</u>" and, together and together with the First Interim Order and Second Interim Order, collectively, the "<u>Interim Orders</u>"); and notice of a final hearing (the "<u>Final Hearing</u>") having been given in accordance with Bankruptcy Rule 4001; and the Court having considered the evidence proffered at the Final Hearing held on November 21, 2019 pursuant to Bankruptcy Rule 4001 and the Complex Case Rules; and the Court having considered the Budget (as defined herein) filed and served by the Debtors in accordance with the Complex Case Rules, offers of proof, evidence adduced, and the statements of counsel at the Final Hearing; and it appearing to the Court that granting the relief requested in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to preserve the value of the Debtors' businesses and assets and that such relief is fair and reasonable and that entry of this Order is in the best interest of the Debtors and their respective estates and

creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      **Petition Date.** On September 11, 2019 (the "Petition Date"), Alta Mesa Holdings, LP ("Alta Mesa") and each of the other Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas. Each Debtor has continued with the management and operation of its respective businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On September 27, 2019, an official committee of unsecured creditors (the "Committee") was appointed in these Cases.  No trustee or examiner has been appointed in these Cases.

B.      **Credit Agreement.** Prior to the Petition Date, the Administrative Lenders (as defined herein) made certain loans and advances pursuant to and in accordance with the terms and conditions of that certain Eighth Amended and Restated Credit Agreement, dated as of February 9, 2018 (as heretofore amended, restated, or otherwise modified from time to time, the "Credit Agreement," and together with all other documentation executed in connection therewith, including without limitation, the Administrative Security Documents (as defined herein), the Guaranty (as defined in the Credit Agreement) executed in connection therewith, and all other Loan Documents (as defined in the Credit Agreement) (the "Administrative Credit Documents"), among Alta Mesa, as Borrower, the Administrative Agent, the lenders from time to time party thereto (such lenders, the "Administrative Lenders"), the issuers of letters of credit thereunder ("Issuers") and each of the other "Secured Parties" (as defined in the Credit Agreement) (the Administrative Agent, the Administrative Lenders, the Issuers and the other Secured Parties, collectively, the "Prepetition Secured Parties").

C.     **Debtors' Admissions With Respect to the Prepetition Secured Indebtedness.**

Subject only to the rights of parties in interest specifically set forth in paragraph 21 of this Order

(and subject to the limitations thereon contained in such paragraph), the Debtors admit, stipulate

and agree that:

As of the Petition Date, the Debtors that are the Borrower and the Guarantors (as such terms are defined in the Credit Agreement) (collectively, the "Prepetition Loan Parties") under the Administrative Credit Documents were justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, to the Prepetition Secured Parties in the aggregate principal amount of approximately $340,513,886, plus any accrued interest, fees, letters of credit, and other amounts that may be due and payable thereunder (collectively, the "Prepetition Secured Indebtedness"). The Prepetition Secured Indebtedness includes any and all principal amounts owing or outstanding under the Credit Agreement, interest on, fees and other costs, expenses, and charges owing in respect of, such amounts, and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit, swap obligations, banking services, or other obligations outstanding thereunder. The Prepetition Secured Indebtedness, including the amounts specified in this paragraph, constitutes the legal, valid, and binding obligations of the Prepetition Loan Parties, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Secured Indebtedness. None of the Prepetition Loan Parties, either collectively or individually, have or shall assert any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Secured Indebtedness. The Prepetition Secured Indebtedness and any amounts previously paid to any Prepetition Secured Party pursuant to the terms of the Credit Agreement, on account thereof, or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in the Administrative Credit Documents or this Order.

D.     **Debtors' Admissions With Respect to Collateral and Liens.** Subject only to the

rights of parties in interest specifically set forth in paragraph 21 of this Order (and subject to the

limitations thereon contained in such paragraph), the Debtors admit, stipulate and agree that:

i.     Pursuant to (i) that certain Fifth Amended and Restated Security Agreement dated as of February 9, 2018, by and among Alta Mesa, the other Prepetition Loan Parties, and the Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties (as amended, restated, supplemented, or otherwise modified from time to time, the "Administrative Security Agreement"), (ii) that certain Fifth Amended and Restated Pledge Agreement dated as of February 9, 2018, by and among Alta Mesa, OEM GP, LLC, and the Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties (as amended, restated, supplemented, or

otherwise modified from time to time, the "Administrative Pledge Agreement"), (iii) that certain Parent Pledge Agreement dated as of February 19, 2018, by and among Alta Mesa Holdings GP, LLC, SRII Opco, LP (together with Alta Mesa Holdings GP, LLC, collectively, the "Parent Pledgors"), and the Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties (as amended, restated, supplemented, or otherwise modified from time to time, the "Administrative Parent Pledge Agreement"), and (iv) all Mortgages (as defined in the Credit Agreement) securing the Prepetition Loan Parties' obligations under the Administrative Credit Documents (such Mortgages, together with the Administrative Security Agreement, the Administrative Pledge Agreement, the Administrative Parent Pledge Agreement, and all other Security Instruments (as defined in the Credit Agreement), the "Administrative Security Documents"), the Prepetition Loan Parties and the Parent Pledgors, as applicable, granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on, certain assets of the Prepetition Loan Parties and the Parent Pledgors, as applicable (as more specifically defined below, the "Prepetition Collateral") to and/or for the benefit of the Prepetition Secured Parties (the "Prepetition Liens"), subject only to Permitted Prior Liens (as defined below). The Prepetition Collateral includes (i) at least 90% (ninety percent) of the Prepetition Loan Parties' Proven Reserves and Oil and Gas Properties (as such terms are defined in the Credit Agreement), (ii) any cash of the Prepetition Loan Parties, (iii) all equity interests in the Borrower held by the Parent Pledgors, and (iv) all other assets of the Prepetition Loan Parties, in addition to the assets described in clauses (i) and (ii) above, in or upon which a lien, mortgage, deed of trust, or other security interest has been granted in favor or for the benefit of the Prepetition Secured Parties in connection with, pursuant to, or under the applicable Administrative Credit Documents that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits.

ii.     The Administrative Credit Documents are valid and binding agreements and obligations of the Prepetition Loan Parties and the Parent Pledgors, as applicable, and the Prepetition Liens constitute valid, binding, enforceable, and perfected first priority security interests and Liens, as that term is defined in the Administrative Credit Documents ("Liens"), which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in the Administrative Credit Documents or this Order.

iii.    The Administrative Agent has properly perfected its security interests and Prepetition Liens in and on the Prepetition Collateral by taking possession of, or obtaining control over, certain assets, and/or by filing UCC-1 financing statements, mortgages, or other required documents against the

5

Prepetition Loan Parties and the Parent Pledgors, as applicable, and such Prepetition Collateral in the proper state or county offices for the perfection of such security interests and Liens.

E.      **Debtors' Admissions With Respect to Cash Collateral.** Subject only to the rights of parties in interest specifically set forth in paragraph 21 of this Order (and subject to the limitations thereon contained in such paragraph), the Debtors admit, stipulate and agree that all of the Prepetition Loan Parties' cash, including all cash proceeds of the Prepetition Collateral, the Prepetition Loan Parties' banking, checking or other deposit accounts with financial institutions (in each case, other than trust, escrow and custodial funds held as of the Petition Date) as of the Petition Date or deposited into the Prepetition Loan Parties' banking, checking or other deposit accounts with financial institutions after the Petition Date that is property of the Prepetition Loan Parties constitutes Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in value of their respective interests in the Prepetition Collateral as of the Petition Date resulting from the use of Cash Collateral, the use, sale or lease of the Prepetition Collateral and/or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code. The foregoing shall not, nor shall any other provision of this Order be construed as, a determination or finding that there has been or will be any diminution in value of Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.

F.      **Releases; Investigation.** Subject only to the rights of parties in interest specifically set forth in paragraph 21 of this Order (and subject to the limitations thereon contained in such paragraph), each of the Debtors hereby forever waives and releases any and all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff

rights against each of the Prepetition Secured Parties (solely in their capacities as such) arising prior to the date of the entry of this Order, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

G. **Need to Use Cash Collateral.** The Debtors have requested entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and the Complex Case Rules and have an immediate need to obtain use of the Prepetition Collateral, including the Cash Collateral (in the amount and in the manner set forth in the Budget (as defined herein)) in order to, among other things, preserve and maintain the value of their assets and businesses and maximize the return to all creditors. An immediate and critical need exists for the Debtors to use the Cash Collateral, consistent with the Budget, for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering the Cases. The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets. Absent entry of this Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed.

H. **Notice.** Notice of the Final Hearing and the final relief requested herein was provided by the Debtors to: (a) the Office of the U.S. Trustee for the Southern District of Texas (the "U.S. Trustee"), (b) counsel to the Administrative Agent, (c) counsel to the ad hoc group of holders of the 7.875% notes due 2024 issued by Alta Mesa (the "Ad Hoc Noteholder Group"), (d) counsel to the indenture trustee for the 7.875% notes due 2024 issued by Alta Mesa (the "AMH Indenture Trustee"); (e) the parties included on the Debtors' consolidated list of the 30 largest unsecured creditors, (f) the United States Attorney's Office for the Southern District of Texas, (g)

the Internal Revenue Service, (h) the United States Securities and Exchange Commission, (i) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (j) the state attorneys general for the states in which the Debtors conduct business; and (k) the Committee. Given the nature of the relief sought, the foregoing notice of the Final Hearing was, in the Debtors' good faith belief, the best available under the circumstances and complies with Bankruptcy Rules 2002, 4001(b) and (d) and 9014, and section 102(1) of the Bankruptcy Code as required by sections 361 and 363 of the Bankruptcy Code. No further notice of, or hearing on, the relief sought at the Final Hearing and the relief granted herein is necessary or required.

I.     **Consent by Prepetition Secured Parties.** The Administrative Agent, as collateral agent for the Prepetition Secured Parties, consents to the Debtors' use of Cash Collateral, in accordance with and subject to the terms and conditions provided for in this Order.

J.     **Jurisdiction and Venue.** Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

K.     **Relief Essential; Best Interest.** The Debtors have requested entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and Bankruptcy Local Rule 4001-2. The relief requested in the Motion (and as provided in this Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and the property of their estates. It is in the best interest of the Debtors' estates that

the Debtors be allowed to use the Cash Collateral under the terms hereof. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

        L.      **Arm's-Length, Good Faith Negotiations.** The terms of this Order were negotiated in good faith and at arm's-length between the Debtors and the Prepetition Secured Parties.

        **NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE FINAL HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

        1.      **Motion Granted.** The Motion is granted in accordance with the terms of this Order. Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled with prejudice.

        2.      **Authorization to Use Cash Collateral; Budget Testing.**

        (a)      Subject to the terms and conditions of this Order, the Court hereby authorizes the Prepetition Loan Parties' use of Cash Collateral during the period beginning with the Petition Date and ending on Termination Date, solely and exclusively in a manner consistent with this Order and the Budget, and for no other purposes.

        (b)      As used in this Order: (i) "Budget" means the budget attached as Exhibit 1 hereto, and as defined in the Interim Orders, as such budget may be modified from time to time by the Prepetition Loan Parties with the prior written consent of the Administrative Agent acting at the direction of the Required Lenders (as defined in the Credit Agreement) as set forth in this paragraph and in paragraph 3(f)(viii) of this Order; provided that, any such modified budget shall not take effect as the Budget on less than two (2) business days' notice provided by the Debtors to the Committee, counsel to the Ad Hoc Noteholder Group and the AMH Indenture Trustee, and the U.S. Trustee; and (ii) "Budget Period" means the initial four-week period set forth in the Budget in effect at such time.

        (c)      The Prepetition Loan Parties shall spend Cash Collateral in accordance with the Budget on a line-by-line basis, subject to Permitted Deviations and Non-Conforming Uses (each as defined below). Permitted Deviations shall be tested on the third business day following the last day of each Budget Period (each such date, a "Testing Date"). On or before 5:00 p.m. (prevailing Central Time) on each Testing Date, the Prepetition Loan Parties shall prepare and deliver to the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent, a variance report for the immediately preceding Budget Period (the "Variance Report") setting forth: (i) the disbursements on a line-by-line basis of the Prepetition Loan Parties for line items other than capital expenditures and Non-Tested Disbursements (as

defined below) during the applicable Budget Period, (ii) any variance (whether positive or negative, expressed as a percentage) on a line-by-line basis, for disbursements made during such Budget Period by the Prepetition Loan Parties against the projected disbursements set forth in the applicable Budget and (iii) any variance (whether positive or negative, expressed as a percentage) between the aggregate disbursements for capital expenditures for the Budget Period set forth in the applicable Budget. For the avoidance of doubt, no Prepetition Loan Party shall incur drilling and completion capital expenditures except in accordance with the Budget. In addition, no later than 5:00 p.m. (prevailing Central time) on the last calendar day of each week, the Prepetition Loan Parties shall prepare and deliver to the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent, a variance report comparing the Prepetition Loan Parties' actual receipts and disbursements for the prior calendar week and the prior four calendar weeks (on a cumulative basis) as reflected in the applicable Budget for such weeks (the "Cumulative Variance Report"), which Cumulative Variance Report shall include a report from the Debtors identifying and addressing any variance of actual performance to projected performance for the prior week.

(d)    The Prepetition Loan Parties shall not allow, during any Budget Period, the Prepetition Loan Parties' actual cash expenses and disbursements (i) during such Budget Period to be more than 115% of the projected cash expenses and disbursements for any particular line item for such Budget Period, or (ii) for any week during such Budget Period to be more than 110% of the projected cash expenses and disbursements in the aggregate for such week, in each as set forth in the Budget (such deviations from budgeted amounts satisfying both (i) and (ii), the "Permitted Deviations"); *provided*, that the cash expenses and disbursements considered for determining compliance with this covenant shall exclude (x) the Prepetition Loan Parties' disbursements and expenses in respect of professional fees during such Budget Period, (y) interest and financing fees paid during such Budget Period, and (z) net hedge settlements during such Budget Period ((x), (y) and (z), collectively, "Non-Tested Disbursements"); *provided*, *further* that the Prepetition Loan Parties may carry forward budgeted but unused disbursements set forth in the Budget for any week during the Budget Period for use in a subsequent week in the same Budget Period or the immediately succeeding Budget Period (and, in the case of professional fees and expenses, any succeeding Budget Period).

(e)    The Administrative Agent acting at the direction of the Required Lenders may, in its sole discretion, agree in writing to the use of Cash Collateral in a manner or amount which does not conform to the Budget (other than Permitted Deviations and the Line Item Carry Forward) (each such use of Cash Collateral, a "Non-Conforming Use"). If such written consent is given, the Prepetition Loan Parties shall be authorized pursuant to this Order to use Cash Collateral for any such Non-Conforming Use without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this Order for any such use of Cash Collateral. The Prepetition Loan Parties shall provide notice of any Non-Conforming Use to the U.S. Trustee, counsel to the Ad Hoc Noteholder Group and the AMH Indenture Trustee, and counsel for the Committee, prior to the occurrence of such Non-Conforming Use to the extent reasonably practicable.

(f)    For the avoidance of doubt, Cash Collateral may not be used (i) by any entity which is not a Prepetition Loan Party or (ii) to pay any expense of any entity which is not a Prepetition Loan Party.

3.        **Adequate Protection for the Prepetition Secured Parties.** In addition to all the existing security interests and liens granted to or for the benefit of the Prepetition Secured Parties in and with respect to the Prepetition Collateral, including the Cash Collateral, as adequate protection for, and to secure payment of an amount equal to, the Collateral Diminution (as defined herein), and as an inducement to the Prepetition Secured Parties to permit the Prepetition Loan Parties' use of the Cash Collateral as provided for in this Order, the Prepetition Loan Parties hereby grant the following adequate protection to the extent of any Collateral Diminution:

(a)        **Adequate Protection Liens.** Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), and subject in all cases to the Carve-Out (as defined herein), effective as of the Petition Date and in each case perfected without the necessity of the execution by the Prepetition Loan Parties (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Administrative Agent is hereby granted, for the benefit of the Prepetition Secured Parties, to secure payment of an amount equal to the Collateral Diminution, a valid, binding, continuing, enforceable, fully-perfected first priority senior (except as otherwise provided in this paragraph 3(a) below with respect to the Permitted Prior Liens) security interest in and lien on (all such liens and security interests, the "Administrative Adequate Protection Liens") the Prepetition Collateral and all other of the Prepetition Loan Parties' now owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, all prepetition and postpetition property of the Prepetition Loan Parties' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, all inventory, all oil, gas and other hydrocarbons and all products and substances derived therefrom (including all raw materials and work in process therefore, finished goods thereof, and materials used or consumed in the manufacture or production thereof), all goods, all accounts, cash, payment intangibles, deposit accounts, accounts receivable, other rights to payment, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, all interest rate hedging agreements, commodity hedging agreements and similar agreements, owned real estate, real property leaseholds, oil and gas leases, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action and all proceeds of the foregoing (excluding Avoidance Actions, but including proceeds of Avoidance Actions) (all property identified in this paragraph 3(a) being collectively referred to as the "Collateral"), subject only to valid, perfected, unavoidable, and enforceable (i) prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date, (ii) prepetition claims for set off and recoupment (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date, and (iii) liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and that are senior to the Prepetition Secured Parties' liens or security interests as of the

Petition Date (the liens and claims in clauses (i), (ii), and (iii) above respectively, the "Permitted Prior Liens"), in which case the Administrative Adequate Protection Liens shall be immediately junior in priority to such Permitted Prior Liens.

(b)     **Adequate Protection Claims.** Effective as of the Petition Date, and subject only to the Carve-Out, an allowed administrative expense claim in the amount of any Collateral Diminution arising pursuant to section 507(b) of the Bankruptcy Code against each of the Prepetition Loan Parties on a joint and several basis with priority over all other administrative claims in the Cases (subject only to the Carve-Out), including all claims of the kind specified under sections 503(b) of the Bankruptcy Code (the "Administrative Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Prepetition Loan Parties, excluding the Carve-Out, and including, without limitation, the proceeds or property recovered in respect of any Avoidance Actions. For avoidance of doubt, the Administrative Adequate Protection Claims shall include amounts due to the Prepetition Secured Parties under Section 9.04 of the Credit Agreement for all out-of-pocket expenses (including attorneys' fees and legal expenses of counsel and settlement costs) incurred in connection with these Cases.

(c)     **Adequate Protection Payments.** The Prepetition Loan Parties are authorized and directed to pay to the Administrative Agent for the ratable benefit of the Prepetition Secured Parties adequate protection payments on the last business day of each calendar month after the entry of the Order, in each case, in an amount equal to all accrued and unpaid (i) prepetition and postpetition interest, and (ii) without duplication of the fees and expenses payable under paragraph 3(e) below, prepetition or postpetition fees and costs due and payable under the Credit Agreement (including, without limitation, interest on loans, breakage costs and accrued fees owing to the Administrative Agent). In the case of adequate protection payments consisting of postpetition interest and letter of credit fees, such payments shall be calculated based on the Default Rate as provided in Sections 2.08(b) and 2.09(d) of the Credit Agreement (as such term is defined in the Credit Agreement). For the avoidance of doubt, the payment of adequate protection payments pursuant to this paragraph shall be without prejudice to the rights of the Administrative Agent and the Prepetition Secured Parties to assert claims for payment of additional interest and fees at any other rates in accordance with the Credit Agreement. The rights of all parties (including the Prepetition Secured Parties) are reserved as to whether payments made by the Prepetition Loan Parties pursuant to this paragraph 3(c) constitute payments of principal, interest or otherwise pursuant to section 506(b) of the Bankruptcy Code.

(d)     **Other Covenants.** The Prepetition Loan Parties shall maintain their cash management arrangements in a manner consistent with this Court's September 12, 2019 order(s) granting the Debtors' cash management motion. The Prepetition Loan Parties shall not use, sell or lease any material assets with an aggregate fair market value in excess of $250,000 in any single transaction or series of related transactions outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Administrative Agent at least five (5) business days prior to the date on which the Prepetition Loan Parties seek the authority of this Court for such use, sale or lease; for the avoidance of doubt nothing herein shall limit the Prepetition Loan Parties' right to use, sell, or lease assets in the ordinary course of business, including in connection with any "farm-in," "farm-out," or trade or swap of oil and gas properties as provided in the Credit Agreement; provided; that the transferor

and transferee in connection with such transactions are not affiliates. The Prepetition Loan Parties shall comply with the covenants contained in Sections 5.02 of the Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Collateral.

(e)     **Fees and Expenses.** As additional adequate protection, the Prepetition Loan Parties shall pay in cash: (i) within five (5) business days after the Prepetition Loan Parties' receipt of invoices therefor, the professional fees, expenses and disbursements (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the Administrative Agent and Prepetition Secured Parties under the Credit Agreement arising prior to the Petition Date; (ii) on a monthly basis within five (5) business days of the Prepetition Loan Parties' receipt of invoices therefor, the fees, expenses and disbursements (including, but not limited to, the fees, expenses and disbursements of counsel and other third- party consultants, including financial advisors) incurred by the Administrative Agent and Prepetition Secured Parties under the Credit Agreement arising subsequent to the Petition Date. The rights of all parties (including the Prepetition Secured Parties) are reserved as to whether payments made by the Prepetition Loan Parties pursuant to this paragraph 3(e) constitute payments of principal, interest or otherwise pursuant to section 506(b) of the Bankruptcy Code.

(f)     **Reporting Requirements.** As additional adequate protection to the Prepetition Secured Parties, the Prepetition Loan Parties shall comply with the reporting requirements set forth in Section 5.06 of the Credit Agreement (other than (i) any requirements to deliver Compliance Certificates (as defined in the Credit Agreement), (ii) unless otherwise requested by the Administrative Agent, any requirement to provide any certification concerning the matters set forth in Section 5.06(d)(iii)(ii); (iii) the reporting required under Sections 5.06(c) and 5.06(f), (iv) unless otherwise requested by the Administrative Agent, any requirements to deliver consolidating financial statements; provided, that for the avoidance of doubt, the foregoing shall not affect any obligation of the Prepetition Loan Parties to provide consolidated financial statements; and (v) any requirements to deliver certifications and detailed calculations with respect to compliance (or non-compliance) with Sections 6.14(c) and/or 6.14(f) of the Credit Agreement), and shall provide the following additional reporting to the Administrative Agent (subject to any applicable limitations set forth below, and it being understood that any information shared with the Administrative Agent may also be shared by the Administrative Agent with the Prepetition Secured Lenders), with copies of all such reporting shared with the Administrative Agent delivered to advisors to the Ad Hoc Noteholder Group and the AMH Indenture Trustee, to counsel to US Bank, financial advisors to the Committee, and the U.S. Trustee upon request:

(i)     Weekly (or less frequently as may be agreed to between the Prepetition Loan Parties and the Administrative Agent) calls with the Administrative Agent and its advisors;

(ii)     At the times specified in paragraph 2(c) hereof, the Variance Report and Cumulative Variance Reports required by paragraph 2(c) hereof;

(iii)     On each business day, the Prepetition Loan Parties shall provide the Administrative Agent with a report detailing gross and net production volumes for the previous business day;

(iv)    If any well serving as collateral for the Prepetition Secured Parties becomes shut-in or nonproducing for more than five (5) consecutive days for any reason other than ordinary course maintenance or workovers, the Prepetition Loan Parties shall notify the Administrative Agent, counsel to the Ad Hoc Noteholder Group and the AMH Indenture Trustee, and the Committee promptly upon the Prepetition Loan Parties receiving notice of or having actual knowledge of such shut-in or nonproduction;

(v)    A copy of each update to the Prepetition Loan Parties' business plan as soon as reasonably practicable after it becomes available, together with a reconciliation to the prior business plan;

(vi)    In-person or teleconference presentations by the Prepetition Loan Parties and/or their advisors to the Prepetition Secured Parties, at such times as the Administrative Agent may reasonably request in writing (including via electronic mail), and at mutually agreeable places (to the extent such presentations are in-person).

(vii)    Promptly, but in any event by the twentieth (20th) business day of each calendar month, a report as of the last day of the preceding calendar month, in form and detail reasonably acceptable to the Administrative Agent, of (a) the Prepetition Loan Parties' accounts payable and payments, (b) an accounts payable aging and an production receivable aging, and (c) all written demands or claims related to or asserting any liens in respect of property or assets of the Prepetition Loan Parties (including liens imposed by law, such as landlord's, vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' liens and other similar liens) if the amount demanded or claimed exceeds $100,000 individually or $500,000 in the aggregate;

(viii)    On or before the 5th business day before the end of each Budget Period, a rolling 13-week cash flow forecast of the Prepetition Loan Parties substantially in the form of the Budget (each, a "Proposed Budget"), which Proposed Budget (including any subsequent revisions to any such Proposed Budget), upon written approval by the Administrative Agent, shall become the Budget effective as of the first day of the fifth week of the prior Budget (provided that a Proposed Budget shall not take effect as the Budget on less than two (2) business days' notice provided by the Debtors to the Committee and counsel to the Ad Hoc Noteholder Group and the AMH Indenture Trustee; *provided*, that no line items in any Budget for any professional fees of the Committee shall be modified in any Proposed Budget or subsequent Budget without the consent of the Committee or an order of the Court;

(ix)    Promptly, and in any event by the thirtieth (30th) calendar day of each month or by the fortieth (40th) calendar day following a month in which a fiscal quarter ends, beginning with the year-to-date period ended August 31, 2019, a monthly and year-to-date income statement and balance sheet;

(x)    On or before 12:00 PM (Central time) on Thursday of each calendar week (commencing with the Thursday falling during the first full calendar week after the Petition Date), a weekly report with respect to the sale process, in form and scope reasonably agreed by the Prepetition Loan Parties and the Administrative Agent. In addition, subject to any

applicable restrictions imposed in any bidding procedures order that may be entered by the Court, the Prepetition Loan Parties will grant access to any data room established for potential bidders to the Administrative Agent and its financial advisor and counsel and furnish to Administrative Agent, its financial advisor and counsel, as they become available (and, in any event, together with the next weekly report delivered pursuant to this paragraph 3(f)(x)), full copies of any preliminary and final bids received and any draft purchase and sale agreements; and

(xi)     As soon as reasonably practicable after written request from the Administrative Agent, the Prepetition Loan Parties will provide the Administrative Agent and the Prepetition Secured Lenders with reasonable access to any consultant, turnaround management, broker or financial advisory firm retained by any Prepetition Loan Party in any of the Chapter 11 Cases and, if requested, copies of all retention agreements for each such consultant.

4.     **Collateral Diminution.** For purposes of this Order, "Collateral Diminution" shall mean an amount equal to the diminution of the value from and after the Petition Date of the Prepetition Secured Parties' interests in the Prepetition Collateral upon which any of the Prepetition Secured Parties have valid, perfected, enforceable and non-avoidable liens or security interests, resulting from the use, sale, or lease of the Prepetition Collateral, including Cash Collateral (whether in accordance with the terms and conditions of this Order or otherwise), or the imposition of the automatic stay. Cash payments made to the respective Prepetition Secured Parties pursuant to the Order shall reduce each such respective Prepetition Secured Parties' Collateral Diminution on a dollar for dollar basis.  For the avoidance of doubt, the rights of all parties in interest, including the Committee, concerning whether Collateral Diminution has occurred and the extent and/or amount of such Collateral Diminution, are hereby expressly reserved.

5.     **Priority of Administrative Adequate Protection Liens and Administrative Adequate Protection Claims.** Except for (i) the Carve Out and (ii) as otherwise provided in paragraph 3, the Administrative Adequate Protection Liens and Administrative Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to paragraph 3 of this Order shall not be subject or junior to any lien or security interest that is avoided and preserved

for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise.

6.    **Carve Out.**

(a)    As used in this Order, "Carve Out" shall mean the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (ii) actually incurred expenses included in the Budget but unpaid as of the termination of the Debtor's right to use Cash Collateral under this Order, (iii) all allowed unpaid fees and disbursements included in the Budget (whether allowed by interim order, final order, procedural order or otherwise) (the "Allowed Professional Fees") and incurred by professionals retained by the Prepetition Loan Parties in rendering services to the Prepetition Loan Parties only and, subject to the limitations set forth in paragraphs 6 and 21 of this Order, any Committee to the Prepetition Loan Parties (collectively, the "Professional Persons"), and all expenses of members of any such Committee included in the Budget and allowed pursuant to section 503(b)(3)(F) of the Bankruptcy Code incurred at any time before the delivery by the Administrative Agent of written notice (via electronic mail, overnight delivery or hand delivery) to the Prepetition Loan Parties, counsel for the Prepetition Loan Parties, the U.S. Trustee, and counsel to any Committee (a copy of which notice the Debtors shall provide to counsel to the Ad Hoc Noteholder Group and the AMH Indenture Trustee), stating that a Termination Date or Termination Event (as such terms are defined herein) has occurred and is continuing and that the Post-Carve Out Notice Cap has been triggered (a "Carve Out Notice"), in each case, whether allowed by the Court prior to or after delivery of a Carve Out Notice; provided, that Cash Collateral may only be utilized to pay up to the aggregate amounts set forth for Professional Persons in the Budget during such period prior to the delivery of the Carve Out Notice, (iv) the Allowed Professional Fees of the Professional Persons incurred on or after the first business day following delivery of the Carve Out Notice in an aggregate amount not to exceed $1,000,000 (the "Post-Carve Out Notice Cap"), and (v) reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $100,000. Notwithstanding anything to the contrary in this Order, the Allowed Professional Fees payable from the Carve Out to each Professional Person shall be limited to the lesser of (x) the allowed amount of such Allowed Professional Fees and (y) the budgeted amounts for such professional set forth in the professional fee schedule included in the Budget; *provided*, that in no way shall the Carve-Out, Carve-Out Reserve or the Budget or any of the foregoing be construed as a cap or limitation on the amount of Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time.

(b)    Upon delivery of a Carve Out Notice, the Carve Out Notice shall constitute a demand to the Prepetition Loan Parties to utilize cash on hand as of the date of such notice and any available cash thereafter held by the Prepetition Loan Parties to fund a segregated account held with the Administrative Agent in trust for the benefit of the Professional Persons (the "Carve Out Reserve") in an amount equal to the sum of (A) all fees and expenses required to be paid pursuant to subparagraphs (i) and (iii) in the definition of Carve Out above (subject to the Budget), (B) all billed and unpaid monthly fees and expenses of all Professional Persons (including outstanding holdbacks) pursuant to subparagraphs (i) and (iii) in the definition of Carve Out above (subject to

the Budget); (C) all unbilled fees and expenses of Professional Persons incurred prior to delivery of the Carve Out Notice pursuant to subparagraphs (i) and (iii) in the definition of Carve Out above (subject to the Budget); (D) all billed and unbilled expenses of members of the Committee for the Prepetition Loan Parties allowable pursuant to section 503(b)(3)(F) (subject to the Budget); and (E) the Post-Carve Out Notice Cap. The failure of the Carve Out Reserve to satisfy in full the amount set forth in the Carve Out shall not affect the priority of the Carve Out.

(c)     Notwithstanding anything to the contrary in any of the Administrative Credit Documents or this Order, following delivery of a Carve Out Notice, the Administrative Agent and the Prepetition Secured Parties shall not, and shall not direct any entity to, sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Prepetition Loan Parties until the Carve Out Reserve has been fully funded. Further, notwithstanding anything to the contrary herein or in the Administrative Credit Documents, in no way shall the Budget, Carve Out, Post-Carve Out Notice Cap, Carve Out Reserve, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Prepetition Loan Parties to the Professional Persons; provided that the foregoing shall not be a restriction on any party's rights to object to the allowance of any unpaid fees and disbursements of the Professional Persons.

(d)     Any payment or reimbursement of Allowed Professional Fees made to any Professional Persons prior to the delivery of the Carve Out Notice shall not reduce the Carve Out. Any payment or reimbursement of Allowed Professional Fees made to any Professional Persons on or after the delivery of the Carve Out Notice shall permanently reduce the Carve Out on a dollar-for-dollar basis. For the avoidance of doubt, the funding or payment of the Carve Out from cash on hand or other available cash shall not reduce Prepetition Secured Indebtedness.

(e)     Notwithstanding anything in this Order to the contrary, no portion of the Carve Out or any other Prepetition Collateral or Collateral, shall be used for professional fees and expenses (a) incurred by any Debtor that is not a Prepetition Loan Party or (b) incurred for any litigation or threatened litigation against any of the Prepetition Secured Parties or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the Prepetition Secured Parties or asserting any defense, claim, counterclaim, or offset with respect to the Prepetition Secured Indebtedness or the security interests or liens held by the Prepetition Secured Parties in the Prepetition Collateral or Collateral; provided, however, that (i) an aggregate of $200,000 from the Carve Out may be used to pay Allowed Professional Fees and expenses of the Committee to investigate the claims and liens of the Prepetition Secured Parties and (ii) the Prepetition Loan Parties may use Cash Collateral to pay Allowed Professional Fees incurred by the Debtors in order to respond to discovery requests served on the Prepetition Loan Parties, subject to the Budget.

7.     **Postpetition Lien Perfection.** Without the necessity of the filing of

financing statements, security agreements, federal or state notices, pledge agreements, recordings,

mortgages or other documents or taking possession or control of any Collateral, this  Order shall

be sufficient evidence of the Prepetition Secured Parties' perfected security interests and liens

granted in the Collateral pursuant to this Order. Notwithstanding the foregoing, the Debtors are authorized and directed to execute such documents including, without limitation, mortgages, pledges and Uniform Commercial Code financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Administrative Agent to provide further evidence of the perfection of the Prepetition Secured Parties' security interests and liens in the Collateral as provided for herein. All such documents shall be deemed to have been recorded and filed as of the Petition Date.

8.     **Inspection Rights.** In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Administrative Credit Documents, upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtors shall permit representatives, agents and employees of the Administrative Agent to (i) have reasonable access to and inspect and copy the Debtors' books and records, including all records and files of the Debtors pertaining to the Prepetition Collateral and the Collateral, (ii) have reasonable access to and inspect the Debtors' properties and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

9.     **Termination.** Subject to the Waiting Period (as defined herein) and paragraphs 6 and 11, the Debtors' right to use the Cash Collateral pursuant to this Order shall automatically terminate (the date of any such termination, the "Termination Date") without further court proceedings on the earliest to occur of any of the events set forth in clauses (a) through (g) below (such events, collectively, the "Termination Events"):

(a)     the passing of 5:00 p.m. (prevailing Central Time) on February 28, 2020 (unless extended with the written consent of the Administrative Agent, acting at the direction of the Required Lenders, in its sole discretion, which extension thereof shall be effective without further application to, or approval by, the Court);

(b)      entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Order without the express written consent of the Administrative Agent, acting at the direction of the Required Lenders;

(c)      any Prepetition Loan Party's case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or, without the express written consent of the Administrative Agent acting at the direction of the Required Lenders, a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in any Prepetition Loan Party's case, or any Prepetition Loan Party seeks entry of an order accomplishing any of the foregoing;

(d)      except as otherwise provided in this Order, an order is entered granting another claim or lien pari passu with or senior to the Prepetition Liens, Administrative Adequate Protection Liens or Administrative Adequate Protection Claims granted to the Prepetition Secured Parties under this Order or an order of the Court is entered reversing, staying for a period in excess of five (5) business days, vacating or otherwise amending, supplementing, or modifying this Order in a manner materially adverse to the Prepetition Secured Parties, in each case without the written consent of the Administrative Agent acting at the direction of the Required Lenders;

(e)      any proceeding is commenced by any Debtor seeking, or otherwise consenting to, (x) the invalidation, subordination, or other challenge to the Prepetition Secured Indebtedness, Prepetition Liens, Prepetition Secured Claims, Administrative Adequate Protection Liens or Administrative Adequate Protection Claims or (y) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash Collateral, or (ii) any Debtor files a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Secured Parties, except any motion or other pleading otherwise permitted by this Order;

(f)      the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Administrative Agent or the Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral without the written consent of the Administrative Agent acting at the direction of the Required Lenders, which consent may be withheld in its sole discretion;

(g)      the effective date of any confirmed chapter 11 plan for the Prepetition Loan Parties;

(h)      the entry of a subsequent order of the Court (i) terminating the Prepetition Loan Parties' use of Cash Collateral or (ii) authorizing the use of Cash Collateral by any Debtor that is not a Prepetition Loan Party;

(i)      the failure by the Prepetition Loan Parties to make any payment required pursuant to this Order when due;

(j)      the failure by the Debtors to deliver to the Administrative Agent any of the documents or other information required to be delivered pursuant to this Order when due or any such documents or other information shall contain a material misrepresentation;

(k)     failure to adhere to the Budget or a Subsequent Budget except with respect to Permitted Deviations or Non-Conforming Uses;

(l)     the failure of the Debtors to observe or perform any of the material terms or material provisions contained herein;

(m)     the entry of an order of this Court approving the terms of any debtor in possession financing for any of the Prepetition Loan Parties;

(n)     the Debtors' actual receipts during any period from the commencement of the Budget period through the last day of the same Budget period fall more than 10% below the Debtors' projected receipts for that same period, provided however, that in such event, the Debtors may cure any default by decreasing expenses by an equal percentage;

(o)     the Prepetition Loan Parties or the Independent Manager modify or reduce (i) the scope of the authority granted by the board of managers of Debtor Alta Mesa Holdings GP, LLC to the Independent Manager (defined below) as set forth in the resolutions attached to the chapter 11 petition filed by Debtor Alta Mesa Holdings GP, LLC, (ii) the terms of the letter from the Independent Manager dated September 11, 2019, without the prior written consent of the Administrative Agent, or (iii) the scope of authority granted to Robert Albergotti as Chief Restructuring Officer;

(p)     the Debtors shall fail to meet any of the following deadlines (together, the "Milestones"):

(i)     the filing of a retention application seeking entry of an order, with terms and substance acceptable to the Administrative Agent, authorizing the employment of a broker or investment banker to market the sale of substantially all of the Prepetition Loan Parties' assets by October 12, 2019;

(ii)     unless the Prepetition Loan Parties have previously filed with the Bankruptcy Court a chapter 11 plan reasonably acceptable to the Administrative Agent at the direction of the Required Lenders (an "Acceptable Plan"), obtain entry of an order, with terms and substance reasonably acceptable to the Administrative Agent, at the direction of the Required Lenders, approving bid and sale procedures as to substantially all of the Prepetition Loan Parties' assets (the "Bid Procedures Order"), which may include (but shall not be required to include) approval of a stalking horse asset purchase agreement and related bid protections by October 12, 2019;

(iii)     unless a disclosure statement for an Acceptable Plan has been approved by the Court, the Prepetition Loan Parties shall have received at least one "Qualified Bid" by a "Qualified Bidder" (as such terms shall be defined in the Bid Procedures Order) pursuant to the Bid Procedures Order by December 2, 2019;

(iv)     unless the Prepetition Loan Parties have previously obtained approval of a disclosure statement relating to an Acceptable Plan, conduct an auction for substantially all of the Prepetition Loan Parties' assets in accordance with the Bid Procedures Order by January 8, 2020;

(v)     obtain entry an order of the Court, with terms and substance acceptable to the Administrative Agent acting at the direction of the Required Lenders, approving the sale of substantially all of the Prepetition Loan Parties' assets or confirming an Acceptable Plan by January 13, 2020; and

(vi)     consummate the sale of substantially all of the Prepetition Loan Parties' assets or an Acceptable Plan by February 13, 2020.

10.     **Remedies After a Termination Date.** Subject to the provisions of this paragraph and paragraphs 6 and 11, the Debtors' authority to use Cash Collateral shall automatically terminate upon five (5) business days' prior written notice (the "Waiting Period") to the Debtors (copies of which shall be filed on the docket for these cases and provided to counsel to the Debtors, counsel to the Committee, counsel to the Ad Hoc Noteholder Group and the AMH Indenture Trustee, and the U.S. Trustee) given upon the occurrence or during the continuance of a Termination Event, unless such Termination Event is waived in writing by the Administrative Agent at the direction of the Required Lenders, all without further order or relief from the Court. Unless otherwise ordered by the Court, at the end of the Waiting Period, the automatic stay under Bankruptcy Code section 362 shall be deemed vacated and modified to the extent necessary to permit the Administrative Agent and the Prepetition Secured Parties to exercise all rights and remedies against the Prepetition Collateral and the Collateral, including the Cash Collateral, provided for in this Order, the Administrative Credit Documents, and applicable law. During the Waiting Period, the Administrative Agent and Prepetition Secured Parties consent to a hearing on an expedited basis to consider whether a Termination Event has occurred and is continuing and the quantum of any Collateral Diminution; *provided* that (x) if a hearing to consider the foregoing is requested to be heard before the end of the Waiting Period but is scheduled for a later date by the Court, the Waiting Period shall be automatically extended to the date of such hearing, but in no event later than eight (8) business days after delivery of the notice commencing the Waiting Period; and (y) the only issues that may be raised by the Debtors in connection with or at such

hearing shall be (A) whether, in fact, a Termination Event has occurred and is continuing and (B) the quantum of any Collateral Diminution. In addition, during the Waiting Period, except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except those which are (a) necessary to preserve the Debtors' going concern value or (b) necessary to contest in good faith whether a Termination Event has occurred and/or is continuing and the quantum of any Collateral Diminution. Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief. The Debtors hereby waive any right to seek relief, including without limitation under Bankruptcy Code section 105, to the extent such relief would in any way impair or restrict the rights and remedies of the Administrative Agent and the Prepetition Secured Parties set forth in this Order. Any delay or failure of the Administrative Agent or Prepetition Secured Parties to exercise rights under the Administrative Credit Documents or this Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Notwithstanding anything in this paragraph to the contrary, after notice and hearing, the Court may order such relief as it determines is appropriate following a Termination Event, which relief may or may not include an authorization for the foreclosure or repossession of assets.

11.     **Payments Free and Clear.** Any and all payments or proceeds remitted to the Administrative Agent on behalf of the Prepetition Secured Parties pursuant to the provisions of this Order or any subsequent order of this Court shall be irrevocable (subject to paragraph 21 of this Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly,

Bankruptcy Code sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b).

12.     **Application of Collateral Proceeds.** Subject to entry of an order of this Court to the contrary, following the occurrence of a Termination Event, the Debtors are hereby authorized to fund the Carve-Out Reserve from 100% of all collections on, and proceeds of, the Prepetition Collateral and the Collateral, including, without limitation, all accounts receivable collections, proceeds of sales of hydrocarbons, inventory, fixed assets, and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time. Unless otherwise ordered by the Court, the automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit the Prepetition Secured Parties to retain and apply all collections, remittances, and proceeds of the Prepetition Collateral and the Collateral subject to and in accordance with this Order and the Administrative Credit Documents to the Prepetition Secured Indebtedness in accordance with the provisions of this Order and the Administrative Credit Documents (subject to the Carve Out, as described above).

13.     **Hedge Proceeds.** Any proceeds owed to the Prepetition Loan Parties from any Hedge Event under a Hedge Contract (as such terms are defined in the Credit Agreement) are Cash Collateral of the Prepetition Secured Parties and, at the discretion of the Prepetition Secured Parties, may be setoff and applied against the Prepetition Secured Indebtedness outstanding under the Credit Agreement.  The Prepetition Secured Parties shall give notice to the counsel for the Committee and counsel to the Ad Hoc Noteholder Group and the AMH Indenture Trustee of any setoff and application under a Hedge Contract that occurs after entry of this Order within five (5)

business days following such setoff and application.  This Order is without prejudice to the rights

of the Prepetition Secured Parties under the Bankruptcy Code safe harbor provisions found in 11

U.S.C. §§ 362, 546, 555, 556, 559, 560, 561, or otherwise.

14.     **Limitation on Charging Expenses Against Collateral.** All rights to

surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or Collateral

under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law

shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the

Debtors and all parties in interest in the Cases.  Prior to the hearing on approval of a Successful

Bid under the Bidding Procedures, the Debtors shall provide to the Committee and the Prepetition

Secured Parties (with a copy to counsel for the AMH Indenture Trustee and the Ad Hoc

Noteholder Group) a budget for the post-closing wind-down costs estimated to be incurred by

the Prepetition Loan Parties assuming the Successful Bid closes (the "Wind-Down

Budget").  Notwithstanding the foregoing provisions of this paragraph or anything else to the

contrary in this Order, in the event that such parties cannot reach agreement on the Wind-

Down Budget, the Prepetition Loan Parties expressly reserve the right to seek (and the

Prepetition Secured Parties reserve the right to oppose) authorization from the Bankruptcy Court

to pay or otherwise fund the expenses in the Wind-Down Budget out of the cash proceeds payable

to them from the Successful Bid or other available cash as part of the Prepetition Loan Parties

request to approve the Successful Bid.

15.     **Reservation of Rights of the Prepetition Secured Parties.** This Order and

the transactions contemplated hereby shall be without prejudice to (i) the rights of the Prepetition

Secured Parties to seek additional or different adequate protection, move to vacate the automatic

stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or

to take any other action in the Cases and to appear and be heard in any matter raised in the Cases,

or any party in interest from contesting any of the foregoing, and (ii) any and all rights, remedies, claims and causes of action which the Administrative Agent, and the Prepetition Secured Parties may have against any non-Debtor party liable for the Prepetition Secured Indebtedness. For all adequate protection purposes throughout the Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection for any Collateral Diminution from and after the Petition Date. For the avoidance of doubt, such request will survive termination of this Order.

16.     **Modification of Automatic Stay.** The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Order.

17.     **Survival of Final Order.** The provisions of this Order shall be binding upon any trustee appointed during the Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to chapter 7 cases, dismissing the Cases under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization. The terms and provisions of this Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Order shall continue notwithstanding any conversion of the Cases to chapter 7 cases under the Bankruptcy Code, dismissal of the Cases or confirmation or consummation of any plan(s) of reorganization. Subject to the limitations described in paragraph 21 of this Order, the adequate protection payments made pursuant to this Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any

subsequent chapter 7 cases (other than a defense that the payment has actually been made); provided, recharacterization will be allowed to the extent otherwise provided in this Order.

18. **No Liability to Third Parties.** With respect to any approval or disapproval of expenditures set forth in the Budget including, without limitation, any Permitted Deviation or Non-Conforming Use, the Administrative Agent and the other Prepetition Secured Parties shall not: (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

19. **Binding Effect.** The terms of this Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Order by this Court.

20. **Reversal, Stay, Modification or Vacatur.** In the event the provisions of this Order are reversed, stayed, modified or vacated by court order following notice and any further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted pursuant to this Order. Notwithstanding any such reversal, stay, modification or vacatur by court order, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Order arising prior to the Administrative Agent's receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the Prepetition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized

herein and the security interests and liens granted herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to this Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

21.     **Reservation of Certain Third Party Rights and Bar of Challenge and Claims.** The Debtors' admissions and releases contained in paragraphs C, D, E and F of this Order (i) shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all other parties in interest, including any Committee for the Prepetition Loan Parties, for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entities right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than the date that is the latest of (A) sixty (60) days from the Petition Date for all parties other than the Committee for the Prepetition Loan Parties, the Ad Hoc Noteholder Group, and the AMH Indenture Trustee; (B) December 17, 2019 for the Committee, the Ad Hoc Noteholder Group, and the AMH Indenture Trustee, and (C) any such later date as may be ordered for cause upon a motion filed within the applicable period of time set forth in this paragraph, or such later date as may be agreed with the prior written consent of the Administrative Agent (the "Challenge Deadline"), (x) challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Indebtedness or the Prepetition Liens, or (y) otherwise asserting or prosecuting any action for preference, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests and defenses against the Prepetition Secured Parties on behalf of the Debtors' estates (collectively, "Challenges"); *provided*, *however*, that the filing of a motion for derivative standing or a motion to extend the Challenge Deadline shall toll the Challenge

Deadline with respect to any proposed Challenge described in such motion, until five (5) days after such motion is determined by a final and unappealable order; and (2) the plaintiff authorized to bring a Challenge obtains relief in any such timely and properly filed adversary proceeding or contested matter; and, provided further, however, that, the Debtors, Committee, the Ad Hoc Noteholder Group, the AMH Indenture Trustee and Prepetition Secured Parties agree that any motion for derivative standing or to extend the Challenge Deadline may be filed on an emergency basis but with at least 5 business days' notice and all parties' rights to object to the substantive relief in such motion are reserved. If no such Challenge is properly filed as of such dates or the plaintiff's claims are dismissed or denied by final and unappealable order in any such proceeding or matter, then: (a) the Debtors' admissions and releases contained in paragraphs C, D, E and F of this Order shall be binding on all parties in interest, including the Committee for the Prepetition Loan Parties; (b) the obligations of the Debtors under the Administrative Credit Documents shall constitute allowed claims for all purposes in the Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral and the Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first priority security interests and liens, subject only to Permitted Prior Liens, and not subject to recharacterization, subordination or otherwise avoidable; and (d) the Prepetition Secured Indebtedness and the Prepetition Liens on the Prepetition Collateral and the Collateral shall not be subject to any other or further challenge by the Committee for the Prepetition Loan Parties or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtors' admissions and releases contained in paragraphs C, D, E and F of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence

of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Nothing contained in this Order shall be deemed to grant standing to the Committee for the Prepetition Loan Parties or any other party to commence any such adversary proceeding or contested matter.

22.     **Enforceability; Waiver of Any Applicable Stay.** This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

23.     **No Impact on Certain Contracts or Transactions.** No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 and 561 of the Bankruptcy Code are affected by the provisions of this Order.

24.     **Proofs of Claim.** Neither the Administrative Agent nor the Prepetition Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in paragraph C herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtors. Notwithstanding the foregoing, the Administrative Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties arising from the applicable Administrative Credit Documents; provided, that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

25.     **Section 552(b) of the Bankruptcy Code.** The Administrative Agent and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Administrative Agent and the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the Collateral.

26.     **No Marshaling.** Neither the Administrative Agent nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral except as provided herein, as applicable.

27.     **Notice Procedures for Professional Fees.** Professionals for the Administrative Agent and other Prepetition Secured Parties (collectively, the "Lender Professionals") shall not be required to comply with the U.S. Trustee fee guidelines or submit invoices to this Court. Copies of the Lender Professionals' invoices shall be submitted to (i) the independent manager for the Debtor Alta Mesa Holdings GP, LLC (the "Independent Manager") and his counsel, (ii) the Committee and its counsel, and (iii) the U.S. Trustee. If (a) the Independent Manager, after consulting with his counsel, believes in good faith that any portion of the fees, costs, and expenses submitted by the Lender Professionals does not comply with Section 9.04 of the Credit Agreement, and/or (b) the Committee objects to the reasonableness of such fees, and/or (c) the U.S. Trustee objects to the reasonableness of such fees, and the Independent Manager, the Committee, and/or U.S. Trustee (as applicable) and Lender Professionals cannot resolve such objection within five business days of receipt of such invoices, then the Independent Manager, the Committee, and/or U.S. Trustee shall file with this Court and serve on such Lender Professionals

an objection (the "Fee Objection") limited to the issue of (x) in the case of the Independent Manager, whether the fees, costs, and expenses comply with Section 9.04 of the Credit Agreement and (y) in the case of the U.S. Trustee or the Committee, the reasonableness of such fees, and any failure by the Independent Manager, the Committee, and U.S. Trustee to file a Fee Objection within such five business day period shall constitute a waiver of any right to object to the applicable invoice. The Debtors shall timely pay in accordance with the terms and conditions of this Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed (or which is subsequently allowed by agreement or an order of the Court), and (b) all fees, costs, and expenses on an invoice to which no Fee Objection has been timely filed by the independent manager.

28.     **Headings.** The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

29.     **Retention of Jurisdiction.** The Court has and will retain jurisdiction to enforce this Order.

 Signed: November 21, 2019

_____
Marvin Isgur
United States Bankruptcy Judge

## <u>Exhibit 1</u>

**Budget**

**Alta Mesa Holdings**
Proposed 3rd Interim Cash Collateral Budget
USD'000

All columns are Forecast.

| Forecast Week | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Week 14 | Week 15 | Week 16 | Total for 14 Wk Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 11/29/2019 | 12/6/2019 | 12/13/2019 | 12/20/2019 | 12/27/2019 | 1/3/2020 | 1/10/2020 | 1/17/2020 | 1/24/2020 | 1/31/2020 | 2/7/2020 | 2/14/2020 | 2/21/2020 | 2/28/2020 | 11/29/19 to 02/28/20 |
| **Operating Receipts:** | | | | | | | | | | | | | | | |
| Crude | – | – | – | 30,748 | – | – | – | – | 29,253 | – | – | – | 26,829 | – | 86,830 |
| Natural Gas/NGL | – | – | – | 150 | 902 | – | – | 135 | – | 939 | – | 797 | – | 1,021 | 3,942 |
| Non Op Interest | 1,080 | – | 825 | – | – | – | 754 | – | – | – | – | – | – | – | 2,661 |
| Other | 1,233 | – | 375 | 375 | 815 | – | – | 375 | 375 | 935 | – | 375 | 375 | 1,500 | 6,734 |
| **Total Operational Receipts** | 2,314 | – | 1,200 | 31,273 | 1,717 | – | 754 | 510 | 29,628 | 1,874 | – | 1,172 | 27,204 | 2,521 | 100,167 |
| Royalty / Working Interest | (2,645) | – | – | (14,114) | (2,335) | – | – | – | (14,861) | – | – | – | (12,193) | (2,132) | (48,279) |
| **Net Operating Receipts** | (332) | – | 1,200 | 17,159 | (618) | – | 754 | 510 | 14,768 | 1,874 | – | 1,172 | 15,011 | 390 | 51,888 |
| **Operating Disbursements:** | | | | | | | | | | | | | | | |
| Lease Operating Expenses & Transportation, Processing and Marketing | (1,445) | (1,156) | (1,161) | (2,071) | (1,720) | (895) | (1,501) | (730) | (1,511) | (1,444) | (1,080) | (1,085) | (1,967) | (1,606) | (19,372) |
| Taxes | (60) | – | – | – | (100) | – | – | – | – | (710) | – | – | – | (60) | (930) |
| General & Administrative | (277) | (248) | (499) | (282) | (422) | (166) | (250) | (246) | (238) | (224) | (146) | (348) | (282) | (423) | (4,052) |
| Payroll | – | (950) | – | (1,330) | – | (800) | (200) | (950) | (498) | (950) | – | (950) | (248) | (950) | (7,826) |
| Other Disbursements | (150) | – | – | – | (150) | (150) | – | – | – | – | (150) | – | (150) | – | (750) |
| **Total Operating Disbursements** | (1,932) | (2,354) | (1,660) | (3,683) | (2,392) | (2,011) | (1,951) | (1,926) | (2,247) | (3,328) | (1,376) | (2,383) | (2,647) | (3,039) | (32,930) |
| **Capital Expenditure** | (400) | (473) | (552) | (407) | (568) | (463) | (447) | (289) | (443) | (358) | (354) | (414) | (305) | (426) | (5,900) |
| **Total Operating Cash Flow** | (2,664) | (2,826) | (1,011) | 13,069 | (3,579) | (2,474) | (1,643) | (1,704) | 12,077 | (1,812) | (1,732) | (1,626) | 12,059 | (3,076) | 13,058 |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | |
| Professional Fees | (1,621) | (1,350) | (950) | – | (4,847) | – | – | – | (5,281) | (300) | – | (3,073) | – | (11,299) | (28,720) |
| Interest & Financing Fees | – | (3,277) | – | – | – | (3,277) | – | – | – | – | (3,277) | – | – | – | (9,832) |
| Net Hedge Settlements | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| **Total Non-Operating Disbursements** | (1,621) | (4,627) | (950) | – | (4,847) | (3,277) | – | – | (5,281) | (300) | (3,277) | (3,073) | – | (11,299) | (38,552) |
| **Net Cash Flow** | (4,285) | (7,454) | (1,961) | 13,069 | (8,425) | (5,751) | (1,643) | (1,704) | 6,796 | (2,112) | (5,009) | (4,698) | 12,059 | (14,375) | (25,495) |
| **Change in Cash** | | | | | | | | | | | | | | | |
| Beginning Cash Balance (Book) | 81,638 | 77,353 | 69,899 | 67,938 | 81,007 | 72,582 | 66,831 | 65,187 | 63,483 | 70,280 | 68,167 | 63,158 | 58,460 | 70,518 | 81,638 |
| Net Cash Flow | (4,285) | (7,454) | (1,961) | 13,069 | (8,425) | (5,751) | (1,643) | (1,704) | 6,796 | (2,112) | (5,009) | (4,698) | 12,059 | (14,375) | (25,495) |
| Drawdown/Paydown (+/-) | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| **Ending Cash Balance (Book)** | 77,353 | 69,899 | 67,938 | 81,007 | 72,582 | 66,831 | 65,187 | 63,483 | 70,280 | 68,167 | 63,158 | 58,460 | 70,518 | 56,144 | 56,144 |
| **Estate Professionals Fees Incurred (Accrued)** | | | | | | | | | | | | | | | |
| Latham & Watkins | 310 | 438 | 438 | 438 | 438 | 300 | 300 | 300 | 300 | 300 | 313 | 313 | 313 | 313 | 4,810 |
| Perella Weinberg | 28 | 35 | 35 | 35 | 35 | 28 | 28 | 28 | 28 | 28 | 35 | 35 | 35 | 35 | 448 |
| AP Services LLC | 225 | 200 | 200 | 200 | 200 | 100 | 100 | 100 | 100 | 100 | 125 | 125 | 125 | 125 | 2,025 |
| Robbins Russell | 335 | 250 | 250 | 250 | 250 | 55 | 55 | 55 | 55 | 55 | 50 | 50 | 50 | 50 | 1,810 |
| Porter Hedges | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 349 |
| UCC Advisors | 150 | 136 | 136 | 136 | 136 | 109 | 109 | 109 | 109 | 109 | 111 | 111 | 111 | 111 | 1,686 |
| PrimeClerk | 4 | 48 | 48 | 48 | 48 | 15 | 15 | 15 | 15 | 15 | 31 | 31 | 31 | 31 | 392 |
| Other | 20 | 25 | 25 | 25 | 25 | 20 | 20 | 20 | 20 | 20 | 25 | 25 | 25 | 25 | 320 |
| **Total** | 1,097 | 1,156 | 1,156 | 1,156 | 1,156 | 652 | 652 | 652 | 652 | 652 | 715 | 715 | 715 | 715 | 11,839 |