IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALTA MESA RESOURCES, INC., *et al.*, | § | Case No. 19-35133 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT BY AND AMONG THE DEBTORS AND HEADINGTON OIL COMPANY, LLC AND (II) GRANTING RELATED RELIEF**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"):

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of an order substantially in the form attached hereto (the "Order") (a) authorizing Debtor Oklahoma Energy Acquisitions, LP's ("OEA") entry into the *Stipulation Regarding the Settlement Between Headington Oil Company, LLC and Oklahoma Energy Acquisitions, LP* (the "Headington Stipulation") by and between OEA

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); and Oklahoma Energy Acquisitions, LP (3762). The location of the Debtors' corporate headquarters and service address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

and Headington Oil Company, LLC ("Headington") (the "Parties," and each, a "Party"), attached as **Exhibit 1** to the Order, memorializing a settlement of issues between the Parties (the "Settlement"), and (b) granting related relief.

## JURISDICTION AND VENUE

2.   The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §1334.  This is a core proceeding under 28 U.S.C. § 157.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   The statutory bases for the relief requested herein are Sections 105(a), 363(b), and 365 of the Bankruptcy Code, Bankruptcy Rule 9019, and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## BACKGROUND

5.   On September 11, 2019 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing these cases under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of John C. Regan, Chief Financial Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration")[2], which is fully incorporated

---

[2]   The First Day Declaration and other relevant case information is available on the following website maintained by the Debtors' claims, balloting, and noticing agent, Prime Clerk LLC, in connection with these chapter 11 cases: http://cases.primeclerk.com/altamesa.

herein by reference.

6. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On September 27, 2019, the United States Trustee for the Southern District of Texas ("U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee").

7. OEA filed an application with the Corporation Commission of the State of Oklahoma (the "OCC") seeking pooling of certain land in Kingfisher County, Oklahoma (the "Contract Area"). On July 30, 2015, the OCC approved the application and entered Order No. 643619 (the "Pooling Order"), establishing OEA as the operator of the Contract Area.

## THE HEADINGTON AGREEMENTS

**A.  The Pooling Order**

8. The Pooling Order governs the rights of the Parties in certain areas of land or depths located in the Contract Area. Under the Pooling Order, Debtor OEA serves as operator of the Contract Area and conducts the exploration, drilling, and completion of wells, and subsequent production and marketing associated with the oil and gas in the Contract Area on behalf of itself and the other holders of non-operator working interests. Headington is one such non-operator working interest holder. As is typical under pooling orders of this kind, as operator, OEA initially incurs substantially all costs, including payments to third parties such as vendors, contractors, drillers, haulers, and other suppliers of oil and gas related goods and services. It subsequently bills the non-operator working interest holders, including Headington, for their pro rata share of the costs under the Pooling Order, which is based on the number of acres in the Contract Area owned by the non-operator working interest holder (each, a "Joint Interest Billing").

9. The Parties do not dispute that Headington owns 98.974517 acres (the "Undisputed

3

Headington Acreage") and OEA owns 485.756092 acres (the "Undisputed OEA Acreage") in the Contract Area.  However, both Headington and OEA asserted ownership rights in an additional 24.743 acres in the Contract Area (recorded as N/2 NE/4 of Section 16, Township 17 North, Range 5 West) (such acres, the "Disputed Acreage").

10. On August 19, 2015, Headington paid to OEA $752,557.00 on account of Joint Interest Billings related to Headington's asserted share of drilling and completion costs under the Pooling Order.  Of such amount, $150,510.31 was attributable to the Disputed Acreage (such amount, the "Disputed Payment").  The Debtors, however, asserted that the Disputed Acreage was owned by the Debtors and not Headington and, therefore, that the Disputed Payment was an overpayment of Headington's Joint Interest Billings.

11. As of the date of this Motion, there is uncertainty regarding the Parties' current rights with respect to the Disputed Acreage.  There is also uncertainty regarding OEA's obligation, if any, to refund the Joint Interest Billing to Headington.  The Headington Stipulation is intended to resolve the disputes between Headington and OEA and provide both Parties with certainty as to their rights to the Disputed Acreage and under the Pooling Order.

**b.     The Headington Stipulation**

12. The Debtors have considered their likelihood of resolving the title issues related to the Disputed Acreage.  In their sound business judgment, the Debtors concluded that a settlement of the outstanding issues between the Parties was in the best interest of their estates and all parties in interest.  Accordingly, the Debtors negotiated the terms of a consensual settlement with Headington.

13. Under the terms of the Headington Stipulation, *inter alia*,[3]

---

[3] The following summary is provided for illustrative purposes only and is qualified in its entirety by reference to the

(a) Headington has agreed to quitclaim, grant, convey, assign, transfer, set over, and deliver unto OEA all of Headington's right, title, and interest in and to the Disputed Acreage through the Quitclaim Assignment and Conveyance attached as Exhibit A to the Headington Stipulation;

(b) Headington has agreed to waive (i) any and all rights to assert any claims against OEA or any other Debtor related to the Disputed Acreage, the Pooling Order (solely with respect to the Disputed Acreage), and/or the Disputed Payment, (ii) any and all rights to object to or otherwise contest the Debtors' sale of all or any portion of their assets, including the Debtors' interests in the Contract Area and the Disputed Acreage, and (iii) any and all rights to assert an ownership or other interest in any portion of the Contract Area other than the Undisputed Headington Acreage. Notwithstanding the foregoing, Headington reserves all rights and claims with respect to the Undisputed Headington Acreage; and

(c) OEA has agreed to refund to Headington the Disputed Payment in the aggregate amount of $150,510.31.

14. The Debtors believe entry into the Headington Stipulation is in the best interests of the Debtors and their estates. First, the Settlement resolves significant disputes between the Parties, the outcome of which is inherently uncertain, including who holds proper title to the Disputed Acreage and the Debtors' obligation, if any, to refund the Disputed Payment. Second, the Settlement provides additional certainty because it ensures that Headington will not contest the Debtors' sale of their assets (including the Disputed Acreage) to a purchaser through the sales process. Third, the Settlement will permit the Debtors to avoid a long and potentially costly claims objection process to the extent the Debtors would have challenged Headington's claims against OEA.

15. Accordingly, the Debtors seek authorization to enter into the Headington Stipulation and implement its terms as set forth therein and in the Order.

---

Headington Settlement Agreement and the Order authorizing the Settlement.

US-DOCS\111808607.5

**BASIS FOR RELIEF**

**A.     Settlements Are Favored in Bankruptcy, and Debtors' Business Judgment Is Given Significant Deference.**

15.     Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee. . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

16.     "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

17.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the "sound discretion" of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *see also Jackson Brewing Co.*, 624 F.2d at 602-03 (same).

18.     Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the

court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).[4]

19.     Further, the Bankruptcy Code authorizes the use and disposition of property outside the ordinary course of business with court approval and a valid business reason. Specifically, the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b)(1).

20.     It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business, if there is a good business reason for doing so. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.C.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985) (holding that the standard to assume a lease is the business judgment standard).

21.     "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d at 1309.

---

[4] Further, under Section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Authorizing the Debtors to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019, if not the letter, as well as the Bankruptcy Code's predilection for compromise. Thus, to the extent necessary, Section 105(a) relief is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

US-DOCS\111808607.5

**B.    The Settlement Satisfies the Three-Factor Test Courts in the Fifth Circuit Employ to Analyze Proposed Settlements.**

22.    The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors a court must consider in determining whether a compromise is "fair, equitable, and within the best interest of the estate are: '(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise.'" *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (citing the factors set forth by the court in *Jackson Brewing*); s*ee also Age Ref. Inc.*, 801 F.3d at 540 (same).

23.    Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. *First*, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *see also Age Ref. Inc.*, 801 F.3d at 540 (noting the *Foster Mortgage* factors). "While the desires of the creditors are not binding, a court 'should carefully consider the wishes of the majority of the creditors.'" *Foster Mortgage*, 68 F.3d at 917 (quoting *In re Transcontinental Energy Corp.*, 764 F.2d 1296, 1299 (9th Cir. 1985)). *Second*, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

    **a.    The Debtors Are Not Certain to Succeed in Litigating the Issues Between the Debtors and Headington.**

24.    With respect to "the probability of success in litigating the claim subject to settlement," although the Debtors are confident in their position, they believe there is inherent risk

8

US-DOCS\111808607.5

in any litigation.  More importantly, the Settlement provides the Debtors with the relief that they would have sought in any litigation – clarity that the Debtors own the Disputed Acreage and the refund of the Joint Interest Billing overpayment to Headington.  Thus, the Debtors believe, in their sound business judgment, that the Settlement is an excellent outcome for the Debtors and provides certainty in a dispute at a critical juncture in the Debtors' chapter 11 cases.

        **b.**      **Litigation with Headington Would Be Complex and Result in Delay and Distraction.**

25.     With respect to "the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay," potential litigation with Headington likely would be costly and time consuming.  Indeed, if the Debtors were to litigate the disputes at issue, it would require significant time and expense to determine the parties' rights to the Disputed Acreage, as well as their rights and obligations with respect to the Disputed Payment under the Pooling Order, at a time when the Debtors' management should be focused on the sale process and their ultimate emergence from chapter 11.

        **c.**      **The Settlement Is in the Best Interests of Creditors.**

26.     The Settlement is also in the best interest of creditors.  As noted, the Settlement reflects the Debtors' desired resolution of the dispute – it provides clarity that the Debtors own the Disputed Acreage and allows the Debtors to refund the Disputed Payment (which they believe was an overpayment from Headington).

27.     The Settlement will provide all parties with certainty regarding the title of the Disputed Acreage.  This will not only allow the Debtors to avoid potentially costly litigation, but will benefit the Debtors' ongoing sales process by providing potential purchasers with the certainty needed to assess the Debtors' assets.  The Settlement, therefore, maximizes the value of the

9

Debtors' estates for all parties by avoiding the expense of litigation and bringing final resolution of the disputes between the Debtors and Headington.

28. Finally, the Settlement arises out of arms-length negotiations between the Parties.

29. Based on the foregoing considerations, the Debtors respectfully submit that the Settlement represents a fair and reasonable compromise that is in the best interest of the Debtors' estates. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to enter into and implement the terms of the Headington Stipulation as such action is a reasonable exercise of the Debtors' business judgment and in the best interest of their bankruptcy estates.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

30. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

31. Notice of this Motion will be given to: (i) the U.S. Trustee; (ii) the holders of the 30 largest unsecured claims against the Debtors; (iii) Wells Fargo Bank, N.A., as administrative agent under the Debtors' prepetition revolving credit facility; (iv) counsel to U.S. Bank, N.A., as indenture trustee for the 7.875% Senior Notes due 2024; (v) counsel to the parties referenced in clauses (iii) to (iv); (vi) Davis Polk & Wardwell LLP, counsel to the ad hoc group of holders of 7.875% Senior Notes due 2024; (vii) Quinn Emanuel Urquhart & Sullivan LLP, counsel to Kingfisher Midstream, LLC; (viii) counsel to the Committee, (a) Brown Rudnick LLP and (b) Snow Spence Green LLP; (ix) the United States Attorney's Office for the Southern District of Texas; (x) the Internal Revenue Service; (xi) the United States Securities and Exchange

Commission; (xii) the state attorneys general for states in which the Debtors conduct business; (xiii) Headington; and (xiv) all parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Bankruptcy Rules.  The Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

*[Remainder of Page Left Blank Intentionally]*

| | |
|---|---|
| Dated: January 7, 2020<br>      Houston, Texas | Respectfully,<br><br>*/s/ John F. Higgins*<br>John F. Higgins (TX 09597500)<br>Eric M. English (TX 24062714)<br>Aaron J. Power (TX 24058058)<br>M. Shane Johnson (TX 24083263)<br>**PORTER HEDGES LLP**<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002<br>Telephone: (713) 226-6000<br>Fax: (713) 226-6248<br>Email: jhiggins@porterhedges.com<br>       eenglish@porterhedges.com<br>       apower@porterhedges.com<br>       sjohnson@porterhedges.com<br><br>– and –<br><br>George A. Davis (admitted *pro hac vice*)<br>Annemarie V. Reilly (admitted *pro hac vice*)<br>Brett M. Neve (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>885 Third Avenue<br>New York, NY 10022<br>Telephone:  (212) 906-1200<br>Facsimile:  (212) 751-4864<br>Email: george.davis@lw.com<br>       annemarie.reilly@lw.com<br>       brett.neve@lw.com<br><br>– and –<br><br>Caroline Reckler (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL 60611<br>Telephone:  (312) 876-7700<br>Facsimile:  (312) 993-9667<br>Email: caroline.reckler@lw.com<br><br>– and –<br><br>Andrew Sorkin (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>555 Eleventh Street, Suite 1000<br>Washington, D.C. 20004<br>Telephone:  (202) 637-2200<br>Facsimile:  (202) 637-2201<br>Email: andrew.sorkin@lw.com<br><br>*Counsel for the Debtors and Debtors in Possession* |