IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| ALTA MESA RESOURCES, INC., et al., | § | CASE NO. 19-35133 (MI) |
| | § | |
| Debtors.[1] | § | Jointly Administered |

### OBJECTION OF BOKF, N.A. D/B/A BANK OF TEXAS TO KINGFISHER DEBTORS' MOTION TO SELL SUBSTANTIALLY ALL OF THEIR ASSETS
[Relates to Docket Nos. 817]

BOKF, N.A. d/b/a Bank of Texas ("Bank of Texas"), a Lender under the Alta Mesa Resources, Inc., et al., ("AMH") Credit Facility (as defined below), and a Lender under the Kingfisher Credit Facility (defined below), by and through its undersigned counsel, hereby objects to the Emergency Motion filed by the Kingfisher Midstream, LLC ("KFM") Debtors requesting Court approval to sell substantially all of their assets [Docket No. 817] (the "Sale Motion").  In support thereof, Bank of Texas respectfully states as follows:

### PRELIMINARY STATEMENT

1.      Bank of Texas cannot and does not consent to the proposed sale under the current process and timeline.  Because Bank of Texas does not consent, the sale cannot be approved outside of a plan of reorganization.

2.      When the Initial Debtors filed their bidding procedures motion, they stated in their motion that they were exploring all strategic options, including reorganization.  But the sale option is the only one that has been pursued, and that pursuit has been in the context of a confusing,

---

[1] The AMH Debtors in these Chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); and Oklahoma Energy Acquisitions, LP (3762).  The location of the Debtors' corporate headquarters and service address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

1

disjointed process with the overhanging uncertainty caused by the litigation between Debtors and KFM and related entities.

3.      Only since December 19 has a sale process more clearly included the combined assets and cooperation of Debtors and KFM ("Dual Sale") been pursued, though the process remains disjointed given the lack of any reorganization case and approved sale process for the sale of the KFM assets.  The Dual Sale process is proposed to be only 12 business days long, including Christmas Eve and New Year's Eve as business days.  Interested parties wishing to submit competitive bids are given only 5 business days after the notice of the stalking horse bid to submit any such competitive bids.

4.      The timing set forth in the above paragraph is generous in respect of the Sale Motion for the KFM Debtors.  There is still, at this time, no enforceable process for bidders bidding on KFM assets.  Yet the KFM Debtors want "ratification" of a pre-petition bid deadline, and approval of an auction tomorrow, the third day of the KFM Debtors cases.

5.      This is clearly a distressed sale in a distressed market.  The distress of the sale has been exacerbated by the process to date.  Only now is there any amount of clarity with a Dual Sale process starting to occur, but that clarity is compromised by a rush to the end that can only benefit the stalking horse, and is at the expense of creditors.   The Dual Sale process and Stalking Horse PSAs have simply not had sufficient time to be absorbed into and understood by the market.  Therefor the process is not likely to engender a truly competitive sale.

6.      That being the case, the process has yielded a sale that does not have a sound business justification.

7. Further, under these circumstances, Bank of Texas stands on its rights as a lienholder to refuse its consent to the sale as proposed, and on its rights to all the protections and process of a plan of reorganization.

## BACKGROUND

8. The Alta Mesa Debtors filed these cases on September 11, 2019.

9. Bank of Texas is a Lender under the Eighth Amended and Restated Credit Agreement, dated as of February 9, 2018, among Debtors and Wells Fargo Bank, N.A. as Administrative Agent (as heretofore amended, restated, or otherwise modified, the "AMH Credit Agreement" and, together will all other documentation executed in connection therewith, the "AMH Credit Facility").  Bank of Texas is owed approximately $15.4 million under the AMH Credit Facility.

10. Bank of Texas is also a Lender under the Amended and Restated Credit Agreement dated as of May 30, 2018, among KFM and Wells Fargo Bank, N.A. as Administrative Agent (as heretofore amended, restated, or otherwise modified, the "Kingfisher Credit Agreement" and, together will all other documentation executed in connection therewith, the "Kingfisher Credit Facility").  Bank of Texas is owed approximately $14.9 million under the KFM Credit Facility.

11. On September 12, 2019, the Debtor's filed Adversary Proceeding 19-03609 against KFM (the "Gathering Agreements Adversary").  The Gathering Agreements Adversary then took on a life of its own, absorbing the AMH and KFM Debtors' time and substantial financial resources.

12. On September 16, 2019, with the Gathering Agreements Adversary pending, the AMH Debtors filed a Motion for Entry of an Order Approving the Sale of Substantially All or Any

3

Portion of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances [Docket No. 126] (the "Sale Motion").

13.     The AMH Debtors stated that the Sale Motion was simply a first step to evaluating "all of their strategic options" which included standalone reorganization or reorganizing with some or all of the KFM entities.   The AMH Debtors stated they were not "committed to any particular path" and therefore had "not committed to any process that would require them to sell their assets" notwithstanding the requested bidding procedures.

14.     Thus began a process where some sale of some kind might or might not be taking place.  In other words, it could not have been clear to the market what exactly the sale process might be.  Certainly, it could not have been clear how the KFM assets were to be part of the process.

15.     On October 11, 2019, the Court entered an Order Establishing Bidding Procedures Relating to the Sales of All or a Portion of the Debtors' Assets [Docket No. 317](the "Original Bidding Procedures Order"). The Original Bidding Procedures Order references the KFM Assets, but stated they may or may not be included in any sale, and KFM may or may not be part of selecting a stalking horse or conducting the Auction, depending on the various bids.

16.     Thereafter, the AMH Debtors through its professionals, and KFM, separately through other professionals, engaged in a marketing and sale process.  The process was conducted in "silos" where sales of the AMH Debtors' assets only were considered by the AMH Debtors, sales of KFM assets only were considered by KFM, and the various indications of interest and potential bids were kept confidential in those separate silos, except where a bidder happened to bid on assets in both silos.

4

17.     Between the Gathering Agreements Adversary and the complex sale process, no substantial progress on any alternative to some form of sale, nor evaluation of the same, was made.

18.     On December 12, 2019, KFM filed a position statement at Docket No. 208 in the Gathering Agreements Adversary, stating "The purpose of this Statement is simply to break through the communicating dysfunction permeating these cases and state clearly—for the record and with particularity—KFM's illustrative construct to end this costly, wasteful, and time consuming litigation."

19.     Apparently the "illustrative construct" was to clarify that KFM really was willing to sell its assets, but would do so under a prepackaged plan to be filed later, perhaps January 10, 2020.

20.     On December 19, 2019, the Court entered a Second Amended Order Establishing Bidding Procedures Relating to the Sales of All or a Portion of the Debtors' Assets [Docket No. 666]. ("Second Amended Sale Order"). The Second Amended Sale Order began the Dual Sale process, with a total of twelve business days between then and the bid deadline for all bids other than a credit bid.

21.     On December 23, 2019, the AMH Debtors filed a Notice of Proposed Sale, Bidding Procedures, Auction, and Sale Hearing [Docket No. 683] notifying parties of the Second Amended Sale Order with ten holiday season business days thereafter until the bid deadline.

22.     Also on December 23, 2019, the Court entered an Order staying proceedings in the Gathering Agreements Adversary [Adv. Pro. Docket No. 241](the "Stay Order"). Though the Stay Order temporarily took away the distraction of the Gathering Agreements Adversary, it remains pending and an issue for interested bidders. As made clear by the Stay Order, nothing in

the Stay Order precludes either AMH Debtors or KFM from pursuing "transactions other than a sale of the assets or equity of KFM and AMH LP jointly." Stay Order at ¶3.

23.     On New Year's Eve, December 31, 2019, the AMH Debtors filed a Notice of Stalking Horse Bid in Connection With the Sale of the Debtors' Assets [Docket No. 701](the "Stalking Horse Notice").[2]  The Stalking Horse Notice attached two PSAs, one for AMH Debtors' assets and one for KFM assets.  The Stalking Horse is identified therein as "related to an affiliate." Upon information and belief, the buyer is an affiliate of Bayou City Energy Management LLC, an equity sponsor of the Debtor.

24.     In respect of the KFM Stalking Horse PSA, the Stalking Horse Notice says only that the sale will be implemented through Chapter 11 proceedings for KFM, and that KFM will provide notice of relevant dates.

25.     KFM has finally filed a case.  The bid deadline already passed.  As of the filing of this objection, there is no enforceable procedure for bidders to look to for a process.

## ARGUMENT

26.     Section 363 of the Bankruptcy Code governs this sale.  This sale is outside of the ordinary course of business, is of substantially all of the AMH and KFM Debtors' assets, and is occurring outside of a plan of reorganization.  Under 363(b) of the Bankruptcy Code, the AMH and KFM Debtors bear the burden of demonstrating that the proposed sale is supported by a sound business justification.

27.     Further, under Section 363(f) of the Bankruptcy Code, the assets may only be sold

---

[2] Bank of Texas reserves all rights to file an objection to the designation of the Stalking Horse Bidder, the Stalking Horse Order, the Stalking Horse PSAs and the Bid Protections (each as defined in the Stalking Horse Notice) by January 8, 2019 as set forth therein, and the filing of this Objection should not be construed as a waiver of any other objection Bank of Texas may have.

free and clear of Bank of Texas' liens if Bank of Texas consents or is paid in full.

### The Sale Should Not Be Approved Under 363(b).

28.     Section 363(b) requires a "business justification" for any proposed sale.  *In re Continental Air Lines, Inc.* 780 F.2d at 1226.   In evaluating whether a proper "business justification" exists for a sale, a Court should consider factors such as (i) the proportionate value of the asset to the estate as a whole, (ii) the amount of time elapsed since the filing, (iii) the likelihood that a plan of reorganization will be proposed and confirmed in the near future, (iv) the effect of the proposed distribution on the future plans of reorganization, (v) the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, (vi) which alternatives of use, sale or lease the proposal envisions, and (vii) whether the asset is increasing or decreasing in value.  *Id.*

29.     "This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge."  *Id.*  (quoting from *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

30.     Bank of Texas submits that the KFM Debtors cannot meet their burden.  The value achieved by this truncated Dual Sale process is a highly distressed sale achieved in a down market.  That snap shot of value does not reflect true value of the assets, which, by their nature, are long term assets that will produce value over time.  Given the flaws in the process to date, it is not clear that the price achieved is even up to the "bottom" of the current market if the process were extended for a sufficient time for the Dual Sale to be absorbed and understood in the market, and for the unknown of the KFM sale process to become known and be of sufficient duration to achieve the value of those assets alongside the Initial Debtors' assets.  Attached hereto as Exhibit A is a letter dated January 13, 2020 from Great Salt Plains Midstream, a potential bidder who states: "From our perspective, the advisors in the Pending Cases have purposefully conducted a

7

process for the subject assets involved in the Pending Cases that seeks to find one bidder for all of such assets out of administrative convenience instead of maximizing the value for all of the assets by allowing separate bids for each of the KFM Business and the Upstream Assets." *See*, Exhibit A.

31.     The KFM assets are not diminishing in value.  The sole driver of the deadlines is to protect the insider bidder from facing real competition.

32.     There is not a sound business justification for agreeing to the sale under this flawed process.  In particular, the KFM Debtors have not and cannot meet their burden where the proposed sale lets old equity expand its equity holding while failing to pay senior classes of creditors in full.  Such an insider transaction should not be crammed down on objecting Lenders outside of a plan process.

### The Sale Cannot Be Approved Under Section 363(f)

33.     As noted by the AMH and KFM Debtors in the Sale Motion, in order for the AMH and KFM Debtors to sell assets free and clear of liens, they must meet one of the five conditions of Section 363(f) of the Bankruptcy Code.

34.     With respect to the KFM Debtors' assets, Bank of Texas has a lien pursuant to the KFM Credit Facility.  Under section 10.01(a)(7) of the Credit Agreement governing the AMH Credit Facility, each lender must consent to the release of liens.  Bank of Texas does not consent.

35.     Here, applicable nonbankruptcy law does not permit the AMH and KFM Debtors to sell the Property free and clear of Bank of Texas's perfected liens in the Property, so the condition of Section 363(f)(1) cannot be met.

36.     Bank of Texas does not consent to the sale free of its liens, therefore the condition of Section 363(f)(2) cannot be met.

20140272.20200116/3441874.1

37.     The Sale Motion presents an untenable argument that the Required Lenders can consent to the sale and bind the more than 31% in value of Lenders objecting to the sale.

38.     The KFM Debtors' argument reads the word "permitted" out of Section 10.01(a)(7).  Doing so is an impermissible waiver or sub rosa amendment of that provision in violation of Section 10.01(a)(9).

39.     Further, the Sale Motion's emphasis on majority in number and 66 2/3% in value is a tacit admission that the protections of the plan process and confirmation standards of Section 1129 should apply.

40.     Sections 363(f)(4) and (5) are not applicable.

41.     With respect to Section 363(f)(3), there is a split of authority as to the meaning of "value of the liens" which must be paid in full under Section 363(f)(3).  Does value mean the face amount of the secured debt or does value mean the purchase price paid for the assets sold?  There appears to be no controlling authority in the Fifth Circuit on this issue.  The more persuasive view is that "value" refers to the amount of the debt secured by the liens.  *In re Stroud Wholesale, Inc.*, 47 B.R. 999, 1001-02 (E.D.N.C. 1985) (holding that Congress's amendment in 1984 to clarify the meaning of (f)(3) makes it clear that "sales free and clear of liens and interests may be justified by (f)3 only if the sale price will exceed the aggregate value of all liens on the property");  *In re Takeout Taxi Holdings*, at 534 (363(f)(3) envisions a secured lender being paid in full if the collateral is sold).  Even *Collier* supports the majority view on the basis that section 363(f)(3) protects a secured creditor from being crammed down outside a confirmed plan:

The sale free and clear under a plan is more powerful than a regular sale free and clear under section 363(f).  Under that subsection, a sale free and clear can occur under only one of five conditions.  In particular, if the property to be sold is encumbered by liens in excess of its value, most cases under section 363(f)(3) will not permit a sale free and clear.  Under section 1129(b)(2)(A)(ii), however, there is no such limitation.  The Code makes this distinction because

9

the secured creditor receives the benefits of the other confirmation requirements with the sale, and thus will be better protected.

7 Collier on Bankruptcy ¶1129.04[2][b][iv] (16th Ed. 2012) (footnotes omitted); *In re Criimi Mae Servs. Ltd. P'ship v. WDH Howell, LLC (In re WDH Howell, LLC)*, 298 B.R. 527, 533-34 (D. N.J. 2003) (conducting thorough analysis and holding that the intent of (f)(3) is such that the price must exceed the face value of all liens in order for the subpart to be satisfied); *In re Clear Channel Outdoor, Inc. (In re PW, LLC)*, 391 B.R. 25, 40-41 (9th Cir. BAP 2008) (holding that 363(f)(3) does not authorize a sale free and clear of a lienholder's interest if the price of the estate property is equal to or less than the aggregate amount of all claims held by creditors who hold a lien or security interest in the property being sold).

42.     Neither of the proposed sales under the Dual Sale process will pay secured claims in full, and therefore cannot be approved over Bank of Texas objection, absent a successful cram down reorganization plan.

43.     Accordingly, none of the five requirements set forth under section 363(f) have been satisfied with respect to the Debtors' proposed sale. As a result, the Debtors may not sell their assets free and clear of the liens that Bank of Texas has in the Property.

WHEREFORE, BOKF, N.A. d/b/a Bank of Texas respectfully requests that the Court deny the Sale Motion and grant it such other and further relief to which it may be justly entitled.

Dated: January 14, 2020

Respectfully submitted,

FREDERIC DORWART, LAWYERS PLLC

By: */s/ John D. Clayman*
    John D. Clayman
    State Bar I.D. No. 24050567
    SDTX 100614
    Samuel S. Ory
    124 East Fourth Street
    Tulsa, Oklahoma 74103
    (918) 583-9922 telephone
    (918) 583-8251 facsimile
    Email: jclayman@fdlaw.com
    Email: sory@fdlaw.com

**COUNSEL FOR BOKF, N.A. d/b/a BANK OF TEXAS**


HIRSCH & WESTHEIMER, P.C.

By: */s/ Michael J. Durrschmidt*
    Michael J. Durrschmidt
    Texas Bar No. 06287650
    Brian A. Buescher
    Texas Bar No. 24107717
    1415 Louisiana, Floor 36
    Houston, Texas 77002
    Telephone: 713-220-9165
    Facsimile:  713-223-9319
    E-mail: mdurrschmidt@hirschwest.com
    E-mail: bbuescher@hirschwest.com

**LOCAL COUNSEL FOR BOKF, N.A. d/b/a BANK OF TEXAS**

11

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on January 14, 2020, a true and correct copy of the foregoing document was served on all parties requesting service via the Court's CM/ECF system.

Eric M. English
John F. Higgins, IV
Michael S. Johnson
Aaron J. Power
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

*Counsel to the Debtors*

George A. Davis
Annemarie Reilly
Brett M. Neve
Latham & Watkins LLP
885 Third Avenue
New Nork, NY 10022

*Counsel to the Debtors*

Caroline Reckler
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611

*Counsel to the Debtors*

Damian S. Schaible
Davis Polk & Wardell LLP
450 Lexington Avenue
New York, NY 10017

*Counsel to the Ad Hoc Noteholder Group*

Lawrence S. Robbins
Mark T. Stancil
William J. Trunk
Robbins Russell
2000 K St. NW, 4th Floor
Washington, DC 20006

*Counsel to the Debtors*

William A. Wood III
Bracewell LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002

*Counsel to the AMH Agent*

Michael E. Bielby, Jr.
Vinson & Elkins LLP
2001 Ross Avenue, Suite 3900
Dallas, TX 75201

*Counsel to the KFM Agent*

Robert Stark
Andrew Carty
Brown Rudnick LLP
7 Times Square
New York, NY 10036

*Counsel to the Official Committee of Unsecured Creditors*

20140272.20200116/3441874.1

Susheel Kirpalani
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

Stephen Statham
U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002

*Counsel to Kingfisher Midstream, LLC*

Michael K. Riordan
Foley Gardere/Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002

*Counsel to the Debtors*

20140272.20200116/3441874.1