**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
01/14/2020

| | | |
|---|---|---|
| In re: | § § | **Chapter 11** |
| **ALTA MESA RESOURCES, INC.,** *et al.*, | § § | **Case No. 19-35133 (MI)** |
| **Debtors.**[1] | § § § | **Jointly Administered Re: Docket No. 817** |

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, 365, 503 AND 507 AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9006, 9007, 9008, 9014, AND 9019 (I) RATIFYING AND APPROVING BIDDING PROCEDURES, (II) RATIFYING AND APPROVING STALKING HORSE PURCHASE AGREEMENT, (III) RATIFYING AND APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (IV) RATIFYING AND APPROVING ASSIGNMENT OBJECTION PROCEDURES AND RIGHTS OBJECTIONS PROCEDURES, (V) SCHEDULING AUCTION AND SALE HEARING, (VI) RATIFYING AND APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (VII) GRANTING RELATED RELIEF, IN CONNECTION WITH SALE OF ALL OR A PORTION OF THE KFM ASSETS**

Upon the motion, dated January 12, 2020 (the "**Motion**"),[2] of the KFM Debtors for, among other things, entry of an order pursuant to sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, 9014, and 9019:

       (i)       ratifying and approving auction and bidding procedures, in the form annexed hereto as **Exhibit 1** (the "**KFM Bidding Procedures**"), by which the KFM Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or any portion

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); Oklahoma Energy Acquisitions, LP (3762); SRII Opco GP, LLC (3729); SRII Opco, LP (5874); Kingfisher Midstream, LLC (1357); Kingfisher STACK Oil Pipeline, LLC (8858); Oklahoma Produced Water Solutions, LLC (0256); and Cimarron Express Pipeline, LLC (1545). The Debtors' mailing address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or KFM Bidding Procedures, as applicable.

of the KFM Assets through one or more sales of the KFM Assets and/or a combined sale of both the KFM Assets and the AMH Assets (the "**Sale Transaction**");

(ii)     ratifying and approving the KFM Debtors' entry into the KFM Stalking Horse PSA with the Stalking Horse Bidder;

(iii)     ratifying and approving the Assumption and Assignment Procedures;

(iv)     ratifying and approving the Assignment Objection Procedures and the Rights Objection Procedures;

(v)     scheduling the Auction for **January 15, 2020 at 9:00 a.m. (Prevailing Central Time)** if the KFM Debtors receive two or more timely and acceptable Qualified Bids (including the KFM Stalking Horse Bid) and a Sale Hearing on shortened notice to consider approval of the Sale Transaction on **January 21, 2020 at 2:00 p.m. (Prevailing Central Time)**;

(vi)     ratifying and approving the form and manner of notice of the KFM Bidding Procedures, the KFM Stalking Horse PSA, the Auction, the Sale Transaction, the Sale Hearing, and certain objection deadlines related thereto; and

(vii)     granting related relief, all as more fully described in the Motion; and upon consideration of the Regan Declaration, Beilinson Declaration, and the Aronson Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion and the Regan Declaration, Beilinson Declaration, and the Aronson Declaration; and based upon the

evidence presented at the hearing held on January [●], 2020 (the "**Hearing**") to consider the relief requested in the Motion as set forth in this Order; and this Court having approved the AMH Bidding Procedures pursuant to the AMH Bidding Procedures Order; and all parties in interest having been heard or having had the opportunity to be heard regarding the Motion; and all objections, if any, to the relief granted herein that have not been withdrawn, waived, or settled as announced to the Court at the Hearing or by stipulation filed by the Court are overruled except as otherwise set forth herein; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interest of the KFM Debtors and their respective estates, creditors, and other parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.      **Fed. R. Bankr. P. 7052.**  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  This Court's findings shall also include any oral findings of fact and conclusions of law made by this Court during or at the conclusion of the Hearing.

B.      **Jurisdiction.**  This Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

C.      **Venue.**  Venue of these chapter 11 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.      **Statutory Predicates.**  The statutory and legal predicates for relief granted herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, 9014, and 9019.

E.      **Business Justification.**  The KFM Debtors have demonstrated a compelling and sound business justification for this Court to grant the relief requested in the Motion, including (i) ratifying and approving the KFM Bidding Procedures, (ii) ratifying and approving entry into the KFM Stalking Horse PSA with the Stalking Horse Bidder, (iii) ratifying and approving the Assumption and Assignment Procedures, (iv) ratifying and approving the Assignment Objection Procedures and Rights Objection Procedures, (v) scheduling Auction and Sale Hearing, (vi) ratifying and approving the form and manner of notice of all procedures, protections, agreements, and relevant dates and deadlines associated with the Sale Transaction, as applicable, and (vii) granting related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the Hearing, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.      **Notice of AMH Bidding Procedures Motion, AMH Bidding Procedures Order, AMH Bidding Procedures, the Auction, the Sale Hearing, and All Deadlines Related thereto**.  Shortly after commencing the AMH Debtors' chapter 11 cases (the "**AMH Debtors' Cases**"), the AMH Debtors filed a motion (the "**AMH Bidding Procedures Motion**") on the docket of the AMH Debtors' Cases (the "**AMH Docket**") seeking to, among other things, sell all or substantially all or any portion or combination of the AMH Assets and, subject to the consent of the KFM

Debtors, the KFM Assets.[3]  On October 11, 2019, the Court entered the *Order Establishing Bidding Procedures Relating to the Sale of All or a Portion of the Debtors' Assets* [Docket No. 317] in the AMH Debtors' Cases which, among other things, established bidding procedures (the "**AMH Bidding Procedures**") pursuant to which the AMH Debtors will solicit and select the higher or otherwise best offer for the sale of the AMH Assets and, with the consent of the KFM Debtors, the KFM Assets.  Amended versions of the AMH Bidding Procedures Order were entered on the AMH Docket on December 10, 2019 and December 19, 2019 [Docket Nos. 636 and 666, respectively].  As evidenced by the affidavits and/or certificates of service filed with the Court on the AMH Docket,[4] proper, timely, adequate, and sufficient notice of, *inter alia*, the AMH Bidding Procedures Motion, the AMH Bidding Procedures, the AMH Assumption and Assignment Procedures (as defined in the AMH Bidding Procedures Motion), the AMH Stalking Horse PSA, the Auction, the Transactions, the Sale Hearing, and all deadlines related thereto, has been provided, as relevant, in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, 9014, and 9019 and in compliance with the AMH Bidding Procedures Order, to all parties required to receive such notice.

G.  The AMH Debtors served notice substantially in the form of the *Notice of Proposed Sale, Bidding Procedures, Auction, and Sale Hearing* (the "**First Sale Notice**"), attached as Annex 2 to the AMH Bidding Procedures Order on all parties required to receive such notice under

---

[3] *See Debtors' Motion for Entry of an Order Approving (I)(A) Bidding Procedures for the Sale of Substantially All or Any Portion of the Debtors' Assets and Certain Non-Debtor Assets, (B) Procedures For the Debtors' Assumption and Assignment of Certain Executory and Unexpired Leases, (C) The Form and Manner of Notice of the Sale Hearing and Assumption Procedures, (D) Procedures for Selection of One or More Stalking Horse Bidders and the Provision of Bid Protections to Such Stalking Horse Bidder(s), and (E) Dates For an Auction and Sale Hearing, and (II)(A) the Sale of Substantially All or Any Portion of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (B) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Related Relief* [AMH Docket No. 126].

[4] Such affidavits and/or certificates of service were filed by the AMH Debtors on the AMH Docket at Docket Nos. 142, 417, 444, 528, 648, and 664.

the AMH Bidding Procedures Order and applicable rules, published such notice in the *Wall Street Journal* and *Houston Chronicle* on October 16, 2019, and posted the Sale Notice on the AMH Debtors' case information website. On December 20, 2019, the AMH Debtors served additional notice of the sale substantially in the form of the *Notice of Proposed Sale, Bidding Procedures, Auction, and Sale Hearing* (the "**Second Sale Notice**" and, together with the First Sale Notice, the "**Sale Notices**") [Docket No. 683] filed on the AMH Docket on all parties required to receive such notice under the AMH Bidding Procedures Order and applicable rules, published such notice in the *Wall Street Journal* and *Houston Chronicle*, and posted the Sale Notice on the AMH Debtors' case information website. Service and publication of the Sale Notices were appropriate and reasonably calculated to provide all interested parties with timely and proper notice of, *inter alia*, (i) the sale of the AMH Debtors' Assets, and, subject to the consent of the KFM Debtors, the KFM Assets, (ii) the Transactions, (iii) the Bidding Procedures, (iv) the Auction, and (v) the Sale Hearing. Accordingly, all parties that received notice as described in paragraphs F and G also received notice of, among other things, the potential sale of KFM Assets and the AMH Bidding Procedures that applied to the sale of such KFM Assets, the Auction, the Sale Hearing, and all deadlines related thereto.

H.    **KFM Bidding Procedures.** The KFM Bidding Procedures are fair, reasonable and appropriate and represent the best method for maximizing the value of the KFM Debtors' estates. Except to the extent modified by this Order and set forth in the KFM Bidding Procedures, the KFM Bidding Procedures are substantially similar to the AMH Bidding Procedures.

I.    **Prepetition Notice.** The Prepetition Notice, attached hereto as **Exhibit 2**, was posted on the website maintained by the KFM Debtors' claims and noticing agent, Prime Clerk LLC, on December 31, 2019 and served on all potential parties in interest immediately thereafter,

including: (i) the Office of the U.S. Trustee; (ii) counsel to the Administrative Agent[5]; ((iii) all counterparties to Applicable Contracts; (iv) all entities known or reasonably believed to have asserted any claims, encumbrances, and liabilities, or other interest in the Assets; (v) all affected federal, state, and local regulatory and taxing authorities; (vi) all parties known by the KFM Debtors to have expressed an interest in a transaction with respect to the KFM Assets during the past six (6) months; (vii) all of the KFM Debtors' known creditors, including their contract counterparties; (viii) the Internal Revenue Service; (ix) the United States Attorney's Office for the Southern District of Texas; and (x) all parties entitled to notice pursuant to Local Rule 9013-1(d) (collectively, the "**Sale Notice Parties**").  The KFM Debtors also published a summary version of the Prepetition Notice in the *Houston Chronicle* and the *Wall Street Journal* on January 4, 2020. Such notice was appropriate and sufficient under the circumstances of these chapter 11 cases and was reasonably calculated to provide all interested parties with timely and proper notice of (i) execution of the KFM Stalking Horse PSA, (ii) the Sale Transaction, including the proposed sale, subject to entry of a Sale Order, of the KFM Assets free and clear of all claims, Encumbrances or Liabilities other than the Assumed Obligations and Permitted Encumbrances, (iii) the deadlines and procedures governing objections to the proposed Sale Transaction (including the Assumption and Assignment Procedures, Assignment Objection Procedures, and Rights Objection Procedures), (iv) the KFM Bidding Procedures, and (v) the Auction and the Sale Hearing.  Such notice complied with the applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and no other or further notice is required.

---

[5] "**Administrative Agent**" means Wells Fargo Bank, N.A. in its capacity as administrative agent for itself and for and on behalf of the other lenders (the "**Prepetition Lenders**") from time to time party to that certain *Amended and Restated Credit Agreement*, dated as of May 30, 2018, between Debtor Kingfisher Midstream, LLC and the secured parties thereto, as amended from time to time.

J.    **KFM Stalking Horse PSA.** The KFM Stalking Horse PSA constitutes a Qualified Bid in accordance with the KFM Bidding Procedures and the Stalking Horse Bidder is eligible to participate in the Auction. The KFM Stalking Horse PSA represents the highest or otherwise best offer the KFM Debtors received prior to the Bid Deadline for the sale of the KFM Assets. Approval of the Stalking Horse Bidder as a "stalking horse" bidder and the KFM Stalking Horse PSA as a "stalking horse" sale agreement is in the best interests of the KFM Debtors and the KFM Debtors' estates and creditors and reflects a sound exercise of the KFM Debtors' business judgment. The KFM Stalking Horse PSA provides the KFM Debtors with the opportunity to sell the KFM Assets to preserve and realize their going concern value. The KFM Stalking Horse PSA will enable the KFM Debtors to secure a fair baseline price for the KFM Assets at the Auction and, accordingly, will provide a clear benefit to the KFM Debtors' estates, their creditors, and all other parties in interest.

K.    **Notice of Assumption and Assignment Procedures, Assignment Objection Procedures, and the Rights Objection Procedures.** On or before January 1, 2020, the KFM Debtors served the Prepetition Notice on counterparties to 365 Contracts. Each of the 365 Contracts and the Cure Costs, if any, that the KFM Debtors believe are owed to the counterparty to each 365 Contract were listed on the 365 Schedule attached to the Prepetition Notice as **Exhibit 4**. If no Cure Cost was listed on the 365 Schedule for a particular 365 Contract, the KFM Debtors' asserted Cure Cost for such 365 Contract shall be deemed to be $0. The Prepetition Notice contained (i) the 365 Schedule, (ii) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of 365 Contracts and rights thereunder, (iii) Cure Costs, if any, and (iv) the procedures for objecting thereto. The KFM Debtors shall also file the 365 Schedule on the Court's docket within two (2) business days following the KFM

Petition Date.  The Prepetition Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the 365 Contracts in connection with the sale of the KFM Assets, the proposed Cure Costs related thereto, the Assumption and Assignment Procedures, the Assignment Objection Procedures, and the Rights Objection Procedures, and no other or further notice is required.

L.      **Supplemental Notice.**  The Supplemental Notice, substantially in the form attached hereto as **Exhibit 3**, which the KFM Debtors shall serve on the Sale Notice Parties within one (1) business day of the date of entry of this Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of entry of this Order and the terms hereof, including the KFM Bidding Procedures, and no other or further notice is required.

M.      **Post-Auction Notice.**  The Post-Auction Notice, substantially in the form attached hereto as **Exhibit 4**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bid(s) and Backup Bids(s), and no other or further notice is required.

N.      **Just Cause for Relief.**  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the KFM Debtors and their respective estates, creditors, and all other parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**A.      Process Timeline**

1.      The KFM Debtors are authorized to take any and all actions necessary or appropriate to implement the KFM Bidding Procedures in accordance with the following timeline; *provided, however*, that, subject to paragraph 4 of this Order, the KFM Debtors may (i) extend or

modify any of the following dates by filing a notice of such extension or modification with this Court or (ii) seek a further order of the Court extending or modifying such dates:

| Date | Event |
|---|---|
| January 8, 2020 at 5:00 p.m. (Prevailing Central Time) | Bid Deadline (for all parties other than the Administrative Agent) |
| Prior to Commencement of the Auction | Bid Deadline (for the Administrative Agent) (unless bids at the Auction are for less than the value of the KFM Stalking Horse Bid (defined below), in which case the Administrative Agent may submit a credit bid at such time) |
| January 15, 2020 at 9:00 a.m. (Prevailing Central Time) | Auction |
| January 17, 2020 at 12:00 p.m. (Prevailing Central Time) | Sale Objection Deadline |
| January 20, 2020 at 2:00 p.m. (Prevailing Central Time) | Sale Objection Deadline for the Administrative Agent |
| 2 hours prior to the commencement of the Sale Hearing | Deadline for objections based on (1) the manner in which the Auction was conducted, (2) the identity of the Successful Bidder or Backup Bidder, or (3) the ability of the Successful Bidder or Backup Bidder to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder or Backup Bidder (unless such counterparty receives less than seven (7) days' notice prior to the Sale Hearing, as set forth below). |
| January 21, 2020 at 2:00 p.m. (Prevailing Central Time) | Sale Hearing |

2.     To the extent applicable, any and all actions previously taken by the KFM Debtors to implement the above timeline and the timeline set forth in the AMH Bidding Procedures Order are ratified.

3.     The failure by any party to timely file an objection in accordance with this Order shall forever bar such party from asserting any objection to, as applicable, the Motion, entry of the KFM Stalking Horse PSA or Sale Order, and/or consummation of the Sale Transaction, including the assumption and assignment of contracts and leases to the Successful Bidder and shall be deemed to constitute any such party's consent to entry into, and consummation of, the applicable Sale Transaction(s) and all other transactions related thereto.

4.     The KFM Debtors reserve the right, and are authorized, after consultation with the Administrative Agent, to modify the above timeline and the Bidding Procedures in accordance with the KFM Bidding Procedures; *provided, however*, that no such modifications shall be made without an Order of this Court to the extent that such modifications adversely affect the interests of any parties in interest.

**B.     KFM Bidding Procedures**

5.     Except to the extent modified by the KFM Bidding Procedures or this Order, the application of the AMH Bidding Procedures Order and AMH Bidding Procedures attached thereto to the KFM Assets by the KFM Debtors, including all rights, privileges, and benefits of a Seller or Qualified Bidder (as each is defined therein) provided therein, is hereby ratified and approved. Any and all actions taken the by KFM Debtors pursuant to or in furtherance of such AMH Bidding Procedures are hereby ratified and approved.

6.     The KFM Bidding Procedures attached as **__Exhibit 1__** hereto are incorporated by reference as though fully set forth herein and approved in their entirety.  The KFM Debtors, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), are authorized to take any and all actions necessary or appropriate to implement the KFM Bidding Procedures in accordance therewith.  The failure to specifically include or reference a particular

provision of the KFM Bidding Procedures in this Order shall not diminish or impair the effectiveness of any such provision.

7.      Subject to the KFM Bidding Procedures and this Order, the KFM Debtors shall have the right as they may reasonably determine, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), to be in the best interests of their estates to carry out the KFM Bidding Procedures, including, without limitation, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which bid is a Successful Bid and Backup Bid, each as it relates to the Auction; (iv) reject any Bid or Credit Bid that is (a) inadequate or insufficient and not in conformity with the requirements of the KFM Bidding Procedures or the requirements of the Bankruptcy Code, or (b) contrary to the best interests of the applicable KFM Debtors and their estates; (v) adjourn or cancel the Auction and/or the Sale Hearing as provided in the KFM Bidding Procedures; and (vi) modify the KFM Bidding Procedures consistent with their fiduciary duties and the Bankruptcy Code; in each case, solely to the extent consistent with the terms of the KFM Stalking Horse PSA, the KFM Bidding Procedures, and this Order.

8.      The KFM Debtors, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), are authorized to conduct the Auction in accordance with the KFM Bidding Procedures and this Order.

**C.      Credit Bidding**

9.      All provisions of the KFM Bidding Procedures regarding the Administrative Agent's Credit Bid Right, including, without limitation, the section titled "Credit Bidding" are incorporated herein by reference and approved in their entirety.

10.      If the Administrative Agent submits an Initial Credit Bid, all consultation rights set forth herein with respect to the KFM Bidding Procedures, including, but not limited to, the

determination of what constitutes a Qualified Bid, the Starting Bid, the Successful Bid, and the Backup Bid shall be deemed terminated, as shall all rights to receive Bid information not made available to other Qualified Bidders.

**D.     Entry into KFM Stalking Horse PSA**

11.     The KFM Debtors' entry into the KFM Stalking Horse PSA is ratified and approved and the KFM Debtors are authorized to perform all obligations under the KFM Stalking Horse PSA.  Notwithstanding anything to the contrary in the KFM Stalking Horse PSA, the KFM Debtors shall not be required to pay the Break-Up Fee and Expense Reimbursement (as defined in the KFM Stalking Horse PSA).

**E.     Notice Procedures**

12.     The form of, and manner of service and publication of, the Prepetition Notice are ratified and approved.

13.     Within one (1) business day after the entry of this Order, the KFM Debtors shall serve the Supplemental Notice, by overnight mail, postage prepaid, or, for those parties who have consented to receive notice by the ECF system, by ECF upon the Sale Notice Parties; *provided, however*, that to the extent email addresses are available for any of the Sale Notice Parties, such parties may be served by email.

14.     Service of (i) the AMH Bidding Procedures Order and notices related thereto as described in paragraphs F and G, (ii) the Prepetition Notice as described in paragraph I and (iii) the Supplemental Notice as described in paragraph N shall be deemed good and sufficient notice of the Sale Transaction with respect to known interested parties.  Publication of the Prepetition Notice as described in paragraph I shall be deemed good and sufficient notice of the Sale Transaction with respect to all unknown parties.

15.     The form of Post-Auction Notice is approved.  Within two (2) days after the conclusion of the Auction, the KFM Debtors shall file the Post-Auction Notice identifying any Successful Bidder(s) and Backup Bidder(s) on this Court's docket and, to the extent that any (i) non-Debtor party to an executory contract, unexpired lease, or any other Applicable Contract (as defined in the KFM Stalking Horse PSA) that is available to be assumed and assigned to the Successful Bidder(s) or (ii) any other party in interest has not filed a notice of appearance on the docket in these chapter 11 cases, serve the Post-Auction Notice on such parties by email, overnight mail, or facsimile.

**F.     Assumption and Assignment Procedures**

16.     The Assumption and Assignment Procedures, as detailed in the Motion and incorporated herein by reference as if fully set forth in this Order, are ratified and approved.

17.     Service of the Prepetition Notice as set forth herein shall be deemed good and sufficient notice of, among other things, the proposed assumption and assignment of the 365 Contracts, the applicable Cure Costs related thereto, and the procedures for objecting thereto, and no other or further notice is necessary.

18.     Any Contract Objection other than an Adequate Assurance Objection must (i) state in writing, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any, (ii) include appropriate documentation in support thereof, and (iii) be filed with the Clerk of Court and served on the following parties so as to be actually received no later than the Sale Objection Deadline: (i) Kingfisher, 15021 Katy Freeway, 4th Floor, Houston, Texas 77094, Attn: Kim  Warnica, Esq.; (ii) counsel to Kingfisher, Weil Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Ray C. Schrock, P.C., Kelly DiBlasi, Esq., Rodney L. Moore, Esq., and Lauren Tauro, Esq.; (iii) counsel to the Administrative Agent under

the KFM Debtors' Credit Agreement, Vinson & Elkins, LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201, Attn: Michael E. Bielby, Jr., Esq. and William L. Wallander; (iv) counsel to the Stalking Horse Bidder, Kirkland & Ellis, LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Gregory F. Pesce, Esq., and (v) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Stephen Statham, Esq. and Hector Duran, Esq. (collectively, the "**Objection Notice Parties**").

19.     Any time prior to the closing of the Sale Transaction, the KFM Debtors, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), are authorized, but not directed, to (i) supplement the list of 365 Contracts on the 365 Schedule or any future notice with previously omitted 365 Contracts, (ii) remove a 365 Contract from the 365 Schedule or any future notice, or (iii) modify the previously stated Cure Cost associated with any 365 Contract.

20.     In the event that the KFM Debtors supplement the 365 Schedule or modify the previously stated Cure Cost for a particular 365 Contract, the KFM Debtors shall promptly serve a revised notice on each counterparty affected.  Such counterparties shall file any Contract Objections with respect to the revised notice not later than seven (7) days after the date of filing and service of the revised notice.

21.     Any objections to the ability of the Stalking Horse Bidder or the Successful Bidder to provide adequate assurance of future performance must be filed with this Court no later than two (2) hours prior to the commencement of the Sale Hearing; *provided*, that if a counterparty did not receive the Prepetition Notice containing the 365 Schedule, or any supplemental notice with respect thereto at least seven (7) days prior to the Sale Hearing, such counterparty's deadline to

file an Adequate Assurance Objection shall be 5:00 p.m. (Prevailing Central Time) on the date that is seven (7) days after the date of receiving such notice.

22. At the Sale Hearing, the KFM Debtors will seek Court approval of the assumption and assignment to the Successful Bidder(s) of only those 365 Contracts that have been selected by such Successful Bidder(s) to be assumed and assigned (together with all other Available Contracts to be assigned to the Successful Bidder pursuant to the definitive agreement such Successful Bidder, the "**Assigned Contracts**"). The inclusion of a 365 Contract on the 365 Schedule will not (i) obligate the KFM Debtors to assume any 365 Contract listed thereon nor the Successful Bidder(s) to take assignment of such 365 Contract or (ii) constitute any admission or agreement of the KFM Debtors that such 365 Contract is an executory contract. The KFM Debtors and their estates reserve any and all rights with respect to any 365 Contracts that are not ultimately designated as Assigned Contracts.

23. If a counterparty to a 365 Contract does not timely file and serve a Contract Objection that is consistent with the requirements set forth above by the Sale Objection Deadline (with respect to all objections other than Adequate Assurance Objections) or the Adequate Assurance Objection Deadline (with respect to Adequate Assurance Objections only), (i) such counterparty will be deemed to have consented to the assumption and assignment of such 365 Contract to a Successful Bidder, notwithstanding any anti-alienation provision or other restriction on assumption or assignment in such 365 Contract, and will be forever barred from asserting any objection with regard to such assumption and assignment and/or Cure Costs set forth on the 365 Schedule, (ii) any and all defaults under such 365 Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the Cure Cost set forth in the 365 Schedule for such 365

Contract, and (iii) the Cure Cost set forth in the 365 Schedule for such 365 Contract shall be controlling, notwithstanding anything to the contrary in such 365 Contract, or any other related document, and such counterparty shall be deemed to have consented to the Cure Cost and shall be forever barred from asserting any other claims related to such 365 Contract against the KFM Debtors and their estates or the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order.

24.     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing including any dispute with respect to the Cure Cost (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by this Court; *provided, however*, that if the Contract Objection relates solely to a Cure Dispute, the 365 Contract may be assumed by the KFM Debtors and assigned to the Successful Bidder at the closing of the Sale Transaction, if the cure amount the counterparty asserts is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the counterparty) is deposited in a segregated account by the KFM Debtors pending this Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

**G.     Procedures for Asserting Assignment Objections and Rights Objections**

25.     The procedures for asserting Assignment Objections and Rights Objections, as detailed in the Motion and incorporated herein by reference as if fully set forth in this Order, are ratified and approved.

26.     **Assignment Objections**: If any party objects to the assignment to the Successful Bidder of any Applicable Contracts that are not 365 Contracts or other Assets constituting real property interests, including Purchased Rights of Way, free and clear of all claims, Encumbrances

or Liabilities other than the Assumed Obligations and Permitted Encumbrances, then such party must file with the Clerk of the Court and serve on the Objection Notice Parties, so as to be received no later than the Sale Objection Deadline, an objection that (i) states, in writing, with specificity, the basis for objecting to the assignment of such Applicable Contract(s) or other Assets, (ii) identify the Applicable Contract(s), and (iii) includes all supporting documentation.

27.     **Rights Objections**: If any purported holder of a Preferential Purchase Right objects to the transfer of the KFM Assets to the Buyer free and clear of any such Preferential Purchase Rights, then such holder must file with this Court and serve such objection on the Objection Notice Parties so as to be received no later than the Sale Objection Deadline, an objection that (i) states, in writing (i) the assets subject to such Preferential Purchase Right(s), (ii) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (iii) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and including all supporting documentation (a "**Rights Objection**").

28.     If a party files an Assignment Objection or Rights Objection in a manner that is consistent with the requirements set forth herein and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, such objection will be heard by this Court at the Sale Hearing or such other date and time as may be fixed by this Court.

29.     Any person failing to timely file and serve an Assignment Objection or Rights Objection, as applicable, will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the KFM Debtors' right, title, and interest in, to, and under the KFM Assets to be sold, assumed, and/or assigned in connection with the Sale Transaction, free and clear of all claims, Encumbrances or Liabilities other than the Assumed Obligations and Permitted Encumbrances, and from asserting any alleged Preferential Purchase Rights with respect to the

Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, assumption, and/or assignment of such right, title, and interest in, to, and under such KFM Assets, free and clear of all claims, Encumbrances or Liabilities other than the Assumed Obligations and Permitted Encumbrances, regardless of whether such consent must be in writing.

30.     If any person files and serves an Assignment Objection or Rights Objection in accordance herewith, the KFM Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Assignment Objection or Rights Objection, as applicable (and serving such response on the objecting party) at any time prior to the Sale Hearing.  Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the KFM Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing in this Order or the Motion shall be deemed a waiver of any rights of the KFM Debtors or any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of the KFM Debtors are expressly preserved.

**H.     Auction, Sale Hearing, and Sale Objection Deadline**

31.     The KFM Debtors, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), are authorized to conduct the Auction in accordance with the KFM Bidding Procedures.  The KFM Debtors may, at their election, conduct a joint auction with the AMH Debtors.

32.     Unless cancelled or adjourned by the KFM Debtors, in consultation with the Administrative Agent, a Sale Hearing to consider, among other things, (i) approval of a sale of a portion or substantially all of the KFM Assets to the Successful Bidder(s), (ii) approval of designation of a Backup Bid and Backup Bidder in accordance with the KFM Bidding Procedures,

and (iii) authorization for the KFM Debtors to assume and assign the Assigned Contracts, including the 365 Contracts designated therein pursuant to the Successful Bid shall be held on **January 21, 2020 at 2:00 p.m. (Prevailing Central Time)**, and may be adjourned or rescheduled by the KFM Debtors, in consultation with the Administrative Agent, from time to time (in accordance with the KFM Bidding Procedures) without further notice. Unless this Court orders otherwise, any Sale Hearing shall be an evidentiary hearing on matters relating to the Sale Transaction(s) and there will be no further bidding at such hearing. In the event that the Successful Bidder(s) cannot or refuses to consummate the Sale Transaction(s) because of a breach or failure on the part of such Successful Bidder, the KFM Debtors may, in accordance with the KFM Bidding Procedures and in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the KFM Debtors, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), shall be authorized, but not required, to consummate the applicable Sale Transaction with the Backup Bidder without further order of this Court.

33. Except to the extent provided otherwise herein, any objections to the Sale Transaction (each a "**Sale Objection**") must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and Local Rules, (iii) state with particularity the legal and factual bases for the objection and the specific grounds therefor, and (iv) be filed with the Clerk of the Court and served so as to be actually received by the Objection Notice Parties and counsel to any Successful Bidder(s) (if known) no later than **January 17, 2020 at 12:00 p.m. (Prevailing Central Time)** (the "**Sale Objection Deadline**").

34.     Any party or entity who fails to timely file and serve a Sale Objection on or before the Sale Objection Deadline in accordance with this Order shall be forever barred from asserting any Sale Objection to the Sale Transaction, including with respect to the transfer of the KFM Assets free and clear of all claims, Encumbrances or Liabilities other than the Assumed Obligations and Permitted Encumbrances.

35.     Any objections based on (i) the manner in which the Auction was conducted, (ii) the identity of the Successful Bidder or Backup Bidder, or (iii) the ability of the Successful Bidder or Backup Bidder to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder or Backup Bidder (unless such counterparty receives less than seven (7) days' notice prior to the Sale Hearing, as set forth below) must be filed with the Clerk of the Court no later than two (2) hours prior to the commencement of the Sale Hearing.

**I.      Additional Provisions**

36.     Except as otherwise provided herein, any objection provided hereunder must be (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and Local Rules, (iii) state with particularity the legal and factual bases for the objection and the specific grounds therefor, and (iv) be filed with the Clerk of the Court and served so as to be actually received no later than the applicable objection deadline by Objection Notice Parties.

37.     The KFM Debtors are authorized and empowered to take such action as may be necessary to implement and effect the terms and requirements established under this Order.

38.     This Order shall be binding on and inure to the benefit of the KFM Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the KFM Debtors.

39.     This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

40.     Notwithstanding the joint administration of the KFM Debtors' chapter 11 cases with those of the AMH Debtors, this Order, and not the AMH Bidding Procedures Order, shall govern the KFM Debtors and the sale of the KFM Assets.

41.     To the extent the deadlines set forth in this Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Order shall govern.

42.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

43.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and Local Rules are satisfied by such notice.

44.     Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Order shall be immediately effective and enforceable upon its entry.

45.     The KFM Debtors and the KFM Stalking Horse Bidder are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order in accordance with the Motion.

46.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order including, but not limited to, any matter, claim, or dispute arising from or relating to the KFM Bidding Procedures, the KFM Stalking Horse PSA, or enforcement of this Order.

 Signed: January 14, 2020

                                                    Marvin Isgur
                                     United States Bankruptcy Judge

## **Exhibit 1**

### **KFM Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **ALTA MESA RESOURCES, INC.,** *et al.*, | § | **Case No. 19-35133 (MI)** |
| | § | |
| Debtors.[1] | § | **(Joint Administration Requested)** |
| | § | |

## KFM BIDDING PROCEDURES

These bidding procedures (the "**KFM Bidding Procedures**") have been approved by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") in connection with the chapter 11 cases for Kingfisher Midstream, LLC, Kingfisher STACK Oil Pipeline, LLC, Oklahoma Produced Water Solutions, LLC, and Cimarron Express Pipeline, LLC, as debtors and debtors in possession (collectively, the "**KFM Debtors**") pursuant to an order dated as of January [_], 2020 (as amended from time to time, the "**KFM Bidding Procedures Order**").[2]

On October 11, 2019, the Court entered an order [Docket No. 317] (as amended, the "**AMH Bidding Procedures Order**") in the chapter 11 cases commenced by Alta Mesa Resources Inc. and certain of its affiliates styled as *In re Alta Mesa Resources, Inc., et al.*, jointly administered under Case Number 19-35133 (MI) (collectively, the "**AMH Debtors**")[3] approving, among other things, the auction and bidding procedures (the "**AMH Bidding Procedures**"). The AMH Bidding Procedures Order authorized the AMH Debtors to solicit and select the highest or otherwise best offer for the sale of substantially all or any portion of the AMH Assets and the KFM Assets. Amended versions of the AMH Bidding Procedures Order were entered on December 10, 2019 and December 19, 2019 [Docket Nos. 636 and 666]. Until entry of the KFM Bidding Procedures

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); Oklahoma Energy Acquisitions, LP (3762); SRII Opco GP, LLC (3729); SRII Opco, LP (5874); Kingfisher Midstream, LLC (1357); Kingfisher STACK Oil Pipeline, LLC (8858); Oklahoma Produced Water Solutions, LLC (0256); and Cimarron Express Pipeline, LLC (1545). The Debtors' mailing address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *[Emergency Motion of KFM Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365, 503, and 507 and Fed. R. Bankr. P. 2002, 6004, 6006, 9006, 9007, 9008, 9014, and 9019 for Orders (I) (A) Ratifying and Approving Bidding Procedures, (B) Ratifying and Approving Stalking Horse Purchase Agreement, (C) Approving Bid Protections, (D) Ratifying and Approving Assumption and Assignment Procedures, (E) Ratifying and Approving Assignment Objection Procedures and Rights Objections Procedures, (F) Scheduling Auction and Sale Hearing, (G) Ratifying and Approving Form and Manner of Notice Thereof; (II) Authorizing (A) Sale of Substantially All of Debtors' Assets Free and Clear of All Claims, Encumbrances, and Liabilities, (B) Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Assignment of Other Contracts; and (III) Granting Related Relief* (the "**Motion**").

[3] The AMH Debtors consist of Alta Mesa Resources, Inc., Alta Mesa Holdings, LP, Alta Mesa Holdings GP, LLC, OEM GP, LLC, Alta Mesa Finance Services Corp., Alta Mesa Services, LP, and Oklahoma Energy Acquisitions, LP.

Order, the AMH Bidding Procedures applied to the sale of substantially all of or any portion of the KFM Assets.

Subsequently, on December 31, 2019, the KFM Debtors entered into that certain Purchase and Sale Agreement (the "**KFM Stalking Horse PSA**"), a copy of which is attached as **Exhibit A** to the Motion, to sell substantially all of the KFM Assets to BCE-Mach III LLC (the "**Stalking Horse Bidder**"), and the AMH Debtors entered into a separate Purchase and Sale Agreement (the "**AMH Stalking Horse PSA**" and, together with the KFM Stalking Horse PSA, the "**Stalking Horse PSAs**") to sell substantially all of the AMH Assets to the Stalking Horse Bidder. Under the Stalking Horse PSAs, each closing is conditioned on the contemporaneous closing of the other Stalking Horse PSA.

On January 12, 2020, the KFM Debtors commenced chapter 11 cases. In accordance with the KFM Stalking Horse PSA, the KFM Debtors sought entry of, and the Court entered, the KFM Bidding Procedures Order, which, among other things, (i) orders that the sale of the KFM Assets is subject to the AMH Bidding Procedures (as amended and supplemented through to the date of such order), (ii) provides the KFM Debtors with all rights, privileges and benefits under the AMH Bidding Procedures Order, (iii) establishes BCE-Mach III LLC as the "Stalking Horse Bidder" (as defined in the AMH Bidding Procedures Order) for the KFM Assets and (iv) supplements and amends the AMH Bidding Procedures in accordance with the KFM Stalking Horse PSA pursuant to these KFM Bidding Procedures.

Accordingly, the sale of substantially all or a portion of the KFM Assets (the "**Sale Transaction**") is governed by the KFM Bidding Procedures Order and these KFM Bidding Procedures on a go-forward basis. To the extent applicable, these KFM Bidding Procedures incorporate by reference the following sections of the AMH Bidding Procedures: (i) each of the key dates that have expired in the "Key Dates" section (pages 1-2), except to the extent modified herein, (ii) the "Access to Debtors' Diligence Materials" section (pages 3-4), and (iii) the Indications of Interest" section (page 4); *provided, however*, that all references to "Consultation Parties" in such sections shall be deemed to include the Administrative Agent,[4] all references to "Bid Consultation Parties" in such sections shall be deemed to include the Administrative Agent (unless the Administrative Agent submits a credit bid), and the KFM Debtors shall grant the Administrative Agent and its counsel and financial advisor access to their confidential data room.

## KEY DATES

These KFM Bidding Procedures provide interested parties the opportunity to submit competing bids for all or any portion or combination of the AMH Assets and the KFM Assets and to participate in an auction to be jointly conducted by the KFM Debtors in consultation with the

---

[4] "**Administrative Agent**" means Wells Fargo Bank, N.A. in its capacity as administrative agent for itself and for and on behalf of the other lenders (the "**Prepetition Lenders**") from time to time party to that certain Amended and Restated Credit Agreement, dated as of May 30, 2018, among Debtor Kingfisher Midstream, LLC, the Administrative Agent, and the Prepetition Secured Lenders, as amended from time to time.

Administrative Agent (unless the Administrative Agent submits a credit bid) and the AMH Debtors (the "**Auction**").

The key dates for the sale process are as follows. Such dates may be extended or otherwise modified by (a) the KFM Debtors, after consultation with the Administrative Agent, by filing a notice of such extension or modification on the Court's docket, or (b) an order of the Court:

| Date | Event |
|------|-------|
| January 8, 2020 at 5:00 p.m. (Prevailing Central Time) | Bid Deadline (for all parties other than the Administrative Agent) |
| Prior to Commencement of the Auction | Bid Deadline (for the Administrative Agent) (unless bids at the Auction are for less than the value of the KFM Stalking Horse Bid (defined below), in which case the Administrative Agent may submit a credit bid at such time) |
| January 15, 2020 at 9:00 a.m. (Prevailing Central Time) | Auction |
| January 17, 2020 at 12:00 p.m. (Prevailing Central Time) | Sale Objection Deadline |
| January 20, 2020 at 2:00 p.m. (Prevailing Central Time) | Sale Objection Deadline for the Administrative Agent |
| 2 hours prior to the commencement of the Sale Hearing | Deadline for objections based on (1) the manner in which the Auction was conducted, (2) the identity of the Successful Bidder or Backup Bidder, or (3) the ability of the Successful Bidder or Backup Bidder to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder or Backup Bidder (unless such counterparty receives less than seven (7) days' notice prior to the Sale Hearing, as set forth below). |
| January 21, 2020 at 2:00 p.m. (Prevailing Central Time) | Sale Hearing |

## KFM STALKING HORSE BIDS

The Stalking Horse PSAs provide for a total purchase price of $310 million (the "**Purchase Price**"), of which $85,250,000 is payable to the KFM Debtors pursuant to the KFM Stalking Horse PSA (the "**KFM Stalking Horse Bid**") and $224,750,000 is payable to the AMH Debtors pursuant to the AMH Stalking Horse PSA, subject to certain adjustments set forth in the applicable Stalking Horse PSA (collectively, the "**Stalking Horse Bids**").

To the extent necessary, the KFM Debtors' right to seek the Court's approval of one or more additional stalking horse bidders, with notice and hearing, is hereby preserved.

Beginning on January 3, 2020, the KFM Debtors made a copy of the KFM Stalking Horse PSA available in the electronic dataroom established by the AMH Debtors in connection with their sale process.

## BIDS INCLUDING SALE OF ALL OR A PORTION OF AMH ASSETS

To the extent any Bid (as defined below) for the KFM Assets includes the sale of all or a portion of the AMH Assets, such Bid must also comply with the AMH Bidding Procedures Order and AMH Bidding Procedures with respect to such AMH Assets.

## QUALIFICATION PROCESS

To be eligible to participate in the Auction, on or before January 8, 2020 at 5:00 p.m. (Prevailing Central Time) a party must have submitted an offer, solicitation, or proposal (each, a "**Bid**" and each party submitting such a Bid, a "**Bidder**") that satisfies each of the conditions set forth below, as determined by the KFM Debtors, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid). A Bid will not be considered a Qualified Bid (as defined below) for the Auction if such Bid does not satisfy each of the following conditions:

(a)  Good Faith Deposit.  Each Bid for all or a portion of the KFM Assets must be accompanied by a deposit (a "**Good Faith Deposit**") submitted by wire transfer of immediately available funds to a segregated account identified by the KFM Debtors.  Each Good Faith Deposit must equal in the case of a Bid for all or a portion of the KFM Assets, the amount of ten percent (10%) of the purchase price contained in the Modified PSA (defined below), or such other amount as the KFM Debtors determine, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid).

(b)  Bids for Portions of the KFM Assets.  Each Bid must state whether the Bidder is offering to purchase all or substantially all of the KFM Assets, any portion of the KFM Assets, or any combination of KFM Assets and AMH Assets. The KFM Debtors, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), may waive or modify the application of the Qualified Bid conditions in respect of Bids for a portion of the KFM Assets.

(c)     Higher or Better Terms.  Each Bid for any KFM Assets subject to the KFM Stalking Horse PSA (alone or combined with Bids for other AMH Assets subject to the AMH Stalking Horse PSA) must be on terms that, in the KFM Debtors' reasonable business judgment after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid) are higher or better than the terms of the KFM Stalking Horse PSA and the aggregate value of such subsequent Bid, as determined by the KFM Debtors, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), must exceed the KFM Stalking Horse Bid by the Joint Sale Minimum Overbid Increment or the KFM Minimum Overbid Increment (each as defined below), as applicable.

(d)     Executed Agreement.  Each Bid contemplating a Sale Transaction must be based on the KFM Stalking Horse PSA and, if the Bid includes the AMH Assets, the AMH Stalking Horse PSA, and must include duly authorized and executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (each, a "**Modified PSA**").  Each such Bid shall also include a copy of the applicable Modified PSA and each of the exhibits and scheduled contemplated thereby, along with a redline of such Modified PSA(s) marked against the KFM Stalking Horse PSA (including all of the exhibits and scheduled attached thereto) and, if the Bid includes the AMH Assets, the AMH Stalking Horse PSA to show all changes requested by the Bidder (including those related to purchase price).  If a party provided a Modified PSA (including all exhibits and scheduled attached thereto) and redline against the KFM Stalking Horse PSA, then such party shall be deemed to have satisfied the conditions set forth in this paragraph (d).  The KFM Debtors reserve the right, in their discretion, to determine that the inclusion of a redline of the Modified PSA(s) marked against the form of PSA (as defined in the AMH Bidding Procedures), instead of the KFM Stalking Horse PSA, satisfies the applicable portion of the conditions set forth in this paragraph.

(e)     Designation of Contracts and Leases.  A Bid must (i) identify with particularity any and all executory contracts and unexpired leases of the KFM Debtors for which assumption and assignment or rejection is required and (ii) provide for the payment of all cure amounts (the "**Cure Amounts**") payable with respect to such assumed or assigned contracts and leases under the Bankruptcy Code.

(f)     Assumed Obligations.  A Bid must identify the obligations of the KFM Debtors and/or AMH Debtors, as applicable, to be assumed by such Bidder ("**Assumed Obligations**"), as well as the KFM Assets covered by the Bid.

(g)     Corporate Authority.  A Bid must include written evidence reasonably acceptable to the KFM Debtors demonstrating appropriate corporate authorization to submit the Bid and consummate the proposed Transaction; *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the KFM Debtors of the approval of the submission of the Bid and consummation of the Sale

5

Transaction by equity holder(s) of such Bidder, in each case, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid).

(h)    <u>Disclosure of Identity of Bidder</u>.  A Bid must fully disclose the identity of each entity and its affiliates that will be bidding for or purchasing the KFM Assets (including AMH Assets, if applicable) or otherwise participating in connection with such Bid (including any equity holder or other financial backer if the Bidder is an entity specifically formed for the purpose of effectuating the Transaction), and the complete terms of any such participation, including any binding agreements, arrangements, or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

(i)    <u>Proof of Financial Ability to Perform</u>.  A Bid must include written evidence that the KFM Debtors reasonably conclude, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), demonstrates that the Bidder has the necessary financial ability to (i) close the Sale Transaction and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Sale Transaction.  Such information must include, *inter alia*, the following:

1.    contact names and telephone numbers for verification of financing sources;

2.    evidence of the Bidder's internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid (including, if applicable, the Bidder's payment of Cure Amounts) or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the KFM Debtors in such amount, in each case, as are needed to close the Sale Transaction;

3.    the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the KFM Debtors;

4.    a description of the Bidder's pro forma capital structure; and

5.    any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the KFM Debtors demonstrating that such Bidder has the ability to close the Sale Transaction.

(j)    <u>Regulatory and Third-Party Approvals</u>.  A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale Transaction, if any, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Modified PSA(s), those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible).

(k)     <u>Conditions to Closing</u>.  Each Bid must identify with particularity each condition to closing.

(l)     <u>Contingencies</u>.  Each Bid may not be conditioned on (i) obtaining financing, (ii) any internal approval, (iii) the outcome or review of unperformed due diligence (unless otherwise agreed upon by the KFM Debtors, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), it being understood that Bids may be conditioned on the accuracy at closing of specified representations or warranties (as provided in the KFM Stalking Horse PSA), or (iv) regulatory contingences, except as provided under "Regulatory and Third-Party Approvals."

(m)     <u>Irrevocable</u>.  Each Bid must expressly provide that (i) the Bidder is prepared to consummate the Sale Transaction set forth in the Modified PSA(s) promptly following Court approval of the proposed Sale Transaction and satisfaction of the closing conditions (if any) set forth in the Modified PSA(s), and (ii) the offer reflected in such Bid shall remain open and irrevocable until the conclusion of the Auction, *provided* that, except as provided in the KFM Stalking Horse PSA with respect to the KFM Stalking Horse Bid,  if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain open and irrevocable as provided under "Closing the Auction; Successful Bidder" and "Backup Bidder" below.

(n)     <u>Purchase Price</u>.  Each Bid (including either the Joint Sale Minimum Overbid Increment or the KFM Minimum Overbid Increment) must:  (i) clearly state which KFM Assets (and AMH Assets, if any) the Bidder is agreeing to purchase and which liabilities the Bidder is agreeing to assume; (ii) clearly set forth the purchase price to be paid, including and identifying separately any cash and non-cash components; and (iii) specify the portion of the aggregate purchase price thereunder that the Bidder allocates to the KFM Assets; *provided* that such allocation shall not be binding on the KFM Debtors, the AMH Debtors, the Court, or any third parties. Notwithstanding the foregoing, no Bid may be chosen as the Successful Bid or the Backup Bid for the purchase of KFM Assets unless there is a binding purchase price to be paid to the KFM Debtors.

(o)     <u>Jurisdiction</u>.  Each Bid must state that the Bidder consents to the jurisdiction of the Court.

(p)     <u>Independent Review</u>.   Each Bid shall include an acknowledgment and representation of the Bidder that it has had an opportunity to conduct any and all due diligence regarding the KFM Assets and AMH Assets (if applicable) prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the KFM Assets and AMH Assets (if applicable) in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the KFM Assets and, if applicable, the AMH Assets, the financial performance of the KFM Assets or the physical condition of

such KFM Assets and, if applicable, the AMH Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these KFM Bidding Procedures.

(q)     Bid Representatives.  Each Bid shall identify the representatives of the Bidder that are authorized to appear and act on behalf of the bidder in connection with the proposed Sale Transaction.

(r)     No Break-Up Fee.  Each Bid shall indicate that such Bidder will not seek any transaction break-up fee, expense reimbursement, or similar type of payment (other than the KFM Stalking Horse Bid).

(s)     Bid Deadline.  Each Bid must be received, in writing, on or before (i) January 8, 2020 (for all parties other than the Administrative Agent) or (ii) prior to the commencement of the Auction (for the Administrative Agent) (unless bids at the Auction are less than the value of the KFM Stalking Horse Bid, in which case the Administrative Agent may submit a credit bid at such time), or, in each case, such other date as may be established pursuant to these Bidding Procedures in accordance with the section titled "Key Dates" above (the "**Bid Deadline**") to: (i) Kingfisher Midstream, LLC, 15021 Katy Freeway, 4th Floor, Houston, Texas 77094, Attn: Kim Warnica, Esq.; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attention: Ray C. Schrock, P.C. (ray.schrock@weil.com), Kelly DiBlasi, Esq. (kelly.diblasi@weil.com), Lauren Tauro, Esq. (lauren.tauro@weil.com); and (iii) Evercore, 55 East 52nd Street, New York, NY 10055, Attn: Daniel Aronson.  The Debtors will provide to the Administrative Agent copies of Bids received for the KFM Assets promptly after the expiration of the Bid Deadline unless and until the Administrative Agent submits a credit bid.

A Bid received from a Bidder on or before the Bid Deadline (as defined in the AMH Bidding Procedures) that meets each of the requirements set forth above, as determined by the KFM Debtors, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), for the applicable KFM Assets shall constitute a "**Qualified Bid**" for such KFM Assets, and such Bidder shall constitute a "**Qualified Bidder**" for such Assets.  Any Bid that is not deemed a Qualified Bid shall not be considered by the KFM Debtors; provided, however, that if the KFM Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the KFM Debtors may, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), provide such Bidder the opportunity to remedy any deficiencies in such Bid prior to the Auction.  For the avoidance of doubt, the KFM Stalking Horse Bid constitutes a Qualified Bid and the Stalking Horse Bidder constitutes a Qualified Bidder.

Nothing herein shall preclude a Bidder from submitting a Bid in form of a Restructuring Transaction, it being understood that the KFM Debtors, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), reserve the right to modify these procedures, including, without limitation, Qualified Bid requirements, as necessary or appropriate to reflect the submission and the KFM Debtors' consideration of one or more Bids in the form of

a plan of reorganization (a "**Restructuring Transaction**"); *provided* that (i) in order for a Bid in the form of a Restructuring Transaction to constitute a Qualified Bid, the KFM Debtors must determine in good faith, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), that such Bid is capable of satisfying the requirements of section 1129 of the Bankruptcy Code and being consummated, and (ii) the failure of any such Bid to satisfy the requirements set forth above in subparagraphs (a) through (r) may be taken into account by the KFM Debtors and the Administrative Agent (unless the Administrative Agent submits a credit bid) in evaluating such Bid. Any Bid in the form of a plan of reorganization satisfying the requirements of this paragraph may be determined by the KFM Debtors and the Administrative Agent (unless the Administrative Agent submits a credit bid) to be a Qualified Bid, Stalking Horse Bid, Successful Bid, or Backup Bid (each as defined below).

## CREDIT BIDDING

Notwithstanding anything else contained in these KFM Bidding Procedures, provided that the Administrative Agent submits a credit bid (the "**Initial Credit Bid**") prior to the commencement of the Auction (unless bids at the Auction are less than the value of the KFM Stalking Horse Bid, in which case the Administrative Agent may submit a credit bid at such time) the Administrative Agent may credit bid any portion and up to the entire amount of the Prepetition Lenders' secured claim (the "**Prepetition Claim**") on any individual KFM Asset, portion of the KFM Assets, or all of the KFM Assets, in each case constituting the collateral (the "**Prepetition Collateral**") of the Administrative Agent and/or Prepetition Lenders (the "**Credit Bid Right**").

Provided that the Administrative Agent submits an Initial Credit Bid by the Administrative Agent Bid Deadline, the Administrative Agent shall be deemed to be a Qualified Bidder in all respects, the Credit Bid Right shall be deemed to be a Qualified Bid in all respects, and the Administrative Agent may credit bid at any time prior to the conclusion of the Auction regardless of whether the Administrative Agent participated in prior rounds at the Auction. If the Administrative Agent does not submit an Initial Credit Bid, then it shall not be a Qualified Bidder. The Initial Credit Bid need not exceed the Starting Bid to be deemed a Qualified Bid. If the Administrative Agent submits an Initial Credit Bid, all consent rights set forth herein with respect to determination of what constitutes a Qualified Bid, the Starting Bid, the Successful Bid, and the Backup Bid shall be deemed terminated, as shall all rights to receive Bid information not made available to other Qualified Bidders.

The Administrative Agent shall not be required to submit a Good Faith Deposit, a Modified PSA, or any other deliverable or documentation to the KFM Debtors or their representatives or agents. Upon exercise of the Credit Bid Right, the Administrative Agent shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual KFM Asset, portion of the KFM Assets, or all of the KFM Assets, and the Administrative Agent shall have the right to designate any person or entity that shall take title to the individual KFM Asset, portion of the KFM Assets, or all of the KFM Assets that are subject to the Credit Bid Right. No other person may credit bid on the Prepetition Collateral unless the entire amount of the Prepetition Claim will be paid in full in cash on the closing of the proposed transaction.

If through the exercise of the Credit Bid Right, the Administrative Agent becomes the Successful Bidder at the Auction, then the Sale Hearing shall, as applicable, be cancelled or adjourned for such period as the KFM Debtors and Administrative Agent determine, and the Administrative Agent will elect to implement the sale under section 363 of the Bankruptcy Code or an alternative transaction accomplished through a chapter 11 plan, including, without limitation, a plan in which the Prepetition Lenders receive or retain debt instruments and/or receive equity securities, in each case (a) acceptable to the Administrative Agent and if a plan, accepted as provided in section 1126 of the Bankruptcy Code, by each class in which the Prepetition Lenders' claims are classified for treatment (the "**Plan**"); and (b) conforms to the timeline contemplated by the milestones set forth in the then-applicable cash collateral order entered in the KFM Debtors' chapter 11 cases (the "**Plan Toggle Right**").

If the Administrative Agent submits an Initial Credit Bid, all consultation rights set forth herein with respect to the KFM Bidding Procedures, including, but not limited to, the determination of what constitutes a Qualified Bid, the Starting Bid, the Successful Bid, and the Backup Bid shall be deemed terminated only for so long as such credit bid remains open (and shall be reinstated upon the Administrative Agent's withdrawal of its credit bid), as shall all rights to receive Bid information not made available to other Qualified Bidders.

## HIGHEST OR OTHERWISE BEST BID

Whenever these KFM Bidding Procedures refer to the highest or otherwise best Qualified Bid, such determination shall take into account any factors the KFM Debtors (and, if AMH Assets are included in such Bid, the AMH Debtors) reasonably deem relevant to value of the Qualified Bid to the estates and may include, but are not limited to, the following: (i) the amount and nature of the consideration, including any Assumed Obligations; (ii) whether the Qualified Bidder proposes to acquire substantially all of the KFM Assets on a standalone basis or in combination with the AMH Assets; (iii) the executory contracts and unexpired leases of the KFM Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such Qualified Bid; (iv) the number, type and nature of any changes to the KFM Stalking Horse PSA requested by each Qualified Bidder; (v) the extent to which such modifications are likely to delay closing of the sale of the KFM Assets and, if applicable, the AMH Assets, and the cost to the KFM Debtors of such modifications or delay; (vi) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; and (vii) the net benefit to the KFM Debtors' estates (collectively, the "**Bid Assessment Criteria**"). Notwithstanding anything to the contrary herein, with respect to any Bid for any assets of the KFM Debtors, the Bid Assessment Criteria and any other consideration of such Bid shall be evaluated solely with respect to the value thereof, and the effect of such Bid on, the estates of the KFM Debtors.

## AUCTION

If two or more Qualified Bids for the same KFM Assets are received by the Bid Deadline (including the KFM Stalking Horse PSA), the KFM Debtors will conduct the Auction with respect to such KFM Assets to determine the highest or otherwise best Qualified Bid. Only Qualified Bidders may participate in the Auction.

## PROCEDURES FOR AUCTION

The Auction shall take place on **January 15, 2020 at 9:00 a.m. (Prevailing Central Time)** at the offices of counsel for the AMH Debtors, Latham & Watkins LLP, 811 Main Street, Suite 3700, Houston, TX 77002 or at such other place and time as the KFM Debtors, after consultation with the Administrative Agent, shall notify all Qualified Bidders and all other parties entitled to attend the Auction. The Auction shall be conducted according to the following procedures:

Only the KFM Debtors, the Consultation Parties (as defined in the AMH Bidding Procedures), the Stalking Horse Bidder, any other Qualified Bidders, the AMH Debtors, and/or other parties as the KFM Debtors may determine to include in their discretion in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), in each case, along with their representatives and advisors, shall be entitled to attend the Auction and only Qualified Bidders will be entitled to make any Overbids (defined below) at the Auction. The Qualified Bidders and any other authorized attendees shall appear in person or through duly-authorized representatives at the Auction.

### *The KFM Debtors Shall Conduct the Auction*

The KFM Debtors and their advisors shall direct and preside over the Auction, which shall be transcribed. Other than as expressly set forth herein, the KFM Debtors may conduct the Auction in the manner they determine, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), will result in the highest or otherwise best offer for any of the KFM Assets or otherwise maximize the value of the KFM Assets. The KFM Debtors shall, prior to commencement of the Auction, provide each Qualified Bidder participating in the Auction and any other parties entitled to attend the Auction with a copy of the Modified PSA associated with the highest or otherwise best Qualified Bid with respect to the KFM Assets for which such Qualified Bidder is bidding, as determined by the KFM Debtors, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid) and, if AMH Assets are included in such Bid, the AMH Debtors (such highest or otherwise best Qualified Bid, the "**Starting Bid**"). At the start of the Auction, the KFM Debtors shall describe the material terms of the Starting Bid and each Qualified Bidder participating in the Auction must confirm that (i) it has not engaged in any collusion with respect to the bidding or sale of any of the KFM Assets described herein, (ii) it has reviewed, understands, and accepts the KFM Bidding Procedures, (iii) it has consented to the core jurisdiction of the Court (as described more fully below), and (iv) its Qualified Bid is a good-faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

### *Terms of Overbid*

An "**Overbid**" is any bid made at the Auction, in accordance with the requirements set forth herein (as determined by the KFM Debtors after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid)), subsequent to the KFM Debtors' announcement of the respective Starting Bid. To submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

(a)  <u>Minimum Overbid Increments</u>.  The initial Overbid for a joint sale of the KFM Assets and AMH Assets, if any, shall provide for total consideration of an aggregate value that exceeds the value of the consideration under the Starting Bid by an incremental amount that is not less than $2,500,000 (the "**Joint Sale Minimum Overbid Increment**"), and each successive Overbid for a joint sale of the KFM Assets and AMH Assets shall exceed the then-existing Overbid by an incremental amount that is not less than the Joint Sale Minimum Overbid Increment.  The initial Overbid for a sale of all or a portion of the KFM Assets only, if any, shall provide for total consideration to the KFM Debtors of an aggregate value that exceeds the value of the consideration provided to the KFM Debtors under the Starting Bid by an incremental amount that is not less than $1,000,000 (the "**KFM Minimum Overbid Increment**"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the KFM Minimum Overbid Increment.  The KFM Debtors reserve the right to announce reductions or increases in the Joint Sale Minimum Overbid Increment or the KFM Minimum Overbid Increment.  Additional consideration in excess of the amount set forth in the respective Starting Bid may include (a) cash and/or non-cash consideration, *provided, however,* that the value for such non-cash consideration shall be determined by the KFM Debtors, in their reasonable business judgment in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), and (b) in the case of a Bid by the Administrative Agent under the KFM Debtors' Credit Agreement, a credit bid up to the full amount of the Prepetition Lenders' allowed secured claim.

(b)  <u>Remaining Terms Are the Same as for Qualified Bids</u>.  Except as modified in the KFM Bidding Procedures, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; *provided, however*, that the Bid Deadline shall not apply.  Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Modified PSA(s) in connection therewith.  For the avoidance of doubt, any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these KFM Bidding Procedures and the conditions for a Qualified Bidder.

At the KFM Debtors' discretion, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), to the extent not previously provided (which shall be determined by the KFM Debtors after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the KFM Debtors), as the KFM Debtors, in their reasonable business judgment (in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid)) may request, demonstrating such Bidder's ability to consummate the Sale Transaction proposed by such Overbid.

***Announcement and Consideration of Overbids***

(a)  <u>Announcement of Overbids</u>.  A Bidder submitting an Overbid at the Auction shall announce at the Auction the material terms of such Overbid, including, without limitation, the total amount and type of consideration offered in such Overbid.

(b)  <u>Consideration of Overbids</u>.  The KFM Debtors reserve the right, in their reasonable business judgment and after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), to make one or more continuances of the Auction to, among other things:  facilitate discussions between the KFM Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the KFM Debtors with such additional evidence as the KFM Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

***Additional Procedures***

The KFM Debtors in the exercise of their fiduciary duties for the purpose of maximizing value for their estates from the sale process, may modify the KFM Bidding Procedures and implement additional procedural rules for conducting the Auction in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid).  Specifically, among other things, the KFM Debtors may determine, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), to select more than one Successful Bid and more than one Successful Bidder (and/or more than one Backup Bid (as defined below) and more than one Backup Bidder (as defined below), in which event such Backup Bids may provide for groupings of KFM Assets that are different from the groupings of KFM Assets reflected in the Successful Bid(s)) for separate portions of the KFM Assets.

***Consent to Jurisdiction as Condition of Bidding***

All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the KFM Debtors, their chapter 11 cases, the KFM Bidding Procedures, the PSA, the Auction, or the construction and enforcement of documents relating to any Sale Transaction and shall waive any right to a jury trial in connection with any disputes relating to the KFM Debtors, their chapter 11 cases, the KFM Bidding Procedures, the PSA, the Auction, or the construction and enforcement of documents relating to any Transaction.

***Sale Is As Is/Where Is***

Any of the KFM Assets sold pursuant to the KFM Bidding Procedures shall be sold free and clear of all liens, claims, interests, and encumbrances (other than Assumed Obligations and certain permitted encumbrances to the extent set forth in the definitive agreement for the Successful Bid) as permitted by Bankruptcy Code section 363(f) and conveyed at Closing in their

then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**", except to the extent set forth in the definitive agreement for the Successful Bid, if applicable, and as approved by the Court.

### *Closing the Auction; Successful Bidder*

The Auction shall continue until there is only one Qualified Bid or combination of Qualified Bids for each portion of the KFM Assets and, if applicable, the AMH Assets, that the KFM Debtors determine in their reasonable business judgment and in a manner consistent with their fiduciary duties, in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), is the highest or otherwise best Qualified Bid at the Auction for such portion of the KFM Assets and, if applicable, AMH Assets, and that further bidding is unlikely to result in higher or otherwise better Qualified Bid(s) that would be acceptable to the KFM Debtors. Thereafter, the KFM Debtors shall select such Qualified Bid(s), in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), as the overall highest or otherwise best Qualified Bid(s) (such Bid(s), the "**Successful Bid(s)**", and the Bidder(s) submitting such Successful Bid, the "**Successful Bidder(s)**"). In making this decision, the KFM Debtors shall consider (in consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid)) the Bid Assessment Criteria.

The KFM Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid(s) at the Auction and (ii) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Court of the Successful Bid(s) and the entry of an order by the Court approving such Successful Bid(s).

Promptly following the KFM Debtors' selection of the Successful Bid(s) and the conclusion of the Auction, the KFM Debtors shall announce the Successful Bid(s) and Successful Bidder(s) and shall file with the Court notice of the Successful Bid(s) and Successful Bidder(s).

Neither the KFM Debtors nor the Court shall consider any Bids submitted after the conclusion of the Auction. The Successful Bidder(s) shall be required to keep the Successful Bid(s) open and irrevocable until the closing of the Transactions contemplated thereby.

### *Backup Bidder*

Notwithstanding anything in the KFM Bidding Procedures to the contrary, the Qualified Bid that the KFM Debtors determine, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), in their reasonable business judgment, is the next highest or otherwise best Qualified Bid at the Auction after the Successful Bid(s), will be designated the "**Backup Bid**" and the Bidder submitting such Backup Bid, the "**Backup Bidder**." The Backup Bidder shall be required to keep the Backup Bid open and irrevocable until the earlier of the date that is forty-five (45) days after the date of entry of an order of the Court approving the transactions contemplated therein (the "**Sale Order**" and such date that is forty-five (45) days after the date of entry of the Sale Order, the "**Outside Backup Date**"), or the closing of the transaction with the Successful Bidder(s). Notwithstanding the foregoing, the selection of the Stalking Horse Bidder as the Backup Bidder and the Stalking Horse Bidder's obligations as the Backup Bidder shall be governed by the KFM Stalking Horse PSA in all respects.

Following entry of the Sale Order, if the Successful Bidder fails to consummate the Successful Bid, the KFM Debtors, after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid), (and, if AMH Assets are included in such Bid, the AMH Debtors) may designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the KFM Debtors will be authorized, but not required, to, agree to consummate the transaction with the Backup Bidder without further order of the Court; *provided*, that such Backup Bid shall be subject to Court approval in connection with the Court's approval of the Successful Bid. In such case of a breach or failure to perform on the part of the Successful Bidder and in such other circumstances as may be specified in the definitive documentation governing the Successful Bid, the defaulting Successful Bidder's deposit shall be forfeited to the KFM Debtors (or, if AMH Assets are included in the Bid, to the KFM Debtors and AMH Debtors). The KFM Debtors (and, if AMH Assets are included in such Bid, the AMH Debtors) specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the KFM Bidding Procedures.

***True Up of Good Faith Deposit***

Within one business day following the conclusion of the Auction, the Successful Bidder(s) shall submit by transfer of immediately available funds to an account identified by the KFM Debtors the amount required to increase the Successful Bidder(s)' Good Faith Deposit to ten percent (10%) of the purchase price contained in the Successful Bid(s), as applicable, or such other amount as the KFM Debtors determine.

## SALE HEARING

Unless the Administrative Agent is the Successful Bidder at the Auction and exercises its Plan Toggle Right, a sale hearing to consider approval of the Sale Transaction and the transfer of all of the applicable KFM Assets and Assumed Obligations to the Successful Bidder(s) (the "**Sale Hearing**") is presently scheduled to take place on **January 21, 2020 at 2:00 p.m. (Prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable Judge Marvin Isgur, United States Bankruptcy Judge in Courtroom 400, 4th Floor, 515 Rusk Street, Houston, Texas 77002.

The Sale Hearing may be continued to a later date by the KFM Debtors, in consultation with the Administrative Agent, by filing on the Court's docket, or making an announcement at, the Sale Hearing, or as may be ordered by the Court. No further notice of any such continuance will be required to be provided to any party. The Sale Hearing shall not be held with respect to the KFM Assets if the Administrative Agent exercises the Plan Toggle Right.

At the Sale Hearing, the KFM Debtors shall present the Successful Bid(s) to the Court for approval. The KFM Debtors' presentation of the Successful Bid(s) to the Court will not constitute the KFM Debtors' acceptance of such Bid(s), which acceptance will only occur upon approval of such Bid(s) by the Court.

## RETURN OF GOOD FAITH DEPOSITS

The Good Faith Deposits of all Qualified Bidders shall be held in one or more segregated accounts by the KFM Debtors, but shall not become property of the KFM Debtors' estates; *provided, however*, that the Good Faith Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) shall be forfeited to the KFM Debtors only if the Successful Bidder fails to consummate the Successful Bid or credited towards the purchase price set forth in the Successful Bid if the Successful Bid is consummated, in accordance with the terms set forth in the KFM Stalking Horse PSA (as though such terms were applicable to all other Qualified Bids). The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder in accordance with the terms set forth in the KFM Stalking Horse PSA (as though such terms were applicable to all other Qualified Bids). The Good Faith Deposit of the Backup Bidder, if any, shall also be returned to the Backup Bidder in accordance with the terms set forth in the KFM Stalking Horse PSA (as though such terms were applicable to all other Qualified Bids). Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that may have accrued thereon.

## RESERVATION OF RIGHTS OF THE KFM DEBTORS

Except as otherwise provided in the KFM Stalking Horse PSA, these KFM Bidding Procedures or the KFM Bidding Procedures Order, the KFM Debtors further reserve the right, in their reasonable business judgment after consultation with the Administrative Agent (unless the Administrative Agent submits a credit bid) to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of these KFM Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the KFM Debtors and their estates; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions with respect to all potential bidders; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale hearing in open court, or by filing a notice on the docket of the KFM Debtors' chapter 11 cases, without further notice; (ix) include any other party as an attendee at the Auction; and (x) modify the KFM Bidding Procedures and implement additional procedural rules for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bankruptcy Code, the KFM Bidding Procedures Order, or any other order of the Court. All consultation rights of the Administrative Agent set forth herein that terminate upon the Administrative Agent's submission of a credit bid shall be terminated only for so long as such credit bid remains open, and shall be reinstated upon the Administrative Agent's withdrawal of its credit bid.

**Exhibit 2**

**Prepetition Notice**



**THIS NOTICE DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE OR ANY OTHER PLAN OF REORGANIZATION OR SIMILAR PROCESS UNDER ANY OTHER APPLICABLE LAW.**

## Dated as of December 31, 2019

<u>Subject</u>: **Announcement of Entry into Stalking Horse Purchase Agreement, Assumption and Assignment Procedures, Information Regarding Key Dates and Deadlines Related to the Proposed Sale, and Certain Other Matters**

To Whom It May Concern:

Kingfisher Midstream, LLC and its subsidiaries (collectively, "**Kingfisher**" or the "**Company**")[1] have engaged in an extensive marketing process to sell the Company's assets (the "**KFM Assets**").

On September 11, 2019, Alta Mesa Resources Inc. and certain of its affiliates (collectively, the "**AMH Debtors**"),[2] which are affiliates of Kingfisher, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"). The AMH Debtors' cases are jointly administered under the caption *In re Alta Mesa Resources, Inc., et al.*, Case No. 19-35133 (MI) (collectively, the "**AMH Chapter 11 Cases**"). Shortly thereafter, the AMH Debtors filed a motion seeking to, among other things, sell all or substantially all or any portion of their assets (the "**AMH Assets**") and, subject to the consent of Kingfisher, the KFM Assets (together with the AMH Assets, the "**Assets**").

Kingfisher, the AMH Debtors, and each of their respective advisors have worked diligently to market the Assets and develop actionable proposals for a joint sale of the Assets (the "**Joint Sale**").

**Entry into Stalking Horse Purchase Agreement and**
<u>**Potential Commencement of Chapter 11 Cases**</u>

As a result of such efforts, on December 31, 2019, Kingfisher entered into that certain Purchase and Sale Agreement (the "**KFM Stalking Horse PSA**"), a copy of which is attached

---

[1] Kingfisher consists of Kingfisher Midstream, LLC, Kingfisher STACK Oil Pipeline, LLC, Oklahoma Produced Water Solutions, LLC, and Cimarron Express Pipeline, LLC.

[2] The AMH Debtors consist of Alta Mesa Resources, Inc., Alta Mesa Holdings, LP, Alta Mesa Holdings GP, LLC, OEM GP, LLC, Alta Mesa Finance Services Corp., Alta Mesa Services, LP, and Oklahoma Energy Acquisitions, LP.

hereto as **Exhibit 1**, to sell substantially all of the KFM Assets to BCE-Mach III LLC (the "**Stalking Horse Bidder**"), and the AMH Debtors entered into a separate Purchase and Sale Agreement (the "**AMH Stalking Horse PSA**" and, together with the KFM Stalking Horse PSA, the "**Stalking Horse PSAs**") to sell substantially all of the AMH Assets to the Stalking Horse Bidder.[3]

The Stalking Horse PSAs provide for a total purchase price of $310 million, of which $85,250,000 would be payable to Kingfisher pursuant to the Kingfisher Stalking Horse PSA and $224,750,000 would be payable to the AMH Debtors pursuant to the AMH Stalking Horse PSA, subject to certain adjustments set forth in the applicable Stalking Horse PSA. In addition, pursuant to the Stalking Horse PSAs, Kingfisher and the AMH Debtors have agreed to pay the Stalking Horse Bidder a break-up fee and expense reimbursement equal to 3% of the unadjusted purchase price payable under each respective Stalking Horse PSA, subject to the terms and conditions of the Stalking Horse PSAs (the "**Bid Protections**").

Additionally, the KFM Stalking Horse PSA contemplates that the sale of the KFM Assets will be implemented through proceedings commenced under chapter 11 of the Bankruptcy Code. In the event that such chapter 11 proceedings are authorized by the applicable governing bodies of the Company, Kingfisher expects to file voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court. Subject to approval by the Bankruptcy Court and in accordance with the terms of the KFM Stalking Horse PSA, Kingfisher anticipates selling its assets to the Stalking Horse Bidder or a successful alternative bidder pursuant to a sale under sections 363 and 365 of the Bankruptcy Code.

In furtherance of the Joint Sale, upon commencement of Kingfisher's chapter 11 cases, if any, Kingfisher expects to file an emergency motion seeking entry of an order (the "**KFM Bidding Procedures Order**"), among other things, (i) applying a modified version of the AMH Bidding Procedures (as defined below) to the Kingfisher chapter 11 cases (the "**KFM Bidding Procedures**"), pursuant to which the Company will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "**Sale Transaction**"), (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts, (iii) approving the Bid Protections provided to the Stalking Horse Bidder, (iv) approving certain deadlines to object to any Sale Transaction, (v) scheduling (a) a date for an auction (the "**Auction**") if Kingfisher receives one or more timely and acceptable Qualified Bids (as defined in the AMH Bidding Procedures) and (b) a final hearing (the "**Sale Hearing**") to approve the Sale Transaction, and (vi) granting related relief. Kingfisher intends to seek entry of the KFM Bidding Procedures Order at Kingfisher's first day hearing promptly after commencement of the chapter 11 cases before January 15, 2020.

Consistent with the record in the AMH Chapter 11 Cases, Kingfisher and the AMH Debtors will consider many factors when evaluating bids as higher or better, including, without limitation, whether such bids are joint bids for the assets of Kingfisher and the AMH Debtors.

---

[3] For additional information regarding the AMH Stalking Horse PSA, please refer to the *Notice of Stalking Horse Bid in Connection with the Sale of the Debtors' Assets* filed in the AMH Chapter 11 Cases.

In addition, the KFM Stalking Horse PSA contemplates entry of an order of the Bankruptcy Court approving the Sale Transaction (the "**Sale Order**") substantially in the form attached hereto as **Exhibit 2**. The proposed Sale Order contains a release of the Stalking Horse Bidder, which is related to an affiliate of Kingfisher, and certain related parties in connection with the Sale Transaction. The release is set forth in full below.

Upon the occurrence of the Closing Date, except for the express rights and obligations of the Debtors and the Buyer under the PSA after the Closing Date:

1.    the Debtors, their estates, their Releasing Parties,[4] and their successors or assigns, including any trustee under the Bankruptcy Code, to the extent permitted by law, each are hereby deemed to have irrevocably and unconditionally released, remised, and forever discharged, as applicable, (a) the Buyer and (b) the Buyer's Representatives,[5] in each case solely in their capacity as such, from any and all claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever (including (w) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law, (x) the right to object to or otherwise contest claims or interests,  (y) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code, and (z) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code), in each case whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, including any derivative claims, asserted on behalf of the Debtors that such entity would have been legally entitled to assert (whether individually or collectively) or which the Debtors might now or subsequently may have, in each case based on or relating to, or in any manner arising from, in whole or in part, the Debtors, their prepetition or postpetition business, operations, and/or restructuring and recapitalization efforts, including in connection with AMR's business combination transaction that was consummated on or around February 9, 2018, these chapter 11 cases, the Assets, the Assigned Contracts, the PSA, the Auction, the Transactions, the negotiation and documentation thereof, the transactions contemplated

---

[4] "**Releasing Parties**" means, with respect to a Person or Entity (as such term is defined in section 101(15) of the Bankruptcy Code), such Person or Entity's current direct equity holders, controlled subsidiaries, and current and former officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their respective capacity as such.

[5] "**Representatives**" means, with respect to a Person or Entity, such Person or Entity's current and former (i) equity holders, (ii) controlled subsidiaries, (iii) officers, (iv) directors, (v) managers, (vi) principals, (vii) members, (viii) employees, (ix) agents, (x) advisory board members, (xi) financial advisors, (xii) partners, (xiii) attorneys, (xiv) accountants, (xv) investment bankers, (xvi) consultants, (xvii) representatives, and (xviii) other professionals, each in their capacity as such, it being understood that Representatives of the Buyer shall include the Buyer Parties, in their applicable capacities with respect to the Buyer; *provided* that under no circumstances shall Representatives of Buyer or the Buyer Parties include (v) KFM Holdco, LLC, (w) High Mesa Inc. or any of its subsidiaries, (x) Alta Mesa Resources, Inc. or any of its subsidiaries, (y) Riverstone VI Alta Mesa Holdings, L.P. or any of its related Persons or Entities that would otherwise be included in the definition of Representatives, or (z) HPS Investment Partners or any of its related Persons or Entities that would otherwise be included in the definition of Representatives.

thereby, and the agreements and ancillary documents memorializing and effectuating such sale (including, without limitation, the PSA, but excluding the express rights and obligations of the Debtors under the PSA after the Closing Date); notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations of any party or Entity under the PSA, the Sale Order, any Transaction Document, or any other document, instrument, or agreement executed to implement the PSA, or any Claim or obligation arising under the PSA; and

2.      the Buyer, the Buyer Parties, their respective Releasing Parties, and successors or assigns of each of the foregoing, to the extent permitted by law, each are hereby deemed to have irrevocably and unconditionally released, remised, and forever discharged, as applicable, (a) the Debtors and (b) the Debtors' Representatives from any and all claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever (including (w) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law, (x) the right to object to or otherwise contest claims or interests, (y) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code, and (z) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code), in each case whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, including any derivative claims, asserted on behalf of the Buyer that such entity would have been legally entitled to assert (whether individually or collectively) or which the Buyer might now or subsequently may have, in each case based on or relating to, or in any manner arising from, in whole or in part, the Debtors, their prepetition or postpetition business or operations, these chapter 11 cases, the Assets, the Assigned Contracts, the PSA, the Auction, the Sale Transaction, the negotiation and documentation thereof, the transactions contemplated thereby, and the agreements and ancillary documents memorializing and effectuating such sale (including, without limitation, the PSA, but excluding the express rights and obligations of the Debtors under the PSA after the Closing Date); notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations of any party or Entity under the PSA, the Sale Order, any Transaction Document, or any document, instrument, or agreement executed to implement the PSA, or any Claim or obligation arising under the PSA.

**AMH Bidding Procedures Order**

On October 11, 2019, the Bankruptcy Court entered an order in the AMH Chapter 11 Cases [Docket No. 317] (the "**AMH Bidding Procedures Order**") approving, among other things, the auction and bidding procedures (the "**AMH Bidding Procedures**"),[6] a copy of which is attached hereto as **Exhibit 3**, pursuant to which the AMH Debtors will solicit and select the highest or otherwise best offer for the sale of the AMH Assets. Amended versions of the AMH Bidding

---

[6] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the AMH Bidding Procedures or the KFM Stalking Horse PSA, as applicable.

Procedures Order were entered on December 10, 2019 and December 19, 2019 [Docket Nos. 636 and 666]. As used herein, "AMH Bidding Procedures Order" refers to the amended AMH Bidding Procedures Order dated December 19, 2019 [Docket No. 666].

### Notice of Bid Deadline, Auction, Objection Deadlines, and Sale Hearing

The following dates and deadlines, which are substantially consistent with dates and deadlines established in the AMH Bidding Procedures Order, apply to the Sale Transaction:

- **January 8, 2020 at 5:00 p.m. (Prevailing Central Time)**: Deadline to submit bids (for all parties other than the administrative agent and lenders under Kingfisher's secured credit facility).

- **January 10, 2020 at 5:00 p.m. (Prevailing Central Time):** Deadline to submit bids by the administrative agent and lenders under Kingfisher's secured credit facility.

- **January 15, 2020 at 9:00 a.m. (Prevailing Central Time)**: the Auction.

- **2 hours prior to the commencement of Sale Hearing**: Deadline for objections based on (1) the manner in which the Auction was conducted, (2) the identity of the Successful Bidder or Backup Bidder, or (3) the ability of the Successful Bidder or Backup Bidder to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder or Backup Bidder (unless such counterparty receives this notice less than seven (7) days prior to the Sale Hearing, as set forth below).

- **January 21, 2020 at 2:00 p.m. (Prevailing Central Time):** the Sale Hearing**.**

Promptly after commencing chapter 11 cases (which may occur after certain of the dates listed above), Kingfisher will seek to have such dates and deadlines approved by the Bankruptcy Court pursuant to the KFM Bidding Procedures Order. Subject to approval by the Bankruptcy Court, the KFM Bidding Procedures will also provide that if Kingfisher receives one or more timely and acceptable Qualified Bids for the KFM Assets and, if applicable, the AMH Assets, Kingfisher and the AMH Debtors will conduct the Auction on **January 15, 2020 at 9:00 a.m. (prevailing Central Time)** at the offices of counsel for the AMH Debtors, Latham & Watkins LLP, 811 Main Street, Suite 3700, Houston, TX 77002, or at such other place and time as Kingfisher may notify all Qualified Bidders and all other parties entitled to attend the Auction. Only Kingfisher, the AMH Debtors, the Consultation Parties, the Stalking Horse Bidder, any other Qualified Bidder and/or other party as Kingfisher may determine to include in its discretion, in each case, along with their representatives and advisors, may attend the Auction (such attendance to be in person), and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read (i) the AMH Bidding Procedures Order and the AMH Bidding Procedures and (ii) if and when approved by the Bankruptcy Court, the KFM Bidding Procedures Order and the KFM Bidding Procedures.**

If the KFM Bidding Procedures are approved, the Sale Hearing to consider approval of any Sale Transaction and the transfer of some or all of the KFM Assets and, if applicable, the AMH Assets, <u>free and clear of all liens, claims, interests, and encumbrances</u> (other than the Assumed Obligations and Permitted Encumbrances) in accordance with section 363(f) Bankruptcy Code, will be held before the Bankruptcy Court on January 21, 2020 at 2:00 p.m. (prevailing Central Time).  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in any chapter 11 cases commenced by Kingfisher.

Subject to approval by the Bankruptcy Court, any objections to the Sale Transaction (each a "**Sale Objection**") must be filed and served so as to be actually received by the Objection Recipients (as defined below) no later than January 17, 2020 at 12:00 p.m. (prevailing Central Time) (the "**Sale Objection Deadline**").  The Objection Recipients are: (i) Kingfisher, 15021 Katy Freeway, 4th Floor, Houston, Texas 77094, Attn: Kim  Warnica, Esq.; (ii) counsel to Kingfisher, Weil Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Ray C. Schrock, P.C., Kelly DiBlasi, Esq. and Lauren Tauro, Esq.; (iii) counsel to the administrative agent under Kingfisher's secured credit facility, Vinson & Elkins, LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201, Attn: Michael E. Bielby, Jr., Esq. and William L. Wallander; (iv) counsel to the Stalking Horse Bidder, Kirkland & Ellis, LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Gregory F. Pesce, Esq., and (v) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Stephen Statham, Esq. and Hector Duran, Esq. (collectively, the "**Objection Recipients**").

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE A SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE KFM BIDDING PROCEDURES ORDER, ONCE ENTERED, WILL BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION TO THE SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF KINGFISHER FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS EFFECTED THEREUNDER (OTHER THAN ASSUMED OBLIGATIONS AND PERMITTED ENCUMBRANCES).**

**Notice of Executory Contracts and Unexpired Leases
Which May Be Assumed and Assigned in Connection with the Sale
<u>Transaction and the Proposed Cure Amounts with Respect Thereto</u>**

Subject to approval by the Bankruptcy Court and in accordance with the KFM Stalking Horse PSA, the KFM Bidding Procedures Order will establish procedures for the assumption and assignment of certain executory contracts and unexpired leases that Kingfisher may seek to assume and assign in connection with the Sale Transaction (collectively, the "**365 Contracts**") to a purchaser and the determination of Cure Costs (as defined in section 2.4 of the KFM Stalking Horse PSA).  Kingfisher is party to numerous 365 Contracts and, in accordance with the anticipated KFM Bidding Procedures Order, has identified (i) the 365 Contracts, which may be assumed and assigned to the Stalking Horse Bidder or such other Successful Bidder in connection with the Sale Transaction, and (ii) the Cure Costs, if any, Kingfisher believes are owed to the counterparty to each 365 Contract, on a schedule attached to the KFM Stalking Horse PSA (the

"365 Schedule"), a copy of which is attached hereto as **Exhibit 4**. Other than the Cure Costs listed on the 365 Schedule, Kingfisher is not aware, as of the date hereof, of any amounts due and owing under the 365 Contracts listed therein.

The listing of a 365 Contract on the 365 Schedule does not constitute an admission that such 365 Contract is an executory contract or unexpired lease as contemplated by section 365(a) of the Bankruptcy Code or that Kingfisher has any liability thereunder. Kingfisher expressly reserves all of its rights, claims, causes of action, and defenses with respect to the 365 Contracts listed on the 365 Schedule.

To the extent a counterparty to a 365 Contract listed on the 365 Schedule objects to the proposed assumption and assignment of the applicable 365 Contract (other than an Adequate Assurance Objection (as defined below) or the proposed Cure Costs, if any, such counterparty must file and serve an objection (a "**Contract Objection**")). Subject to approval by the Bankruptcy Court, all Contract Objections must (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any, (ii) include appropriate documentation in support thereof, and (iii) be filed and served on the Objection Recipients no later than the Sale Objection Deadline, except as set forth below.

**IF A COUNTERPARTY TO A 365 CONTRACT FILES A CONTRACT OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, THE AMOUNT TO BE PAID OR RESERVED WITH RESPECT TO SUCH OBJECTION WILL BE DETERMINED AT THE SALE HEARING, SUCH LATER HEARING DATE THAT KINGFISHER MAY DETERMINE IN ITS DISCRETION, OR SUCH OTHER DATE DETERMINED BY THE BANKRUPTCY COURT, IF APPLICABLE. ALL OTHER OBJECTIONS TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF KINGFISHER'S RIGHT, TITLE, AND INTEREST IN, TO, AND UNDER THE 365 CONTRACTS WILL BE HEARD AT THE SALE HEARING**.

Subject to approval by the Bankruptcy Court, any objections to the ability of the Stalking Horse Bidder or any other Successful Bidder to provide adequate assurance of future performance (each, an "**Adequate Assurance Objection**") must be filed with the Bankruptcy Court no later than two (2) hours prior to the commencement of the Sale Hearing (the "**Adequate Assurance Objection Deadline**"); *provided*, that if you are receiving this notice less than seven (7) days prior to the Sale Hearing, your deadline to file an Adequate Assurance Objection shall be 5:00 p.m. (Prevailing Central Time) on the date that is seven (7) days after the date of receipt. If applicable, the identity of the Successful Bidder and Backup Bidder (if any) will be disclosed in a subsequent notice to be delivered to counterparties to the applicable 365 Contracts following the Auction.

**Subject to approval by the Bankruptcy Court, if a counterparty to a 365 Contract does not timely file and serve a Contract Objection that is consistent with the requirements set forth above by the Sale Objection Deadline (with respect to all objections other than Adequate Assurance Objections) or the Adequate Assurance Objection Deadline (with respect to Adequate Assurance Objections only), such counterparty will be deemed to have consented to the assumption and assignment of the 365 Contract to a Successful Bidder,**

notwithstanding any anti-alienation provision or other restriction on assumption or assignment in the 365 Contract, and will be forever barred from asserting any objection with regard to such assumption and assignment and/or Cure Costs set forth on the 365 Schedule.

Although Kingfisher has made a good-faith effort to identify all 365 Contracts that might be assumed and assigned in connection with a Sale Transaction, Kingfisher may discover certain contracts inadvertently omitted from the 365 Schedule or Successful Bidder(s) may identify other executory contracts or unexpired leases that they desire to assume and assign in connection with the Sale Transaction or may decide to exclude certain 365 Contracts. Accordingly, Kingfisher reserves the right, at any time before the closing of a Sale Transaction, to (i) supplement the list of 365 Contracts on this or any future notice with previously omitted 365 Contracts, (ii) remove a 365 Contract from the list of contracts on this or any future notice, or (iii) modify the previously stated Cure Cost associated with any 365 Contract.

In the event that Kingfisher supplements the 365 Schedule or modifies the previously stated Cure Cost for a particular 365 Contract, Kingfisher will promptly serve a revised notice on each counterparty affected. Subject to approval by the Bankruptcy Court, such counterparties may file any Contract Objections with respect to the revised notice not later than (i) the Sale Objection Deadline in the event that the revised notice was filed and served at least seven (7) days prior to the Sale Objection Deadline and (ii) seven (7) days after the date of filing and service of the revised notice if such revised notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing.

The inclusion of a 365 Contract on the 365 Schedule (or any future notice) will not obligate Kingfisher to assume any 365 Contract listed thereon or the Successful Bidder(s) to take assignment of such 365 Contract.

**IF YOU ARE A COUNTERPARTY TO ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH KINGFISHER, YOU ARE ADVISED TO CAREFULLY REVIEW (I) SECTIONS 2.4 AND 2.5 OF THE KFM STALKING HORSE PSA AND (II) THE 365 SCHEDULE ATTACHED HERETO AS <u>EXHIBIT 4</u>.**

### Notice to Holders of Consent Rights, Preferential <u>Purchase Rights, and Similar Rights of Objection Deadline</u>

Pursuant to the KFM Stalking Horse PSA, Kingfisher will assign to the Buyer certain Applicable Contracts that are not 365 Contracts or other Assets constituting real property interests, including Purchased Rights of Way,[7] free and clear of all **<u>liens, claims, interests, and encumbrances</u>** (other than Assumed Obligations and Permitted Encumbrances). Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any Applicable Contract or Purchased Right of Way, then such party must file with

---

[7] "**Purchased Rights of Way**" is defined as "all of the easements, rights-of-way, surface leases, servitudes, licenses, surface use agreements, crossing rights and other surface or sub surface interests or rights held by Seller to the extent used or held for use primarily in connection with the ownership or operation of the other Assets or which are required for access to the other Assets, including those set forth on *Exhibit F* [of the KFM Stalking Horse PSA], together with all rights, hereditaments, and appurtenances thereto, excluding the FCC Licenses."

the Bankruptcy Court and serve on the Objection Recipients, no later than the Sale Objection Deadline, an objection identifying (i) the Applicable Contract(s), (ii) the basis for objecting to the assignment of such Applicable Contract(s) or other Assets, and (iii) all supporting documentation (each, an "**Assignment Objection**").

In addition, pursuant to the KFM Stalking Horse PSA, Kingfisher will transfer the KFM Assets, including all Purchased Rights of Way, to the Buyer free and clear of any preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the transfer of the KFM Assets in connection with the Sale Transaction (each a "**Preferential Purchase Right**").  Subject to approval by the Bankruptcy Court, if any purported holder of a Preferential Purchase Right objects to such transfer, including on account of any alleged Preferential Purchase Right contained in or applicable to any Applicable Contract or Purchased Right of Way, then such holder must file with the Bankruptcy Court and serve such objection on the Objection Recipients no later than the Sale Objection Deadline, an objection identifying (i) the assets subject to such Preferential Purchase Right(s), (ii) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (iii) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and including all supporting documentation (a "**Rights Objection**").

**IF YOU WISH TO ASSERT AN ASSIGNMENT OBJECTION OR RIGHTS OBJECTION, YOU ARE ADVISED TO CAREFULLY REVIEW SECTION 5.2 OF THE KFM STALKING HORSE PSA.  IN ADDITION, A LIST OF KNOWN PURCHASED RIGHTS OF WAY IS AVAILABLE ON PRIME CLERK'S WEBSITE AT HTTPS://CASES.PRIMECLERK.COM/KINGFISHER/.**

**IF A PARTY FILES AN ASSIGNMENT OBJECTION OR RIGHTS OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, SUCH OBJECTION WILL BE HEARD BY THE BANKRUPTCY COURT AT THE SALE HEARING, SUCH LATER HEARING DATE THAT KINGFISHER MAY DETERMINE IN ITS DISCRETION, OR SUCH OTHER DATE DETERMINED BY THE BANKRUPTCY COURT, IF APPLICABLE.**

**Any person failing to timely file and serve an Assignment Objection or Rights Objection, as applicable, will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of Kingfisher's right, title, and interest in, to and under the KFM Assets to be sold, assumed, and/or assigned in connection with the Sale Transaction, free and clear of all liens, claims, interests, and encumbrances (other than Assumed Obligations and Permitted Encumbrances), and from asserting any alleged Preferential Purchase Rights with respect to the Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Company's right, title, and interest in, to and under such KFM Asset, free and clear of all liens, encumbrances, claims, and other interests (regardless of whether such consent must be in writing).**

If any person files and serves an Assignment Objection or Rights Objection in accordance herewith, Kingfisher and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Assignment Objection or Rights

Objection, as applicable (and serving such response on the objecting party) at any time prior to the Sale Hearing. Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and Kingfisher will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of Kingfisher or any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of Kingfisher are expressly preserved.

### **Additional Information**

Parties interested in receiving more information regarding the Sale Transaction, notice of the commencement of any Kingfisher chapter 11 cases, or copies of any related documents may visit the websites maintained by Prime Clerk LLC, the claims and noticing agent for both Kingfisher and the AMH Debtors, at https://cases.primeclerk.com/kingfisher and https://cases.primeclerk.com/altamesa, respectively. Moreover, if chapter 11 cases for Kingfisher are commenced, copies of all pleadings filed in Kingfisher's cases will be available through the Bankruptcy Court's electronic case filing system at www.deb.uscourts.gov using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov) or at https://cases.primeclerk.com/kingfisher/. Parties interested in receiving more information regarding the Sale Transaction or copies of any related documents may also make a written request to counsel to Kingfisher, Weil Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Ray C. Schrock, P.C., Kelly DiBlasi, Esq. and Lauren Tauro, Esq. (Ray.Schrock@weil.com, Kelly.DiBlasi@weil.com, and Lauren.Tauro@weil.com).

**<u>Exhibit 1</u>**

**KFM Stalking Horse PSA**

# Omitted

**Exhibit 2**

**Proposed Sale Order**

# Omitted

**<u>Exhibit 3</u>**

**AMH Bidding Procedures**

# Omitted

## Exhibit 4

**365 Schedule**

# Omitted

**Exhibit 3**

**Supplemental Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| ALTA MESA RESOURCES, INC., *et al.*, | § § | Case No. 19-35133 (MI) |
| Debtors.[1] | § § | Jointly Administered |
|  | § |  |

**NOTICE OF PROPOSED SALE TRANSACTION, BIDDING PROCEDURES,
AUCTION, AND SALE HEARING FOR KFM DEBTORS**

**PLEASE TAKE NOTICE THAT ON** January 12, 2020, the KFM Debtors[2] filed voluntary petitions commencing these cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**PLEASE TAKE FURTHER NOTICE** that, on January 12, 2020, the KFM Debtors filed a motion [Docket No. [●]] (the "**Motion**")[3] with the Bankruptcy Court seeking, among other things, entry of an order (the "**Supplemental Bidding Procedures Order**") approving the KFM Debtors' auction and bidding procedures.

**PLEASE TAKE FURTHER NOTICE** that, on or before January 1, 2020, the KFM Debtors caused the Prepetition Notice to be served on all parties required to receive such notice and also posted the Prepetition Notice on the website maintained by the KFM Debtors' claims and noticing agent, Prime Clerk, LLC. The Prepetition Notice announced the KFM Debtors' entry into the KFM Stalking Horse PSA and expected commencement of chapter 11 cases, and provided notice, subject to the Court's approval, of the dates, deadlines, and objection procedures applicable to the Sale Transaction, as set forth in the Motion.

**PLEASE TAKE FURTHER NOTICE** that you are receiving this notice to confirm that on January [●], 2020, the Court granted the relief requested in the Motion pursuant to the Supplemental Bidding Procedures Order [Docket No. [●]]:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); Oklahoma Energy Acquisitions, LP (3762); SRII Opco GP, LLC (3729); SRII Opco, LP (5874); Kingfisher Midstream, LLC (1357); Kingfisher STACK Oil Pipeline, LLC (8858); Oklahoma Produced Water Solutions, LLC (0256); and Cimarron Express Pipeline, LLC (1545). The Debtors' mailing address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

[2] The KFM Debtors consist of Kingfisher Midstream, LLC, Kingfisher STACK Oil Pipeline, LLC, Oklahoma Produced Water Solutions, LLC, and Cimarron Express Pipeline, LLC.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(i)    ratifying and approving auction and bidding procedures, substantially in the form attached to the Bidding Procedures Order as <u>Exhibit 1</u> (the "**KFM Bidding Procedures**"), by which the KFM Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or any portion of the KFM Assets through one or more sales of the KFM Assets and/or a combined sale of both the KFM Assets and the AMH Assets (the "**Sale Transaction**");

(ii)   ratifying and approving the KFM Debtors' entry into the KFM Stalking Horse PSA, a copy of which is attached as **Exhibit 1** to the Motion;

(iii)  ratifying and approving the Assumption and Assignment Procedures;

(iv)  ratifying and approving the Assignment Objection Procedures and the Rights Objection Procedures;

(v)   scheduling the Auction for **January 15, 2020 at 9:00 a.m. (Prevailing Central Time)** if the KFM Debtors receive two or more timely and acceptable Qualified Bids (including the KFM Stalking Horse Bid) and a Sale Hearing for **January 21, 2020 at 2:00 p.m. (Prevailing Central Time)**;

(vi)  approving the form and manner of notice of the KFM Bidding Procedures, the KFM Stalking Horse PSA, the Auction, the Sale Transaction, the Sale Hearing, and certain objection deadlines related thereto; and

(vii)  granting related relief.

      **PLEASE TAKE FURTHER NOTICE** that the KFM Debtors have the right to adjourn or cancel the Auction at or prior to the Auction.

      **PLEASE TAKE FURTHER NOTICE** that any objections to the Sale Transaction (each a "**Sale Objection**") must be filed and served so as to be actually received by the Objection Notice Parties and counsel to any Successful Bidder(s) (if known) no later than **January 17, 2020 at 12:00 p.m. (Prevailing Central Time)** (the "**Sale Objection Deadline**").

      **PLEASE TAKE FURTHER NOTICE** that any party or entity who fails to timely file and serve a Sale Objection on or before the Sale Objection Deadline in accordance with the KFM Bidding Procedures Order, once entered, will be forever barred from asserting any Sale Objection to the Sale Transaction, including with respect to the transfer of the transferred assets of the KFM Debtors **free and clear of all claims, Encumbrances or Liabilities** other than the Assumed Obligations and Permitted Encumbrances.

      **PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the Sale Transaction and sale of the KFM Assets to the Successful Bidder(s), **free and clear of all claims, Encumbrances or Liabilities** other than the Assumed Obligations and Permitted Encumbrances in accordance with section 363(f) Bankruptcy Code, will be held before the Bankruptcy Court on **January 21, 2020 at 2:00 p.m. (Prevailing Central Time)**.  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that any objections (i) to the manner in which the Auction was conducted, (ii) to the identity of the Successful Bidder(s) or Backup Bidder(s), and/or (iii) based on the ability of the Successful Bidder(s) or Backup Bidder(s) to provide adequate assurance of future performance to counterparties to 365 Contracts contemplated to be assumed and assigned to the Successful Bidder(s) or Backup Bidder(s) must be filed with this Court no later than two (2) hours prior to the commencement of the Sale Hearing; *provided*, *however*, that if a counterparty did not receive the Prepetition Notice more than seven (7) days prior to the Sale Hearing, such counterparty's deadline to file an Adequate Assurance Objection shall be 5:00 p.m. (Prevailing Central Time) on the date that is seven (7) days after the date of receiving such notice.

**PLEASE TAKE FURTHER NOTIC**E that parties interested in receiving more information regarding the Sale Transaction, notice of the commencement of these chapter 11 cases, and/or copies of any related documents may visit the website maintained by Prime Clerk, LLC, at https://cases.primeclerk.com/kingfisher.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the terms and conditions of the Supplemental Bidding Procedures Order, with such Supplemental Bidding Procedures Order controlling in the event of any conflict, and the KFM Debtors encourage parties to review such Order in its entirety.

3

## **Exhibit 4**

**Post-Auction Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|                                                | §  |                                |
| ---------------------------------------------- | -- | ------------------------------ |
| **In re:**                                     | §  | **Chapter 11**                 |
|                                                | §  |                                |
| **ALTA MESA RESOURCES, INC.,** *et al.*,       | §  | **Case No. 19-35133 (MI)**     |
|                                                | §  |                                |
| Debtors.[1]                                     | §  | **Jointly Administered**       |
|                                                | §  |                                |

**NOTICE OF SUCCESSFUL AND BACKUP BIDDERS WITH RESPECT TO SALE
OF THE KFM DEBTORS' ASSETS**

      **PLEASE TAKE NOTICE THAT ON** January 12, 2020, the KFM Debtors filed voluntary petitions commencing these cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

      **PLEASE TAKE FURTHER NOTICE** that on January [●], 2020, the Court entered the Supplemental Bidding Procedures Order [Docket No. [●]].

      **PLEASE TAKE FURTHER NOTICE** that on January 15, 2020, at 2:00 p.m. (Prevailing Central Time), the KFM Debtors conducted the Auction with respect to the sale of the KFM Assets.

      **PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the KFM Debtors, in consultation with their professionals, selected the following Successful Bidder(s) and Backup Bidder(s) with respect to the KFM Assets:

| Asset(s) | Successful Bidder(s) | Backup Bidder(s) |
| -------- | -------------------- | ---------------- |
|          |                      |                  |

      **PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the Sale Transaction and transfer of the KFM Assets to the Successful Bidder(s), __free and clear of all claims, Encumbrances or Liabilities__ other than the Assumed Obligations and Permitted Encumbrances, in accordance with section 363(f) Bankruptcy Code, will be held before the Court on **January 21, 2020 at 2:00 p.m. (Prevailing Central Time)**.  The Sale Hearing may be

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); Oklahoma Energy Acquisitions, LP (3762); SRII Opco GP, LLC (3729); SRII Opco, LP (5874); Kingfisher Midstream, LLC (1357); Kingfisher STACK Oil Pipeline, LLC (8858); Oklahoma Produced Water Solutions, LLC (0256); and Cimarron Express Pipeline, LLC (1545).  The Debtors' mailing address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that any objections (i) to the manner in which the Auction was conducted, (ii) to the identity of the Successful Bidder(s) or Backup Bidder(s), and/or (iii) based on the ability of the Successful Bidder(s) or Backup Bidder(s) to provide adequate assurance of future performance to counterparties to 365 Contracts contemplated to be assumed and assigned to the Successful Bidder(s) or Backup Bidder(s) must be filed with this Court no later than two (2) hours prior to the commencement of the Sale Hearing; *provided*, *however*, that if a counterparty did not receive the Prepetition Notice more than seven (7) days prior to the Sale Hearing, such counterparty's deadline to file an Adequate Assurance Objection shall be 5:00 p.m. (Prevailing Central Time) on the date that is seven (7) days after the date of receiving such notice.

**PLEASE TAKE FURTHER NOTIC**E that parties interested in receiving more information regarding the Sale Transaction, notice of the commencement of these chapter 11 cases, and/or copies of any related documents may visit the websites maintained by Prime Clerk, LLC, the KFM Debtors' claims and noticing agent, at https://cases.primeclerk.com/kingfisher.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the terms and conditions of the Supplemental Bidding Procedures Order, with such Supplemental Bidding Procedures Order controlling in the event of any conflict, and the KFM Debtors encourage parties to review such Order in its entirety.