IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALTA MESA RESOURCES, INC., *et al.*, | § | Case No. 19-35133 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**OBJECTION OF THE AD HOC NOTEHOLDER GROUP
TO THE AMH DEBTORS' CASH COLLATERAL MOTION**
[Related to ECF No. 1211]

The ad hoc group (the "Ad Hoc Noteholder Group")[2] of holders of 7.875% Senior Notes due 2024 issued by Debtors Alta Mesa Holdings, LP and Alta Mesa Finance Services Corp., by and through its undersigned counsel, hereby submits this objection (this "Objection") to the *AMH Debtors' Emergency Motion for Entry of Second Amended Final Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Complex Case Procedures (I) Authorizing AMH Debtors to Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [ECF No. 1211] (the "Motion").

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); Oklahoma Energy Acquisitions, LP (3762) (the foregoing, collectively, the "AMH Debtors"); Alta Mesa Resources, Inc. (3840); SRII Opco, LP (5874); SRII Opco GP, LLC (3729); Kingfisher Midstream, LLC (1357); Oklahoma Produced Water Solutions, LLC (0256); Kingfisher STACK Oil Pipeline, LLC (8858); and Cimarron Express Pipeline, LLC (1545). The location of the debtors' corporate headquarters and service address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

[2] The members of the Ad Hoc Noteholder Group are set forth in the *Second Supplemental Verified Statement of Davis Polk & Wardwell LLP and Rapp & Krock, PC Pursuant to Federal Rule of Bankruptcy Procedure 2019* [ECF No. 725].

In support of this Objection, the Ad Hoc Noteholder Group respectfully states as follows:

1. While it is an unfortunate reality that the value of the AMH Debtors' estates is insufficient to provide payment in full of all claims, these cases remain subject to chapter 11 of the Bankruptcy Code and they amount to more than mere foreclosure actions. Indeed, this Court's existing orders establish procedures to ensure that what limited value is available is used and distributed in a manner that complies with the Bankruptcy Code. However, if entered, the cash collateral order proposed by the Motion (the "Proposed Order") would undermine these procedures entirely and effectively hand all remaining control of these cases over to Wells Fargo, N.A., administrative agent under the AMH Debtors' prepetition credit agreement ("Wells Fargo"). To put a fine point on it, on just six days' notice, in order to simply permit these chapter 11 cases to be wound down, Wells Fargo and the AMH Debtors seek to:

- undermine the global mediation that this Court directed to proceed fewer than 10 days ago, which is scheduled to commence next week before a judicial mediator, and which requires good-faith participation from participating parties;

- circumvent the sale proceeds distribution process ordered by the Court, and set forth plainly in the Sale Order, an order that was entered on notice and after a contested hearing and that requires sales proceeds to be held in a segregated account and requests for distribution of proceeds to be made upon reasonable notice; and

- grant Wells Fargo an absolute consent right over any chapter 11 plan and distribute to Wells Fargo a substantial majority of the AMH Debtors' assets outside of a chapter 11 plan, all without any adjudication of the extent or validity of Wells Fargo's liens or other claims that have been asserted by the Official Committee of Unsecured Creditors (the "Committee")[3] and without any determination of the allocation of the proceeds from the sale of the AMH Debtors' assets.

The requested relief should be denied.

---

[3] *See Motion of the Official Committee of Unsecured Creditors for (I) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates and (II) Exclusive Settlement Authority* [ECF No. 960] (the "Standing Motion").

2

2.  The Proposed Order makes clear what has been true all along: Wells Fargo and its lending syndicate are entirely in control of these chapter 11 cases, which were commenced at their command and insistence, have been run for their benefit and by their design and now must be wound up according to their strategy. By unilaterally slashing the borrowing base under its prepetition credit facility on August 13, 2019, Wells Fargo decided when to put the AMH Debtors into bankruptcy. By conditioning the AMH Debtors' use of their cash on the commencement of a sale process to maximize the value of Wells Fargo's collateral, Wells Fargo decided how these chapter 11 bankruptcy cases would proceed. By providing its consent only to the sale of the AMH Debtors' assets to BCE-Mach III LLC, Wells Fargo decided the outcome of that sale process, and, by withholding its consent from the Ad Hoc Noteholder Group's bid, which provided the only viable means to reorganize the AMH Debtors, Wells Fargo sought to ensure it was the only party in interest in these chapter 11 cases with any degree of control. Wells Fargo now seeks, in exchange for its agreement to allow the AMH Debtors to wind down these chapter 11 cases that have been run at its behest, to control that wind-down process by grabbing as much cash as it can from the sale proceeds as soon as those proceeds are received and virtually eliminating the rights of any other party in interest.

3.  Only six days ago, the Court appointed a mediator to aid in the resolution of these chapter 11 cases, with the goal of obtaining consensus among the participating parties with respect to the terms of a chapter 11 plan for the AMH Debtors. As this would be inconsistent with Wells Fargo's absolute control over these cases, it vocally opposed such mediation. Nevertheless, at the hearing to consider the mediation motion, the Court made clear that, while it would not require any party, including Wells Fargo, to attend mediation, it would not "tie the hands of others" that wanted to move forward without Wells Fargo and, if Wells Fargo did seek

to participate in negotiations, it would be required to do so in good faith.[4]  Unfortunately, Wells Fargo not only refuses to participate in mediation in good faith, it now seeks, through the Proposed Order (which was filed only three days after the Court made the foregoing statements), to deliberately undermine that process to ensure it maintains absolute control of these chapter 11 cases.  The Proposed Order, if entered, would tie the hands of the willing mediation participants by requiring the AMH Debtors to file a chapter 11 plan by February 28, 2020, *four days before* mediation is scheduled to begin.  Moreover, it would effectively absolve Wells Fargo of any obligation to negotiate in good faith—and, in fact, it would eliminate any need to negotiate with any other party at all—by granting it an absolute consent right over any chapter 11 plan, unqualified by even a reasonableness constraint.  Such control is unnecessary and inappropriate as a form of adequate protection, and directly undermines this Court's prior determinations at the mediation motion hearing.

4. Likewise, by requiring an immediate distribution to Wells Fargo of $150 million upon the closing of sale of the AMH Debtors' assets,[5] the Proposed Order would directly subvert this Court's orders and undermine pending motion practice commenced by the Committee and Wells Fargo itself.  The Court's order authorizing the sale of substantially all of the AMH Debtors' assets[6] establishes a process pursuant to which cash sale proceeds are to be placed in a segregated account and held pending further order of the Court, pursuant to confirmation of a chapter 11 plan or adjudication of a motion for distribution of sale proceeds after reasonable

---

[4] Tr. at 16:7–17 (Feb. 14, 2020).

[5] Proposed Order ¶ 3(g).

[6] *Order (I) Authorizing (A) Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (B) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (II) Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019; and (III) Granting Related Relief* [ECF No. 1013] (the "Sale Order").

notice and opportunity for objection. *See* Sale Order ¶ 7.[7] No such distribution motion has been filed by any party in these chapter 11 cases, and, while Wells Fargo has filed a motion asserting a lien on all of the sale proceeds and seeking to lift the automatic stay to seize a portion of the sale proceeds once received,[8] that motion was scheduled (by Wells Fargo) for hearing *more than a month from now* – on March 27, 2020 – and parties have until at least March 20, 2020 to object to such relief and to challenge Wells Fargo's assertion of a lien on 100% of the proceeds of a sale that included unencumbered assets and causes of action.[9] Tellingly, Wells Fargo scheduled the Lift Stay Motion to be heard *after* the Court is scheduled to consider the Committee's Standing Motion to pursue challenges to Wells Fargo's liens and other claims against Wells Fargo on March 23, 2020. This is consistent with the process established under the Court's

---

[7]   The Sale Order provides, in relevant part:

> Upon consummation of the Transactions, other than with respect to payment of Cure Costs, all cash proceeds of the Transactions (the "Sale Proceeds") (other than those required to be held in escrow pursuant to the terms of the PSA and this Order (the "Escrowed Amounts")) will be placed into a segregated, interest-bearing account established and maintained by the Debtors and will remain in that account until further order of this Court, which order, for the avoidance of doubt, may be the order confirming a chapter 11 plan for any Debtor. Without prejudice to the rights of any party in interest to seek emergency relief (and all other parties' rights to object thereto), reasonable notice of any request for the release of Sale Proceeds from such segregated account shall be filed with the Court and given to the Debtors and all parties in interest asserting a Claim to the Sale Proceeds and the rights of the Debtors and all parties in interest to object to the release of all or any part of the Sale Proceeds from the segregated account is hereby fully preserved . . . All Liens, Claims, and Interests will attach to the Sale Proceeds to the same extent and with the same priority as existed prior to consummation of the Transactions, subject to any claims, defenses and objections, if any, that the Debtors, their estates, or any other party in interest may possess with respect thereto. This provision is without prejudice to the rights of the AMH Agent to seek payment from the Sale Proceeds.

Sale Order ¶ 7.

[8]   *Administrative Agent's Motion for Relief from the Automatic Stay* [ECF No. 1120] ("Lift Stay Motion").

[9]   For the avoidance of doubt, the Ad Hoc Noteholder Group expects to challenge such assertion, including any assertion by Wells Fargo that it is entitled to replacement liens on unencumbered property of the AMH Debtors as a result of the diminution in value of its interest in its collateral. Furthermore, these chapter 11 cases have been run for the sole benefit of, and according to a process dictated by, Wells Fargo, and it is not entitled to adequate protection for any diminution resulting from a process from which it benefited and to which it consented.

5

existing cash collateral order[10] for challenges to the liens and claims of Wells Fargo to be asserted and adjudicated.  *See* Existing Order ¶ 21.

5.	It is difficult to see how requiring Wells Fargo to agree to extend the AMH Debtors' use of cash collateral through the time required to adjudicate its own motion practice and previously agreed procedures, and to conclude these chapter 11 cases (which were commenced at its behest and have served the singular purpose of maximizing the value of its collateral) could constitute "punishment," let alone collateral diminution, requiring a $150 million "adequate protection" payment in the form of an immediate distribution of a substantial majority of the AMH Debtors' assets, in contravention of existing Court-ordered procedures designed to safeguard the rights of all parties in interest and the protections provided under chapter 11 of the Bankruptcy Code.  And yet, this is precisely what the Motion seeks to achieve.

6.	While the Proposed Order states that the $150 million payment is purportedly without prejudice to remedies to which the Committee may be entitled in connection with any challenge pursuant to the Standing Motion, it provides no clear path to clawback of payments that are ultimately determined to be improper, nor is there any indication that Wells Fargo or its constituent lending syndicate have consented to jurisdiction over any such potential future clawback proceedings.  Attempting to collect improper payments from each bank in the syndicate, which includes at least ten institutions, some of which may have sold participations in their loans to additional institutions and would be sending the cash on to other parties, would undoubtedly be a lengthy, expensive and uncertain process.  Unsecured creditors should not be

---

[10]	*Amended Final Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Complex Case Procedures (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [ECF No. 600] ("Existing Order").

forced to bear the burden or the risk of additional procedural hurdles to undo payments made in contravention of existing Court-ordered processes.

7. Through the milestones and other termination provisions contained in the Proposed Order, the AMH Debtors have acquiesced to a process that would hold 100% of the AMH Debtors' value hostage for Wells Fargo and its lending syndicate. The Existing Order already provides stipulations by the AMH Debtors as to the validity of Wells Fargo's prepetition liens and claims. However, the Existing Order also provides a process for challenges to be brought by other parties in interest, and the Committee's Standing Motion seeks to do just that. Furthermore, the Sale Order provides a process for challenges to be brought in respect of any party's demand for cash proceeds distributions. By providing the ability for Wells Fargo to terminate the AMH Debtors' use of cash collateral (thereby effectively forcing these cases into chapter 7 of the Bankruptcy Code) if a plan is proposed that provides value to any other stakeholder or if the Committee is granted standing to challenge Wells Fargo's liens and claims, the Proposed Order renders these existing Court-ordered processes meaningless and virtually eliminates the protections afforded to all creditors under chapter 11 of the Bankruptcy Code. In other words, Wells Fargo has only consented to the use of cash collateral insofar as it is used to conclude these cases entirely for its benefit, making the purported runway to conclude these chapter 11 cases in accordance with the Bankruptcy Code entirely illusory.

8. Furthermore, by allowing Wells Fargo to mandate the terms of a wind-down budget that the AMH Debtors acknowledge is not truly consensual, the AMH Debtors have sought to undermine the process established in the Existing Order for the post-sale use of cash collateral pursuant to a wind-down budget prepared by the AMH Debtors and either agreed to by the other parties or otherwise imposed upon them by the Court (including through the imposition

of charges under section 506(c) of the Bankruptcy Code).  Existing Order ¶ 14.  If there is no agreement among the parties as to a consensual wind-down budget, the Court should be the ultimate arbiter of this dispute, as provided for under the previously agreed Existing Order.

9. In the Motion, the AMH Debtors assert that they have three options available to them at this juncture: (a) convert these cases to cases under chapter 7 of the Bankruptcy Code, (b) seek approval of a wind-down budget over the objection of Wells Fargo as provided for under paragraph 14 of the Existing Order or (c) acquiesce to Wells Fargo's demands for the continued use of cash collateral.  The AMH Debtors assert they have chosen acquiescence because of the cost of the alternatives.  However, in doing so, the AMH Debtors have effectively ceded control over these chapter 11 cases and, as explained above, undermined previously agreed and Court-ordered processes.

10. While it is true that conversion of these cases to cases under chapter 7 of the Bankruptcy Code likely would entail significant expense and delay, such costs would be primarily borne by the AMH Debtors' secured creditors.  Unsecured creditors, on the other hand, would largely be left in the same position, though benefited by an estate fiduciary unbound by Wells Fargo's demands and empowered to investigate unencumbered estate causes of action for the benefit of unsecured creditors.  Litigation over a nonconsensual wind-down budget would likewise entail significant additional expense for Wells Fargo and the lending syndicate, and present the added risk of further charges against their collateral under section 506(c) of the Bankruptcy Code.  In other words, Wells Fargo has immense incentives to avoid conversion or wind-down budget litigation.  It is a wonder, then, why the AMH Debtors have agreed to the onerous terms of the Proposed Order demanded by Wells Fargo, effectively ceding all remaining

control of these cases, in order to avoid alternatives that would be far more detrimental to Wells Fargo than any other party in interest in these chapter 11 cases.

11. For all the reasons set forth herein, the Ad Hoc Noteholder Group respectfully requests that the Court deny entry of the Proposed Order and grant the Ad Hoc Group such other or further relief as deemed appropriate.

[*Remainder of Page Intentionally Left Blank*]

Dated:   February 24, 2020            Respectfully Submitted,

**RAPP & KROCK, PC**

*/s/ Henry Flores*
Henry Flores
Texas State Bar No. 00784062
Kenneth Krock
Texas State Bar No. 00796908
1980 Post Oak Blvd, Suite 1200
Houston, TX 77056
Telephone: (713) 759-9977
Facsimile:  (713) 759-9967
Email:   hflores@rappandkrock.com
            kkrock@rappandkrock.com

- and -

**DAVIS POLK & WARDWELL LLP**

*/s/ Damian S. Schaible*
Damian S. Schaible (admitted *pro hac vice*)
Lara Samet Buchwald (admitted *pro hac vice*)
David Schiff (admitted *pro hac vice*)
Stephanie P. Massman (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email:   damian.schaible@davispolk.com
            lara.buchwald@davispolk.com
            david.schiff@davispolk.com
            stephanie.massman@davispolk.com

**COUNSEL TO THE AD HOC NOTEHOLDER GROUP**

**Certificate of Service**

  The undersigned certifies that on February 24, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

           */s/ Henry Flores*
           Henry Flores