

ENTERED
04/27/2021

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| **ALTA MESA RESOURCES, INC.,** *et al* | § | **CASE NO: 19-35133** |
| | § | |
| **ALTA MESA HOLDINGS, LP** | § | **CASE NO: 19-35134** |
| | § | |
| **ALTA MESA HOLDINGS GP, LLC** | § | **CASE NO: 19-35135** |
| | § | |
| **OEM GP, LLC** | § | **CASE NO: 19-35136** |
| | § | |
| **ALTA MESA FINANCE SERVICES CORP.** | § | **CASE NO: 19-35137** |
| | § | |
| **ALTA MESA SERVICES, LP** | § | **CASE NO: 19-35138** |
| | § | |
| **OKLAHOMA ENERGY ACQUISITIONS, LP** | § | **CASE NO: 19-35139** |
| | § | |
| | § | |
| **KINGFISHER MIDSTREAM, LLC** | § | **CASE NO: 20-30218** |
| | § | |
| **KINGFISHER STACK OIL PIPELINE, LLC** | § | **CASE NO: 20-30219** |
| | § | |
| **OKLAHOMA PRODUCED WATER SOLUTIONS, LLC** | § | **CASE NO: 20-30220** |
| | § | |
| **CIMARRON EXPRESS PIPELINE, LLC** | § | **CASE NO: 20-30221** |
| | § | |
| **SRII OPCO GP, LLC** | § | **CASE NO: 20-30222** |
| | § | |
| **SRII OPCO, LP,** | § | **CASE NO: 20-30223** |
| | § | **Jointly Administered** |
| **Debtors.** | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

Tribolet Advisors, LLC ("Tribolet"), the Administrator under the Debtors' confirmed plan, and Triumph Energy Partners ("Triumph") dispute the secured status of Triumph's Proof of Claim. Triumph owns working interests in oil and gas leases covered by a Pooling Order. When the Debtors gave Triumph notice of their intent to drill new wells on the unit, Triumph elected to

receive a $330,000.00 bonus instead of participating as a working interest owner in the new wells.
Triumph argues that the Oklahoma Lien Act grants it a security interest in the Debtors' oil and gas
assets on account of the unpaid bonus.  However, the Oklahoma Lien Act only grants Triumph a
lien to secure the obligations of a first purchaser of oil and gas to pay the sales price.  The Debtors
were not first purchasers of oil and gas and the bonus obligation was not an obligation to pay a
sales price.  Thus, the Oklahoma Lien Act does not secure the Debtors' obligation to pay Triumph
the Pooling Order bonus.  Accordingly, Triumph's Proof of Claim is only allowed as a general
unsecured claim.

## BACKGROUND

Triumph owns working interests in oil and gas leases located in Section 34 – Township 18
North – 6 West, in Kingfisher County, Oklahoma.  (ECF No. 2375 at 2).  Under Oklahoma
Corporation Commission Pooling Order No. 654961, Triumph's interests are pooled as part of a
640-acre horizontal well unit.  (ECF No. 2375 at 2).  Oklahoma Energy Acquisitions, LP ("OEA"),
a Debtor in this case, was the designated operator of the Pooling Unit.  (ECF No. 2375 at 2).  OEA
drilled the Steele 1806 #1-34 MH well ("Steele 1 Well") on the Pooling Unit in 2016.  (ECF No.
2376 at 3).  Triumph participated in the Steele 1 Well as a working interest owner.  (ECF No. 2376
at 3).

In 2019, OEA gave Triumph notice of its intent to drill three new wells within the Pooling
Unit.  (ECF No. 2376 at 4).  Triumph declined to participate as a working interest owner in the
new wells.  (ECF No. 2375 at 2).  Instead, Triumph exercised its right under the Pooling Order to
receive a cash bonus in lieu of royalty interests.  (ECF No. 2375 at 2).  Triumph's cash bonus
required under the Pooling Order was $330,000.00.  (ECF No. 2375 at 2).  OEA never completed

any of the three new wells.  (ECF No. 2376 at 4).  Accordingly, OEA never produced any oil and gas from the three proposed wells.  (ECF No. 2376 at 4).

The Debtors filed petitions under chapter 11 of the Bankruptcy Code on September 11, 2019.  (ECF No. 1).  The Court entered an order confirming the Debtors' chapter 11 plan of reorganization on May 27, 2020.  (ECF No. 1757).  Tribolet serves as the Administrator under the confirmed plan.

Triumph filed Proof of Claim No. 70, which asserted a $330,000.00 secured claim against the Debtors.  On September 28, 2020, Tribolet filed its Ninth Omnibus Objection to Proofs of Certain Claims.  (ECF No. 2162).  The Objection included an objection to the secured status of Triumph's Proof of Claim.  Tribolet and Triumph each moved for summary judgment on the secured status of Triumph's Proof of Claim.  (ECF Nos. 2375, 2376).  The Court took the motions under advisement on February 4, 2021.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  The "allowance or disallowance of [a] claim[] against the estate" is a core proceeding under 28 U.S.C. § 157(b)(2)(B).  Venue is proper in this District consistent with 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a

reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the [] court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence

of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial. If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## DISCUSSION

In order to protect oil and gas interest owners, the Oklahoma Lien Act creates an oil and gas lien "[t]o secure the obligations of a first purchaser to pay the sales price."  52 Okla. Stat. § 549.3.  Interest owners are defined as persons "owning an interest of any kind or nature in oil and gas rights before the acquisition thereof by a first purchaser."  52 Okla. Stat. § 549.2(6).  Oil and gas rights include rights under pooling orders.  52 Okla. Stat. § 549.2(9)(a)(5).

"Passed in 2010, the Oklahoma Lien Act was meant to cure defects found in the state's Lien Act of 1988 by the Delaware bankruptcy court in *In re SemCrude*, 407 B.R. 112 (Bankr. D.

Del. 2009)." *In re First River Energy, LLC*, 986 F.3d 914, 929 (5th Cir. 2021).[1]  The court in

*SemCrude* held "that Oklahoma producers were subject . . . to UCC rules governing choice-of-law

and priority and perfection of security interests." *Id.*  In response, the Oklahoma legislature acted

to provide greater protections for producers. *Id.*

  As the Oklahoma Court of Civil Appeals explained, "the purpose of the statute was to give

Oklahoma producers and royalty owners a first-priority lien to secure payment for their interest in

oil and gas sold to a first purchaser." *Gaskins v. Texon, LP*, 321 P.3d 985, 990 (Okla. Civ. App.

2013).  That court went on to state that:

> [The Oklahoma Lien Act] strengthens the rights of Oklahoma interest owners in
> three (3) ways: (1) Oklahoma oil and gas interests are now governed by real
> property law, which designates the applicable law by the state in which the
> wellhead is located; (2) Oklahoma interest owners can now obtain a lien that will
> remain attached until a first purchaser has paid the full purchase price of produced
> oil; and (3) the Lien Act explicitly and unbendingly grants superior priority to
> Oklahoma interest owners above all other lienholders and U.C.C. Article 9 secured
> creditors.

*Id.* at 991.  The lien "attaches to oil and gas before extraction and follows the oil and gas upon

severance.  It also attaches to the proceeds of the sale." *Id*. at 990-91.

  Liens created by the Oklahoma Lien Act are "clearly intended to ensure that interest owners

receive[] payment from first purchasers of oil and gas," but such liens are not necessarily "prior

and superior to all other lienholders." *White Star Petroleum, LLC v. MUFG Union Bank, N.A.*,

---

[1] The Oklahoma Legislature revised certain provisions of the Oklahoma Lien Act in 2021.  2021 Okla. Sess. Law
Serv. Ch. 93 (S.B. 632).  The 2021 revisions are not relevant to this dispute. *See id.*

480 P.3d 887, 894 (Okla. 2020). "The 2010 amendments were not intended to insulate traditional owners from liabilities they incurred in the operation of their well sites." *Id.*

The statute and case law could not be more clear that the Oklahoma Lien Act provides oil and gas interest holders security when oil and gas is sold to a first purchaser. Triumph's purported lien is not based on the sale of hydrocarbons to a first purchaser. Triumph claims the Oklahoma Lien Act applies to an operator's obligation to pay a bonus pursuant to a pooling order. The Oklahoma Lien Act does no such thing.

As a working interest owner under the Pooling Order, Triumph is correct that is an "interest owner" of "oil and gas rights" as defined by the Oklahoma Lien Act. 52 Okla. Stat § 549.2. This means that Triumph possesses a lien "[t]o secure the obligations of a first purchaser to pay the sales price." *Id.* at § 549.3(A). However, a lien "[t]o secure the obligations of a first purchaser to pay the sales price," is not the same as a lien to secure any amounts owed to Triumph on account of Triumph's oil and gas rights. This is a dispute between interest owners relating to the non-payment of an opt-out bonus. There was never a first purchaser because there was never any production from the proposed new wells. Even if OEA had completed the new wells and produced oil and gas, the bonus arose from Triumph's decision to *opt out* of its interests in the new wells. Thus, had the new wells been completed, it is not even clear that Triumph would have had "any right, title or interest" in production from the new wells. *See* 52 Okla. Stat. § 549.2(9)(a).

Triumph also points out that liens under the Act expressly attached to oil and gas prior to severance. As such, Triumph argues that its lien attached to OEA's assets even though the new wells never produced oil or gas. That argument misses the mark. While the lien may attach to oil and gas prior to severance from the ground, the plain text of 52 Okla. Stat. § 549.3(A) makes clear that the lien only exists "to secure the obligations of a first purchaser to pay the sales price." The

Act does not grant Triumph a free-wheeling lien to secure any and all amounts owed.  Triumph cannot look to § 549.3 to ensure payment of amounts that are not obligations of a first purchaser.

Finally, Triumph urges the Court to find that its claim is secured because the Steele 1 Well "has been producing from the [Pooling] Unit since May of 2017," and the "total net proceeds received by the Debtor from the Steele [1] Well prior to the sale of all the Debtor's assets exceeds $800,000." (ECF No. 2375 at 6).  However, production from the Steele 1 Well is entirely unrelated to this dispute.  The Steele 1 Well was the original well which OEA completed on the Pooling Unit.  Triumph participated in the Steele 1 Well.  Triumph does not allege that OEA failed to remit royalties related to the Steele 1 Well or that Triumph is owed any amounts because first purchasers failed to pay the sales price.  OEA's obligation to pay the bonus to Triumph is entirely unrelated to the Steele 1 Well.  The proceeds of the Steele 1 Well do not secure OEA's obligation to pay Triumph a bonus on account of the proposed new wells under § 549.3.

## CONCLUSION

A separate order will be entered.

 SIGNED 04/27/2021

_____
Marvin Isgur
United States Bankruptcy Judge