United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 28, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 19-35133 |
| ALTA MESA RESOURCES, INC., *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

As claims administrator acting on behalf of the general unsecured creditors of Alta Mesa Holdings, Kenneth Green objects to claims 900, 904, and 920 filed by U.S. Specialty Insurance Company (USSIC) on three grounds. First, Green argues that USSIC already availed itself of the remedy available to it in the relevant agreement and therefore has no further claim to bring. Alternatively, Green asserts that claim 900 should be disallowed as a contingent claim for which the debtor is co-liable with USSIC under 11 U.S.C. § 502(e)(1)(B). Finally, Green asserts that claims 904 and 920 should be disallowed in any case as duplicative of 900. Both parties filed motions for summary judgment. For the reasons stated below, Green's motion for summary judgment is granted. USSIC's motion for summary judgment is denied.

## BACKGROUND

According to the proofs of claim filed by USSIC, as of the petition date (September 11, 2019), $16,378,100.00 in surety bonds had been issued on behalf of USSIC for obligations owed by Alta Mesa Holdings, LP, Alta Mesa Services, LP, and Oklahoma Energy Acquisitions, LP. (ECF No. 3345-1 at 10). The bonds favor various government entities, which the parties refer to as the "bond obligees." (ECF No. 3345-1 at 10).

The three debtors on behalf of which the bonds were issued were also parties to the Payment and Indemnity Agreement (PIA) with USSIC. (ECF No. 3345-1 at 10). The terms of the

PIA obligate the debtors to pay various amounts, including indemnification to USSIC for demands on the bonds, interest on unpaid amounts owed to USSIC, and fees and expenses USSIC incurs in connection with the bonds or enforcing the debtors' obligations under the PIA. (ECF No. 3345-1 at 10). The PIA provides that the debtors are jointly and severally liable for the obligations in the agreement, including the indemnification of USSIC. (ECF No. 3345-1 at 17). It further provides that USSIC can require the debtors to provide collateral at any time and in any manner acceptable to USSIC to secure the debtors' obligations. (ECF No. 3345-1 at 17).

On April 10, 2019, USSIC made a demand on the debtors to provide cash collateral in the amount of the total penalty amount of the bonds ($16,378,100.00), which the debtors either refused or failed to do. (ECF No. 3345-1 at 11). In May of 2019, USSIC exercised its right under the PIA to take a security interest in the debtors' property for the failure to provide collateral after the demand was made. (ECF No. 3345 at 4). USSIC filed financing statements perfecting its security interest in substantially all of the Debtors' property. (ECF No. 3345-1 at 14).

USSIC's proofs of claim indicate that the claim amount includes "all indebtedness, including without limitation" premiums, attorneys fees, and expenses incurred by USSIC and its managing agent. (ECF No. 3345-1 at 10). USSIC asserts in the proofs of claim that, as of the petition date, the debtors were in default in the amount of $16,378,100.00 under the PIA for the failure to provide cash collateral, which formed the basis of USSIC's secured claim. (ECF No. 3345-1 at 11). The claim amount mirrors the total penalty amount of all the issued bonds based on Exhibit A, filed as an attachment to the proofs of claim. (ECF No. 3345-1 at 12). However, the proof of claim and the attached description each indicate that the claim also includes other fees, expenses, and interest. (ECF No. 3345-1 at 2). USSIC's response to Green's motion for summary judgment further suggests that USSIC's claim also includes premiums owed by the debtors to

USSIC in the amount of $483,722.84. (ECF No. 3369 at 9). The bond obligees have not called the bonds, and USSIC has provided no evidence that they have made any payments to the bond obligees. (ECF No. 2 at 12).

Debtors filed chapter 11 petitions on September 11, 2019. (ECF No. 3345-1 at 10). In a separate adversary proceeding, this Court held that another creditor, Wells Fargo, held liens which were entitled to priority over the liens reflected in the financing statements USSIC filed when the debtors failed to provide the cash collateral. (Adv. No. 20-02147, ECF No. 34). As a result, USSIC was not entitled to recover any of the sale proceeds from the debtors' sale of substantially all their assets. (Adv. No. 20-03147, ECF No. 34). Green then filed an objection to USSIC's proofs of claim on June 7, 2021, requesting that the Court disallow the claims. (ECF No. 3345 at 4). After USSIC responded to the objection, both parties filed motions for summary judgment on the issues of whether: (i) the claims should be disallowed because the USSIC had already availed itself of its remedy under the PIA by filing the financing statement and no longer has an outstanding claim; (ii) the claims should be disallowed under § 502(e)(1)(B) of the Bankruptcy Code; and (iii) even if USSIC has a valid claim, claims 904 and 920 should be disallowed as duplicative of claim 900.

## JURISDICTION

The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## LEGAL STANDARD

Both parties have filed motions for summary judgment. The summary judgment standard is found in Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 56. Federal Rules of Bankruptcy Procedure 7056 and 9014 apply the Federal Rules of Civil Procedure to a contested

matter in a bankruptcy proceeding such as this one. FED. R. BANKR. P. 7056, 9014(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is material if its resolution could affect the outcome of the action. *Wyatt v. Hunt Plywood Co. Inc.*, 297 F.3d 405, 409 (5th Cir. 2002). In ruling on a motion for summary judgment, the Court may rely on materials in the record along with documents and other materials cited to and attached by the parties. FED. R. CIV. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## DISCUSSION

USSIC's claim for $16,378,100.00, plus interest, must be dismissed (i) as contingent under § 502(e)(1)(B) and (ii) because USSIC cannot demonstrate it suffered any current damages as a result of the debtors' failure to provide the cash collateral.

**I.    THE EFFECT OF THIS COURT'S RULING ON THE PRIORITY OF WELLS FARGO'S LIEN**

Green suggests that because this Court held that Well Fargo's security interest in the debtors' property was superior to that of USSIC's, the claim was wiped out entirely by the asset sale, and there is no other basis upon which USSIC can recover. (ECF No. 3345 at 4). But this argument misinterprets language in the PIA which plainly gave USSIC the right to assert a security

interest upon the debtors' failure to provide collateral but did not mandate that this replaced USSIC's right to other remedies at law. (ECF No. 3345-2 at 75).

The PIA provides that "not in limitation of any other provision of this Agreement and as security for all of the provisions of this Agreement and any other indebtedness or liabilities of [the debtors] to the Surety, . . . if [the debtors] fail to provide any required collateral after demand therefor," the debtors granted USSIC a security interest in all the debtors' property. (ECF No. 3345-2 at 75). This language shows that the grant of the security interest secures USSIC's claim against the debtors if they failed to comply with a demand for collateral but does not serve as the sole and final remedy for the debtors' breach of contract. USSIC's perfection of its security interest after exercising its right to demand collateral did not relieve the debtors of their obligations to indemnify USSIC, pay premiums, or other liabilities under the PIA—all of which are "other provisions" of the PIA which the security interest was explicitly not intended to limit.

The fact that USSIC recovered nothing from the sale of property in which it had a security interest does not mean that USSIC would have no grounds to base a claim against the debtors if the debtors were found liable to USSIC under the indemnity or premium provisions of the PIA. Instead, the legal effect of recovering nothing from the sale of the property was that any valid claim held by USSIC is now unsecured.

## II.   DISALLOWANCE UNDER § 502(E)(1)(B)

Green asserts alternatively that USSIC's claim should be disallowed under § 502(e)(1)(B) of the Code as a contingent claim for which the debtor is co-liable with the claimant. (ECF No. 3345 at 5,6). USSIC argues that § 502(e)(1)(B) should not apply to its claim because it is not a contingent claim for indemnification but rather a direct claim for breach of the PIA based on the debtor's failure to provide the cash collateral. (ECF No. 3348 at 10). It is irrelevant that the date

of the reimbursement obligation arose when the collateral was due to be posted. Collateral serves as security for the obligation. If the underlying obligation is a contingent claim for which the debtor is co-liable with the claimant, it is disallowed. The Court agrees with Green that the claim should be disallowed as a contingent claim for indemnification. *See Pepper v. Litton*, 308 U.S. 295, 305 (1939) (determining that bankruptcy courts are properly "invoked to the end that …substance will not give way to form, that technical considerations will not prevent substantial justice from being done.").

Section 502(e)(1)(B) of the Code states that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of the creditor, to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." 11 U.S.C. § 502(e)(1)(B). Embedded in this language are three elements necessary for a claim against the debtor to be disallowed under this provision: (i) the debtor is co-liable with the claimant; (ii) the claim is contingent; and (iii) the claim is for "reimbursement or contribution." Courts interpret a claim for indemnity to be a claim for "reimbursement or contribution." *In re RNI Wind Down Corp.*, 369 B.R. 174, 181-182 (Bankr. D. Del. 2007) (quoting *In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. 2005)). A claim for indemnification is generally considered contingent unless the claimant has actually paid the third party. *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 617 (Bankr. S.D. Tex. 2004). Finally, the debtor's co-liability with the claimant is implicit in an indemnity arrangement such as the one in this case, where the arrangement between a debtor and a claimant is one of a surety who has issued bonds for which the obligor (debtor) has agreed to indemnify it.

This Court's reasoning in *Tri-Union* is informative here. *Tri-Union* also involved a surety filing a claim against a debtor-obligor based on bonds it had issued in favor of a third-party beneficiary. *Tri-Union*, 314 B.R. at 615. The Court determined in that case that the surety's claim was contingent because the third-party beneficiary had not yet made a claim against the bonds. *Id*. at 617. Like the surety in *Tri-Union*, USSIC argues that its claim is not based on co-liability but rather on a direct obligation under the PIA. However, this Court stated in Tri-Union that "the key question before the Court is whether the existence of the direct claim precludes the application of § 502(e). Although the case law on this issue is admittedly mixed, the Court concludes that the existence of a separate, direct obligation does not eliminate the application of § 502(e)." *Tri-Union*, 314 B.R. at 618.

Regardless of the mechanics of how the claim arose, the economic result is the same. The reading of the Code USSIC asks the Court to adopt leads to untenable results: if a surety is allowed to recover money it claims it is owed for a debtors' breach of its duty to provide cash collateral upon demand, and bond obligees never make a claim on the bonds but instead make a claim in the debtor's bankruptcy, the double payment result that Congress wrote § 502(e) to avoid could come to fruition. Even though, here, the bond obligees never brought any kind of direct claim against the debtors that resulted in a double payment, it would still be inequitable to allow USSIC to pocket over $16 million when it is not clear whether USSIC would ever have had to actually use the cash collateral as indemnification for payment on the bonds which have yet to be called.[1]

Assume that a debtor was required to post $1,000,000 of collateral concerning a contingent claim. Further assume that the contingency never arose. Under USSIC's theory, it would be

---

[1] The PIA provides that the collateral demanded by USSIC was meant to act as a "reserve" for the surety to draw on should any actual liability under the bonds ever arise. (ECF No. 3345-3 at 17).

paid—and get to retain—the $1,000,000. In reality, the $1,000,000 is collateral which would *not* be retained by the surety unless a contingency arose. The contingency in this case did not arise as of the plan's effective date, so USSIC cannot use the debtors' bankruptcy as an avenue to retain a $16 million windfall. This reading of § 502(e)(1)(B) is consistent with the legislative history of the Code. That history provides that this provision "requires disallowance of the claim for reimbursement or contribution of a codebtor, surety, or guarantor of an obligation of the debtor, unless the claim of the creditor on such obligation has been paid in full." HOUSE AND SENATE REPORTS (REFORM ACT OF 1978) note to 11 U.S.C. § 502(e).

Attempting to distance itself from the reach of § 502(e)(1)(B), USSIC argues that its claim is distinct from its role as surety because it is a direct claim for breach of contract for which other courts have held a surety may recover monetary damages. But this argument gets the claim nowhere. "In Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex.App.2001)). The lacking element here is actual, current damages sustained by USSIC as a result of the debtors' failure to provide cash collateral.

USSIC provides no evidence that it has made any payments to the bond obligees. The cases USSIC cites to argue that monetary damages are an appropriate remedy for breach of a duty to provide collateral only serve to strengthen the Court's opinion that they are not appropriate here. For example, the court in *Allied World* found that while monetary damages might ultimately be an appropriate remedy for breach of an obligation to provide collateral, injunctive relief was not

8 / 11

appropriate where no claims had been made against bonds, and the surety had not paid any claims. *Allied World Specialty Ins. Co. v. Abat Lerew Constr., LLC*, No. 8:16CV545, 2017 WL 1476131 at *5 (D. Neb. Apr. 24, 2017).  Another case cited by USSIC involved a finding of monetary damages, but only after the surety in that case had actually paid obligees a settlement award.  *Ins. Co. of the W. v. Afford-A-Home, Inc.*, No. C14-5350 BHS, 2014 WL 6809204 at *7 (W.D. Wash. Dec. 2, 2014).

Despite dressing the claim as one for breach of contract rather than indemnification, the claim is rooted, ultimately, in a right to contribution or reimbursement for a liability for which the debtors are co-liable with USSIC.  Green's motion for summary judgment is granted to the extent that USSIC's claim reflects the value of the cash collateral the debtors failed to provide ($16,378,100.00) and the interest and fees associated with that amount.

### III. DISALLOWANCE OF CLAIMS 904 AND 920 AS DUPLICATIVE

Green finally argues that even if a claim against one of the debtors should be allowed, the other two should be disallowed as duplicative.  (ECF No. 3345 at 4).  USSIC counters that because the debtors were jointly and severally liable for obligations under the PIA, USSIC has the right to file a claim against each of the debtors.  (ECF No. 3061 at 3).  USSIC argues that because the debtors were not substantially consolidated under the terms of the plan, the debtors remain jointly and severally liable.[2]  (ECF No. 3061 at 3).  Green suggests that allowing all three claims means that USSIC would be allowed to recover more than its proportional share of the limited funds available for distribution by recovering three times rather than once.  But that is exactly what USSIC bargained to be able to do when it negotiated for joint and several liability under the PIA.

---

[2] USSIC concedes that it is not entitled to recovery above its allowed claim amount but notes that outcome is not possible given the limited funds available to general unsecured creditors.  (ECF No. 3061 at 5).

The Plan does not directly comment on whether multiple claims by one party against multiple jointly and severally liable debtors will be permitted. The prefatory language to the Classification of Claims and Interests section of the Plan does, however, provide that

> "This joint Plan and the classifications set forth herein shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a substantive consolidation of any of the Debtors, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal entities." (ECF No. 1757 at 28).

The Court has determined that USSIC is not entitled to recover the $16,378,100.00 claim which mirrors, dollar for dollar, the bond penalty amount. It is not necessary, then, to determine whether the claims are duplicates on that point. However, USSIC also contends that the debtors have not paid premiums due under the PIA totaling $483,722.84. (ECF No. 3369 at 9). To the extent USSIC's claim reflects the premium obligations the debtors owed to USSIC, the claim is a prepetition unsecured claim is not subject to disallowance as a contingent claim under § 502 (e)(1)(B).

At this point, it is unclear whether the parties dispute the factual basis for or existence of any additional claim beyond damages for the debtors' failure to provide cash collateral, including the $483,722.84 cited by USSIC. Green never addresses the premiums in his objection or motion for summary judgment. (ECF No. 3345 at 9). Therefore, the Court grants Green's motion for summary judgment only as to the $16,378,100.00 USSIC claims it is owed for the debtors' failure to comply with the demand for collateral.

## CONCLUSION

Green's motion for summary judgment is granted. USSIC's motion for summary judgment is denied.

A separate order will be entered.

SIGNED 12/28/2022

_____
Marvin Isgur
United States Bankruptcy Judge