United States Bankruptcy Court
Southern District of Texas
**ENTERED**
June 22, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| **ALTA MESA RESOURCES, INC.,** *et al.*, | § § | **CASE NO: 19-35133** |
| Debtors. | § § § | **CHAPTER 11** |
| **MUSTANG GAS PRODUCTS, LLC,** | § § | |
| Plaintiff, | § § | |
| VS. | § § | **ADVERSARY NO. 20-3114** |
| **WELLS FARGO, NATIONAL ASSOCIATION,** *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION PARTIALLY RECONSIDERING PRIOR DECISION

The defendants filed a motion to reconsider the Court's opinion denying the defendants' motion for summary judgment. The defendants argue that (i) the Court erred in denying the motion on the grounds of the defendants' § 544 argument and (ii) the Court improperly failed to consider the defendants' second argument that Mustang's action is barred by the language of a cash collateral order. The Court denies the motion to reconsider its opinion concerning the § 544 argument. With respect to the cash collateral argument, the Court finds that a fact issue remains as to whether Mustang held a covenant running with the land burdening the subject property at the time of its sale. Upon reconsideration, the Court again denies the defendants' motion for summary judgment.

### BACKGROUND

Wells Fargo was a creditor in Alta Mesa's bankruptcy and the Administrative Agent under the Debtors' prepetition credit facility. (ECF No. 52 at 3). Mustang entered into gas purchase

agreements which allegedly created or otherwise assigned to Mustang covenants running with the land, burdening certain mineral estates. (ECF No. 52 at 4). OEA, an Alta Mesa affiliate, subsequently acquired the allegedly subservient estates. (ECF No. 52 at 4). Alta Mesa and its affiliates filed under chapter 11 on September 11, 2019. (Case No. 19-35133, ECF No. 1).

This Court entered final and amended cash collateral orders on November 21, 2019, November 30, 2019, and February 25, 2020. (Case No. 19-35133, ECF Nos. 567, 600, 1250). The cash collateral orders acknowledged that Wells Fargo (as a Prepetition Loan Party) held "senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on certain assets . . . subject only to Permitted Prior Liens." (Case No. 19-35133, ECF No. 567 at 5, ECF No. 600 at 5, ECF No. 1250 at 5). The alleged Mustang covenants are not defined as a "Permitted Prior Lien" or otherwise referenced in the orders. (Case No. 19-35133, ECF No. 567 at 12, ECF No. 600 at 12, ECF No. 1250 at 12). The cash collateral orders provided that this admission by the Alta Mesa Debtors was binding on all parties in interest "for all purposes" unless a "part[y] interest" challenged the order within a certain timeframe. (Case No. 19-35133, ECF No. 567 at 27, ECF No. 600 at 27, ECF No. 1250 at 28). Mustang, a party in interest, did not challenge the cash collateral orders.

The Debtors sold substantially all their assets, including the property allegedly subject to Mustang's covenants, free and clear of all liens, claims, interests, an encumbrances under § 363 of the Bankruptcy Code in a sale authorized by this Court which closed on April 9, 2020. (ECF No. 52 at 5). The debt secured by Wells Fargo's liens exceeded the sale proceeds, so Mustang received no distribution from those proceeds. (ECF No. 52 at 14). Mustang filed a complaint on April 28, 2020, seeking to recover proceeds from the sale and a declaration from the Court that its alleged

covenants constitute real property interests burdening the assets (and therefore the proceeds) associated with the April 2020 § 363 sale. (ECF No. 52 at 5).

The Court confirmed the Debtors' Plan of Liquidation on May 27, 2020. (ECF No. 52 at 5). The Plan created the AMH Plan Administration trust, which is the successor to OEA and its estate. (ECF No. 52 at 5).

At a hearing held on July 2, 2020 on the defendants' motion to dismiss Mustang's complaint, the Court determined that it was proper to convert the motion into a motion for summary judgment. (ECF No. 47 at 5). The defendants then filed a revised motion in which they argued two grounds for summary judgment. First, the defendants argued that Mustang's interests are unrecorded, so they are not enforceable against a bona fide purchaser under § 544. Second, the defendants argued that whatever (if any) interest Mustang did have in the assets was effectively wiped out by the two-fold effect of language in the cash collateral orders granting a "first priority lien" to Wells Fargo and the fact that the sale proceeds did not exceed the value of Wells Fargo's lien. The Court issued an opinion denying summary judgment on the first basis, but did not address the second basis. (ECF No. 71). The defendants filed a motion to reconsider. (ECF No. 76). The motion to reconsider argues that the Court erred both in denying summary judgment on the first ground and in not considering the second, alternative basis on which summary judgment could have been granted. (ECF No. 76).

The Court denies the motion to reconsider to the extent it contends that the Court erred in ruling on the § 544 issue. The Court did not conclude that Wells Fargo would lose on the § 544 argument; the Court merely concluded that sufficient factual disputes existed. The motion to reconsider does not persuade the Court of an absence of a fact issue under § 544. The Court agrees

with the defendants that it is appropriate to consider the cash collateral argument for summary judgment, but now finds that summary judgment is not warranted on those grounds.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 7056 makes applicable Federal Rule of Civil Procedure 56 in adversary proceedings. FED. R. BANKR. P. 7056. Under Rule 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "'material if its resolution in favor of one party might affect the outcome of'" the litigation. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.2000) (per curiam)). A court construes the facts "in the light most favorable to the non-moving party." *Id*. A motion for summary judgment cannot be overcome by "'conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence.'" *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir.2012)). The movant bears the initial burden of showing that no genuine fact issue remains in dispute. *Id*.

**DISCUSSION**

For the purposes of ruling on the summary judgment issue, the Court must view the pleadings in the light most favorable to the non-moving party, Mustang.[1] Accordingly, the Court will assume that Mustang had a covenant running with the land.

The defendants cite to language in three cash collateral orders which state that Wells Fargo held a first priority lien on the property which was later sold. (ECF Nos. 567, 600, 1250). However, that lien could only burden the Debtors' property. To the extent that Mustang can prove it held a covenant running with the land, its interest would be a real property interest—as opposed to a security interest subject to the lien priority language in the cash collateral order. *See Vranesevich v. Pearl Craft*, 241 P.3d 250, 254 (Okla. App. Div. 4 2009)(finding that a covenant running with the land is a real property interest, which is not destroyed by a subsequent sale of the subservient estate); *see also Richardson v. Mustang Fuel Corp.*, 772 P.2d 1324 (Okla. 1989)(finding that an obligation to supply gas and right of way exchanged under a purchase agreement touched the land and therefore constituted covenants real). Accordingly, if the property subject to the covenant was sold free of Mustang's interest, Mustang would theoretically have a right to share in the proceeds of the sale attributable to *Mustang's* property interest, regardless of the priority of liens attached to the *Debtors'* real property interest.

The motion for summary judgment does not argue—nor could it—that anything in the cash collateral orders would extinguish Mustang's real property interest in the land without

---

[1] Mustang, at this stage, has presented sufficient evidence to show that it has a genuine argument that its interest in the sold property is a covenant running with the land. As the Court noted in its preliminary opinion on the motion for summary judgment, a contract in which ExxonMobil conveyed property to Mustang contains language purporting that the interests conveyed to Mustang were covenants running with the land. (ECF No. 71 at 3). Additionally, certain gas purchase agreements to which Mustang was counterparty grant Mustang certain rights which, at least at first blush, provide a basis for Mustang to reasonably argue it held a real property interest. (ECF No. 71 at 4).

compensation. The cash collateral order contains language conceding that Wells Fargo held a first priority lien, but the order does not contain language finding that Wells Fargo held that lien free and clear of other existing, non-lien interests (such as Mustang's covenant) in the property. This reading is in line with the purpose of a cash collateral order, which Mustang correctly points out is meant to maintain the status quo and protect a party's existing interest—not expand it by depriving another party of its real property interests via negative notice. The result of this interpretation, should Mustang prevail on the issue at trial, would be that Wells Fargo's lien did not "prime" Mustang's covenant. Rather, a sale of the assets free and clear of the covenant would mean that proceeds should be allocated between the value of the property interest in which Wells Fargo (among other creditors) had a security interest and the value of the property interest subject to Mustang's covenant.

The briefing at times conflates the "free and clear" language granting rights to the purchaser under the sale order with the grant of the lien to Wells Fargo in the cash collateral order. The sale order purported to sell the assets "free and clear of all claims, liens, liabilities, rights, interests and encumbrances" to the extent allowed by § 363, and Mustang did not object to the sale. (Case No. 19-35133, ECF No. 1013 at 21). The Court's supplemental order approving the sale agreement further authorized the transfer of the Debtor's assets to the buyer "free and clear of any and all Claims, Liabilities and Interests (other than Permitted Encumbrances and the Assumed Obligations)." (Case No. 19-35133, ECF No. 1512 at 6). The terms "Claims," "Liabilities," and "Interests" are all defined terms under that order and the sale agreement it approved. (Case No. 19-35133, ECF No. 1512). The parties have not sought a determination—and the Court has not yet decided—whether the sale order terminated the alleged Mustang real property interest. An open issue remains to be determined at trial as to whether the sale extinguished Mustang's alleged

covenant or whether Mustang's covenant remains attached to the assets transferred to the buyer. If the former, Mustang is entitled to allocation of the sale proceeds, contingent on Mustang's ability to demonstrate the covenant's existence and relative economic value at trial. If the latter, Mustang must look to the buyer, not the sales proceeds, for recovery.

Wells Fargo has not demonstrated that it is entitled to judgement as a matter of law on the issue of whether its security interest primed Mustang's covenant such that Wells Fargo's interest effectively exhausted the sale proceeds. Summary judgment on this issue is inappropriate.

## CONCLUSION

The motion for summary judgment is denied.

SIGNED 06/22/2023

_____
Marvin Isgur
United States Bankruptcy Judge